<u>NOT FOR PUBLICATION</u>

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| **GRACO, INC., et al.,** | : | **Civil Action No.: 08-1304 (FLW)** |
| | : | |
| **Plaintiffs,** | : | |
| | : | |
| **v.** | : | **MEMORANDUM OPINION** |
| | : | **AND ORDER** |
| **PMC GLOBAL, INC., et al.,** | : | |
| | : | |
| **Defendants.** | : | |
| _____ | : | |

<u>ARPERT, U.S.M.J</u>

### I.      INTRODUCTION

       This matter comes before the Court on Motion by Defendants PMC Global, Inc., PMC, Inc.,

PMC Europe Investments, S.L., Denis S. Commette ("Commette"), and Gama Machinery USA, Inc.

(collectively, "Defendants" or "PMC") to compel production of certain materials that Plaintiffs

Graco, Inc. and Graco Minnesota, Inc. (collectively, "Plaintiffs" or "Graco") claim are privileged

[dkt. entry no. 474], returnable October 18, 2010.  Plaintiffs filed opposition on October 4, 2010.

For the reasons stated herein, Defendants' Motion is granted in part and denied in part.

### II.     FACTUAL BACKGROUND AND PROCEDURAL HISTORY

       Graco filed a Complaint on March 14, 2008 alleging "breach of contract and related duties"

(Pl.'s Complaint at 19-21), "tortious interference" (*Id*. at 21-23), "misappropriation of trade secrets

and misuse of confidential business information" (*Id*. at 23-24), violation of the "Lanham Act" (*Id*.

at 24-25), violation of the "New Jersey Fair Trade Act" (*Id*. at 25-26), "unfair competition" (*Id*. at

26), and "unjust enrichment" (*Id*.) related to its acquisition of Gusmer Corporation and Gusmer

Europe (collectively, "Gusmer") from PMC by way of two (2) Stock Purchase Agreements ("SPA")

(*Id*. at 7, ¶¶ 28-29).  Presently, PMC contends that "Graco's remaining contract claim [is] limited

to the implied breach of good faith and fair dealing". (Def.'s Br. at 13)

In connection with Graco's motion for a preliminary injunction [dkt. entry no. 96] and opposition to PMC's motion for summary judgment [dkt. entry no. 329], Graco submitted affidavits by Mark Weinberger ("Weinberger") [dkt. entry no. 103], Josh Mulder ("Mulder") [dkt. entry no. 104], Doug Farrow ("Farrow") [dkt. entry nos. 105, 106, 111, 330], Nick Pagano ("Pagano") [dkt. entry nos. 107, 112], Richard Mainey ("Mainey") [dkt. entry nos. 329-6 thru 329-8], and James Rice ("Rice") [dkt. entry no. 335]. The Court notes that Weinberger, Mulder, Farrow, and Pagano are Graco employees (collectively, "Employee Opinion Witnesses"). On June 21, 2010, PMC noticed the depositions of Weinberger and Pagano and concurrently served requests for documents to be produced at the depositions, including all documents considered or relied upon in drafting the above-referenced affidavits, all drafts of the affidavits, and all communications with those individuals concerning their affidavits. Graco objected to these document requests, asserting that the declarants should be treated as non-experts and maintains that the material requested is protected by the attorney-client privilege or work-product privilege.

Separately, on June 4, 2010, Graco produced its first supplemental privilege log. Therein, Graco asserted that documents surrounding the SPA were protected by attorney-client privilege. In response, PMC sought "pre-SPA communications among Gusmer executives, or between Gusmer executives and its outside counsel" (Pl.'s Opp'n Br. at 8), "pre-acquisition communications authored or received by PMC or Commette" (*Id*.), and "post-acquisition" documents "to which Commette was privy when he was an executive at Graco" (*Id*. at 13). Although a substantial number of disputed documents have been produced, approximately ninety-nine (99) documents remain at issue.

On September 24, 2010, PMC filed the instant Motion seeking a Court Order "(1) compelling

2

Graco to produce all documents considered or relied upon by its testifying experts or, in the alternative, striking those affiants' testimony currently before the Court; and (2) compelling Graco to produce communications with the PMC and pre-acquisition communications between Gusmer and its outside counsel". *Id*. at 1.

### A.    PMC's Arguments in Support of the Motion to Compel

PMC claims that "(1) Graco has waived work product protection by submitting expert testimony to the Court, PMC, and the public" (*Id*. at 8) and that "(2) communications with PMC and its agents are not confidential and should be produced immediately" (*Id*. at 12).

### 1.    Graco has waived work product protection by submitting expert testimony to the Court.

PMC points out that "Graco has repeatedly agreed in meet and confer discussions throughout this case that it would not limit or prevent discovery from those who offered opinion testimony in Graco's favor, that it only had concerns as to the timing of such exchanges, and that both parties' obligations regarding such discovery would be initiated when an expert's testimony was put at issue, such as by offering testimony in support of a pleading or at a deposition". *Id*. at 3-4; *see also* Def.'s Decl. of Robyn Callahan at 3, ¶ 12.  Citing *Plymovent Corp. v. Air Tech Solutions, Inc*., 243 F.R.D. 139, 146 (D.N.J. 2007) and *Quevedo v. Trans-Pacific Shipping*, 143 F.3d 1255, 1258 (9th Cir. 1998), PMC argues that "Graco has waived work product protection by submitting expert testimony to the Court, PMC, and the public" and therefore should either be compelled to disclose the documents requested or have "all expert testimony" stricken. *Id*. at 8-9.

PMC cites *KW Plastics v. United States Can Co*., 199 F.R.D. 687, 688 (M.D. Ala. 2000), *Day v. Conrail*, 1996 U.S. Dist. LEXIS 6596, at *4 (S.D.N.Y. 1996), *Dyson Tech. v. Maytag Corp*.,

3

241 F.R.D. 247, 249-250 (D. Del. 2007), *McCulloch v. Hartford Life & Accident Ins. Co.*, 223 F.R.D. 26, 28 (D. Conn. 2004), *3M v. Signtech USA*, 177 F.R.D. 459, 461 (D. Minn. 1997) and argues "whether or not the Employee Opinion Witnesses are subject to the reporting requirements of Rule 26 is a separate issue". *Id*. at 9-10. PMC maintains that Graco's suggestion that it need not provide discovery as to the bases of its expert opinion testimony because some of its declarants and affiants are Graco employees and are "merely potential employee experts" contorts the "language and policy of the Federal Rules of Civil Procedure beyond reason". *Id*. PMC notes that "there is nothing potential" regarding the testimony at issue given that Graco has "already submitted expert affidavits to this Court for its consideration". *Id*. at 9-10. PMC argues that "whether or not Graco utilized its own employees instead of external third party experts is not determinative" and maintains that Graco's reliance upon *Navajo Nation v. Norris*, 189 F.R.D. 610, 612 (E.D. Wash. 1999) is misplaced. PMC claims that *Navajo Nation* "dealt with experts who had not yet submitted any expert opinions", while in this case, the logical result of Graco's position would be to prevent PMC from "cross-examining Graco's employee experts at trial as to the documents they considered or relied upon in formulating their opinion without drawing an objection for privilege". *Id*. at 10-11.

### 2.   Communications with PMC and its agents are not confidential and should be produced immediately.

PMC points out that a central issue in this case is whether PMC "competed unfairly by re-entering the Spray Foam equipment market after selling...Gusmer to Graco". *Id*. at 5. PMC asserts that "the withheld documents speak to Graco's assertion that PMC failed to provide full disclosures in relation to the sale of Gusmer, the valuation of any goodwill and intellectual property, PMC's representations regarding bonuses and other forms of compensation to Commette, PMC's access to

4

Graco's alleged trade secrets, Commette's post-acquisition conduct in relation to his fiduciary duties to Graco, as well as PMC's knowledge and intent leading up to and after the SPA". *Id.* Based upon these contentions, PMC argues that communications with Defendants and its agents are not confidential and "at least 69 documents authored or received by PMC or Commette" and "at least 30 pre-SPA communications among Gusmer executives, or between Gusmer executives and its outside counsel" should be produced immediately. *Id.* at 12. Citing *Orion Corp. v. Sun Pharm. Indus.*, 2010 U.S. Dist. LEXIS 15975, at \*23 (D.N.J. 2010) and *In re Grand Jury Investigation*, 599 F.2d 1224, 1233 (3d Cir. 1979), PMC argues that "none of these communications can possibly be privileged or protected against disclosure with regard to Defendants because PMC or Commette either originated or received the communications". *Id.* Specifically, PMC maintains that any privilege "Graco acquired through the SPAs" is inapplicable "against the very parties to the communications" as they are "not confidential, and thus not privileged, with respect to those parties", and that "Graco has waived whatever privilege it could claim with respect to all 99 of these communications because it has put their substance at issue in this lawsuit". *Id.* at 12-13.

Further, citing *In re Human Tissue Prods. Liab. Litigation*, 255 F.R.D. 151, 158-159 (D.N.J. 2008) and *Hearn v. Rhay*, 68 F.R.D. 574, 580-81 (E.D. Wash. 1975), PMC argues that "overriding fairness factors weigh in favor of PMC" as "Graco should not be allowed...to sue PMC over its conduct, intent, and state of mind leading up to the SPAs, and then withhold evidence that would tend to establish or disprove these very allegations". *Id.* PMC states that Graco should not be allowed to use "the privilege both as a sword and a shield". *Id.* Citing *Tekni-Plex, Inc. v. Meyner & Landis*, 674 N.E.2d 663, 671-72 (N.Y. 1996), PMC maintains that "Graco's misapplication of the privilege thwart[s] Commette and PMC". *Id.* at 14-15. While PMC agrees that "the attorney-client

5

privilege passes to its corporate successor after a merger, and that new management possesses the power to assert the privilege", it argues that "when a company sues its own former employees, as well as its predecessor company's former counsel, over the conduct leading up to and after the SPA, it cannot refuse to produce communications regarding that same conduct on the basis of privilege". *Id*. at 14-15.

### B.    Graco's Arguments in Opposition to the Motion to Compel

Graco advances six (6) arguments in opposition to PMC's Motion.  Specifically: "(1) Graco is not required to produce privileged communications between employees and counsel" (Pl.'s Opp'n Br. at 1); "(2) Graco has no obligation to submit expert reports for the Employee Opinion Witnesses" (*Id*. at 2); "(3) Graco has no obligation to produce attorney-client communications with the Employee Opinion Witnesses or attorney work-product that has been disclosed to these witnesses" (*Id*. at 5); "(4) Graco is not required to produce documents related to PMC, Commette, and the pre-SPA" (*Id*. at 7); "(5) Graco holds the attorney-client privilege for pre-acquisition documents between Gusmer employees and attorneys" (*Id*. at 8); and "(8) Graco holds the privilege for all post-acquisition communications between Graco and its employees" (*Id*. at 13).

### 1.    Graco is not required to produce privileged communications between employees and counsel.

Graco "does not dispute its obligation to provide expert disclosures and reports required by Rule 26(a)(2) and this Court's scheduling order" and notes that it "has already produced all factual materials on which [the Employee Opinion Witnesses] relied on forming their opinions".  *Id*. at 1. However, Graco points out that it will only provide "expert disclosures and reports" for "third-party experts that it intends to use at trial".  *Id*.  Graco argues that "the mere fact that the [Employee

Opinion Witnesses'] testimony is informed by technical expertise does not somehow waive Graco's privilege over all of its attorneys' communications with those individuals". *Id.* at 1-2.

**(a)    Graco has no obligation to submit expert reports for the Employee Opinion Witnesses.**

Citing Rule 26 (a)(2)(B), *Navajo Nation v. Norris*, 189 F.R.D. 610, 612 (E.D. Wash. 1999), *Bank of China v. NBM LLC*, 359 F.3d 171, 182 n. 13 (2d Cir. 2004), *Greenhaw v. City of Cedar Rapids*, 255 F.R.D. 484, 488 (N.D. Iowa 2009), and *Lamar Co., LLC v. City of Marietta*, 538 F. Supp. 2d 1366, 1380 (N.D. Ga. 2008), Graco maintains that "an expert report and disclosures from a party's employee [are only required] if that employee is going to provide expert opinions and if he is one whose duties as the party's employee regularly involve giving expert testimony". (*Id.* at 2) Here, Graco argues that it "has no obligation to submit expert reports for the Employee Opinion Witnesses" (*Id.* at 2), as none of them "regularly provide expert testimony as part of their job duties" (*Id.* at 3). Graco points out that it "has not submitted expert reports for these individuals,...[although it] has submitted sworn declarations from both employees and outside experts in order to inform the Court of factual and technical issues that relate to motions before the Court" (*Id.* at 5) and "will provide full expert reports for its independent experts" (*Id.*).

Citing *Day v. Conrail*, 1996 U.S. Dist. LEXIS 6596, at *4 (S.D.N.Y. 1996), *KW Plastics v. United States Can Co.*, 199 F.R.D. 687, 688 (M.D. Ala. 2000), and *3M v. Signtech USA*, 177 F.R.D. 459, 461 (D. Minn. 1997), Graco notes that "some courts have taken a contrary approach". (*Id.* at 3-4) Nevertheless, Graco points out that "the federal rules advisory committee recently rejected those courts' reasoning and adopted the approach articulated in *Navajo Nation*", that "employees who do not regularly testify are not required to provide a written report". *Id.*; *see also* Pl.'s Decl. of Kathryn

7

N. Hibbard, Ex. B.  Graco argues that PMC cites "no authority for [its] apparent view that the submission of declarations from employees necessitates the filing of expert witness disclosures of the sort required of independent testifying experts".  *Id*. at 5.

> **(b)    Graco has no obligation to produce attorney-client communications with the Employee Opinion Witnesses or attorney work-product that has been disclosed to these witnesses.**

Citing FED. R. CIV. P. 26(a)(2)(ii), Graco argues that it "has no obligation to produce all of the data or other information considered by the [Employee Opinion Witnesses] in forming their opinions".  *Id*.  Graco notes that it has "already produced" non-privileged factual information "on which Graco's Employee Opinion Witnesses relied in refreshing their recollections or informing their testimony".  *Id*. at 6.  Graco also admits that the "work-product privilege is generally waived as to documents that an attorney shares with a testifying, non-employee expert or with an employee whose duties include the regular provision of expert testimony" pursuant to *Quinn Construction, Inc. v. Skanska USA Building, Inc.*, 263 F.R.D. 190, 196-97 (E.D. Pa. 2009), *FTC v. Lane-Labs, USA, Inc.*, 2008 U.S. Dist. LEXIS 64776, at *3-4 (D.N.J. 2008), and *Synthes Spine Co., L.P., v. Walden*, 232 F.R.D. 460, 462-63 (E.D. Pa. 2005).  *Id*.  However, Graco maintains that this waiver "does not apply to the Employee Opinion Witnesses" who are "not required to submit expert reports or to disclose the basis for their opinions in the first place" and further maintains that "an attorney's communications with a client's employees do not lose privilege merely because those employees would offer testimony and opinions within the scope of their technical training".  *Id*.

> **2.    Graco is not required to produce documents related to PMC, Commette and the pre-Stock Purchase Agreement.**

Graco, citing *Orion Corp. v. Sun Pharma Global, Inc*., 2010 U.S. Dist. Lexis 15975, at *23

(D.N.J. 2010), claims that the "the law does not support Defendants' arguments", that "Defendants misrepresent the law", and that "only the client may waive privilege". *Id*. at 7-8.

> **(a)   Graco holds the attorney-client privilege for pre-acquisition documents between Gusmer employees and attorneys.**

Graco maintains that "there is no real question that the documents in question were privileged in the first instance" as they "plainly reflect communications between Gusmer attorneys and Gusmer employees for the purpose of requesting or communicating legal advice". *Id*. at 8-9.  Citing *Teleglobe Communs. Corp. v. BCE, Inc*., 493 F.3d 345, 360 (3d Cir. 2007), *Commodity Futures Trading Comm'n v. Weintraub*, 471 U.S. 343, 348 (1985), *Interfaith Hous. Del., Inc. v. Town of Georgetown*, 841 F. Supp. 1393 (D. Del. 1994), and *Soverain Software LLC v. Gap, Inc.*, 340 F. Supp. 2d 760, 763 (E.D. Tex. 2004), Graco states that "a corporation can only act through its agents" and that a "corporation's attorney or agent cannot waive the corporation's privilege unless the agent is acting within the scope of his authority". *Id*. at 9-10.  As such, Graco argues that "it acquired the right to assert Gusmer's privileges" when it purchased Gusmer, that "Graco now holds the exclusive right to assert or waive privileges formerly held by Gusmer", that "no former Graco or Gusmer employee, and no former Gusmer lawyer, may waive Gusmer's privileges", that "Commette is not presently an agent of Gusmer...[and] therefore has no present authority to waive Gusmer's privileges", and that "even if PMC's in-house attorneys might once have been empowered to assert or waive Gusmer's privileges, they are no longer Gusmer's attorneys...[and] have no right to waive privileges held by Gusmer or Graco". *Id*. at 10-11.

Graco maintains that it has not "waived privilege as to these communications by putting their substance into issue in this litigation". *Id*. at 11.  Rather, Graco asserts that "each pre-acquisition

Gusmer document that Graco has withheld relates to general business operations requiring legal advice" and that these documents "do not relate to alleged misconduct arising out of negotiations leading up to the SPA or to PMC's actions arising out of the SPA". *Id.* at 11.  Graco argues that PMC's reliance on *Tekni-Plex, Inc. v. Meyner & Landis*, 674 N.E.2d 663, 671-72 (N.Y. 1996) is misplaced, as *Tekni-Plex* held "that the withholding party properly withheld certain privileged documents that pre-dated the merger in question". *Id.*  Here, Graco indicates that it "already produced" a subset of pre-acquisition communications between PMC attorneys and Gusmer regarding the sale to Graco equivalent to the "disclosure[s]" ordered in *Tekni-Plex*. *Id.* at 11-12. Further, citing *Rhone-Poulenc Rorer v. Home Indem. Co.*, 32 F.3d 851, 863 (3d Cir. 1994), Graco argues that it "has not put counsel's advice into issue in this case" and "has not asserted any claim or defense that turns on the content of legal advice". *Id.* at 12.  "In the absence of evidence that Graco or Gusmer has shared these documents with persons outside the privileged relationship, and given that Graco has not put the content of these documents into issue", Graco maintains there is no basis to compel their production. *Id.* at 12-13.

> **(b)      Graco holds the privilege for all post-acquisition communications between Graco and its employees.**

As with the pre-acquisition documents, Graco claims that it "holds the privilege for all post-acquisition communications between Graco and its employees". *Id.* at 13.  Therefore, Graco maintains that it "has properly withheld the post-acquisition documents that involved Commette" because Graco, and "not its former employees, officers, directors or shareholders", holds "the privilege as to these documents". *Id.*  Graco argues that the fact that "Commette was...exposed to countless confidential and privileged documents when he was an executive at Graco" does not mean

10

that "Commette...has standing to waive Graco's attorney-client privilege as to [those] documents" now that "he has left Graco and joined a competing firm". *Id*. And again, Graco maintains that it has not "put the legal advice contained in those documents into issue in a way that would constitute a waiver of privilege". *Id*. at 13-14.

## III.   DISCUSSION

### A.   Legal Standards

#### 1.   Discovery

Pursuant to FED. R. CIV. P. 26(b)(1), "parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense"and "the court may order discovery of any matter relevant to the subject matter involved in the action", although "relevant information need not be admissible at trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence". Courts refuse to order discovery if the information being sought is (1) irrelevant to the claim or (2) protected by a recognized privilege. *Id*.; *see also Pearson v. Miller*, 211 F.3d 57, 65 (3d Cir. 2000). The precise boundaries of the Rule 26 relevance standard depend upon the context of each particular action, and the determination of relevance is within the discretion of the District Court. *See Barnes Found. v. Twp. of Lower Merion*, 1996 U.S. Dist. LEXIS 16402, 1996 WL 653114, at *1 (E.D. Pa. 1996). Under FED. R. CIV. P. 37(c)(1), "if a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at trial, unless the failure was substantially justified or is harmless" or, "in addition to or instead of this sanction, the court" may order other appropriate sanctions.

#### 2.   Expert Discovery

11

In general, "in addition to the disclosures required by Rule 26(a)(1), a party must disclose to the other parties the identity of any witness it may use at trial to present evidence under Federal Rule of Evidence 702, 703, or 705". FED. R. CIV. P. 26(a)(2)(A). With respect to this case, pursuant to this Court's October 28, 2010 Amended Scheduling Order [dkt. entry no. 532], the parties were to make these disclosures by way of initial expert reports and rebuttal expert reports no later than December 15, 2010 and January 17, 2011, respectively. The parties' expert disclosure "must be accompanied by a written report" that contains, among other things, "the data or other information considered by the witness", if the witness is "one retained or specially employed to provide expert testimony in the case or one whose duties as the party's employee regularly involve giving expert testimony". FED. R. CIV. P. 26(a)(2)(B). Importantly, pursuant to updated FED. R. CIV. P. 26(a)(2)(B), effective December 1, 2010, the written report requirement includes, among other things, only "the facts or data considered by the witness in forming [opinions]". Similarly, pursuant to updated FED. R. CIV. P. 26(a)(2)(C), effective December 1, 2010, "if the [expert] witness is not required to provide a written report, [his/her] disclosure must state: (i) the subject matter on which the witness is expected to present evidence...; and (ii) a summary of the facts and opinions to which the witness is expected to testify". *See also Navajo Nation v. Norris*, 189 F.R.D. 610 (E.D. Wa. 1999).

### 3.    Rule 26 Privileged Matter

A party may not ordinarily "discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent)" absent a showing by the requesting party of "substantial need for the materials to prepare its case" and an inability, "without

undue hardship, [to] obtain their substantial equivalent by other means". FED. R. CIV. P. 26(b)(3)(A). "If the court orders discovery of those materials, it must protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation". FED. R. CIV. P. 26(b)(3)(B); *see also Quinn Construction, Inc. v. Skanska USA Building, Inc.*, 263 F.R.D. 190, 193 (E.D. Pa. 2009).

Further, a party "may depose any person who has been identified as an expert whose opinions may be presented at trial" and, "if Rule 26(a)(2)(B) requires a report from the expert, the deposition may be conducted only after the report is provided". FED. R. CIV. P. 26(b)(4)(A). However, a party may not ordinarily "discover facts known or opinions held by an expert who has been retained or specially employed by another party in anticipation of litigation or to prepare for trial and who is not expected to be called as a witness at trial" by interrogatories or deposition absent a showing of "exceptional circumstances under which it is impracticable for the party to obtain facts or opinions in the same subject by other means". FED. R. CIV. P. 26(b)(4)(B). Importantly, pursuant to updated FED. R. CIV. P. 26(b)(4)(B), effective December 1, 2010, "Rules 26(b)(3)(A) and (B) protect drafts of any report or disclosure required under Rule 26(a)(2), regardless of the form in which the draft is recorded". Similarly, pursuant to updated FED. R. CIV. P. 26(b)(4)(C), effective December 1, 2010, "Rules 26(b)(3)(A) and (B) protect communications between the party's attorney and any witness required to provide a report under Rule 26(a)(2)(B), regardless of the form of the communications, except to the extent that the communications: (i) relate to compensation for the expert's study or testimony; (ii) identify facts or data that the party's attorney provided and that the expert considered in forming the opinions to be expressed; or (iii) identify assumptions that the party's attorney provided and that the expert relied on in forming the opinions to be expressed".

13

With respect to the 1993 version of Rule 26, "although Rule 26(b)(4)(A), governing depositions of experts, appears to imply that some category of experts may be exempt from the report requirement, that exemption is apparently addressed to experts who are testifying as fact witnesses, although they may also express some expert opinions – for example, treating physicians.  ...In such an instance, we may infer that the reasons for requiring an expert's report are far less compelling and may unfairly burden a non-party who is appearing principally because he or she witnessed certain events relevant to the lawsuit". *Dyson Tech. v. Maytag Corp.*, 241 F.R.D. 247, 249 (D. Del. 2007)(*citing Day v. Consolidated Rail Corp.*, 1996 U.S. Dist. LEXIS 6596, 1996 WL 257654, at *1-3 (S.D.N.Y. 1996)); *see also KW Plastics v. United States Can Co.*, 199 F.R.D. 687 (M.D. Ala. 2000); *3M v. Signtech USA, Ltd.*, 177 F.R.D. 459 (D. Minn. 1998).  The Court must consider whether the information presented is "a recitation of the facts of the case with some expert opinions expressed" or "an expert report regarding various...claims by [plaintiff]...that have been challenged by [defendant] in pending litigation". *Dyson Tech.*, 241 F.R.D. at 250.  Importantly, "Rule 26(a)(2)(B) [requires] the disclosure of all materials considered by [a testifying expert]...regardless of...claims of attorney-client or work-product privilege". *Id* at 251; *see also Synthes Spine Co. v. Walden*, 232 F.R.D. 460, 463-64 (E.D. Pa. 2005); *Kelco U.S. Inc. v. Pharmacia Corp.*, 213 F.R.D. 176, 178-79 (D. Del. 2003); *Vitalo v. Cabot Corp.*, 212 F.R.D. 478, 479 (E.D. Pa. 2002).  However, pursuant to *Plymovent Corp. v. Air Technology Solutions, Inc.*, 243 F.R.D. 139, 143 (D.N.J. 2007), "while discovery with respect to testifying experts is essential to allow opposing counsel to adequately prepare for cross-examination, and to eliminate surprise at trial, there is no need for a comparable exchange of information regarding non-witness experts who act as consultants and advisors to counsel regarding the course litigation should take". *See also In re Cendant Corp.*

14

*Securities Litig.*, 343 F.3d 658 (3d Cir. 2003).  "Some courts have held...that disclosure or reliance

on a non-testifying expert's facts and opinions waives Rule 26(b)(4)(B)'s protection; while

others...have ruled that disclosure does not automatically waive protection".  *Plymovent*, 243 F.R.D.

at 145; *see also Atari Corp. v. Sega of America*, 161 F.R.D. 417, 418-20 (N.D. Cal. 1994); *United

States v. Hooker Chemicals & Plastics Corp.*, 112 F.R.D. 333, 339 (W.D.N.Y. 1986).

With respect to the 2010 version of Rule 26, the Advisory Committee Notes state the

following:

> Rules 26(a)(2) and (b)(4) are amended to address concerns about expert discovery. ...In 1993, Rule (b)(4)(A) was revised to authorize expert depositions and Rule 26(a)(2) was added to provide disclosure, including – for many experts – an extensive report.  Many courts read the disclosure provision to authorize discovery of all communications between counsel and expert witnesses and all draft reports.  The Committee has been told repeatedly that routine discovery into attorney-expert communications and draft reports has had undesirable effects.  Costs have risen.  Attorneys may employ two sets of experts – one for purposes of consultation and another to testify at trial – because disclosure of their collaborative interactions with expert consultants would reveal their most sensitive and confidential case analyses.  At the same time, attorneys often feel compelled to adopt a guarded attitude toward their interaction with testifying experts that impedes effective communication, and experts adopt strategies that protect against discovery but also interfere with their work.

> ...Rule 26(a)(2)(B)(ii) is amended to provide that disclosure include all "facts or data considered by the witnesses in forming" the opinions to be offered... .  This amendment is intended to alter the outcome in cases that have relied on the 1993 formulation in requiring disclosure of all attorney-expert communications and draft reports. ...The disclosure obligation extends to any facts or data "considered" by the expert in forming the opinions to be expressed, not only those relied upon by the expert.

> ...Rule 26(a)(2)(C) is added to mandate summary disclosures of the opinions to be offered by expert witnesses who are not required to provide reports under Rule 26(a)(2)(B) and of the facts supporting

15

those opinions. ...This amendment resolves a tension that has sometimes prompted courts to require reports under Rule 26(a)(2)(B) even from witnesses exempted from the report requirement. An (a)(2)(B) report is required only from an expert described in (a)(2)(B). A witness who is not required to provide a report under Rule 26(a)(2)(B) may both testify as a fact witness and also provide expert testimony under Evidence Rule 702, 703, or 705. Frequent examples include...employees of a party who do not regularly provide expert testimony. Parties must identify such witnesses under Rule 26(a)(2)(A) and provide the disclosure required under Rule 26(a)(2)(C). The (a)(2)(C) disclosure obligation does not include facts unrelated to the expert opinions the witness will present.

...Rule 26(b)(4)(B) is added to provide work-product protection under Rule 26(b)(3)(A) and (B) for drafts of expert reports or disclosures. This protection applies to all witnesses identified under Rule 26(a)(2)(A)...regardless of the form in which the draft is recorded, whether written, electronic, or otherwise...[and] also applies to drafts of any supplementation under Rule 26(e).

...Rule 26(b)(4)(C) is added to provide work-product protection for attorney-expert communications regardless of the form of the communications, whether oral, written, electronic, or otherwise. ...The protection is limited to communications between an expert witness required to provide a report under Rule 26(a)(2)(B) and the attorney for the party on whose behalf the witness will be testifying, including any "preliminary" expert opinions. Protected "communications" include those between the party's attorney and assistants of the expert witness. The rule does not itself protect communications between counsel and other expert witnesses, such as those for whom disclosure is required under Rule 26(a)(2)(C). The rule does not exclude protection under other doctrines, such as privilege or independent development of the work-product doctrine.

...Rules 26(b)(4)(B) and (C) do not impede discovery about the opinions to be offered by the expert or the development, foundation, or basis of those opinions. For example, the expert's testing of material involved in litigation, and notes of any such testing, would not be exempted from discovery by this rule. Similarly, inquiry about communications the expert had with anyone other than the party's counsel about the opinions expressed is unaffected by the rule. Counsel are also free to question expert witnesses about alternative analyses, testing methods, or approaches to the issues on which they

are testifying, whether or not the expert considered them in forming the opinions expressed.

...Although attorney-expert communications are generally protected by Rule 26(b)(4)(C), the protection does not apply to the extent the lawyer and the expert communicate about matters that fall within three exceptions [as listed under Rule 26(b)(4)(C)(i-iii). ...Under Rule 26(b)(4)(C)(ii)[,] discovery is permitted to identify facts or data the party's attorney provided to the expert and that the expert considered in forming the opinions to be expressed. The exception applies only to communications "identifying" the facts or data provided by counsel; further communications about the potential relevance of the facts or data are protected. ...Under Rule 26(b)(4)(C)(iii)[,] discovery regarding attorney-expert communications is permitted to identify any assumption that counsel provided to the expert and that the expert relied upon in forming the opinions to be expressed. ...This exception is limited to those assumptions that the expert actually did rely on in forming the opinions to be expressed.

FED. R. CIV. P. 26 Advisory Committee Note (2010).

### 4.    Work-Product Privilege

"The work product doctrine is governed by a uniform federal standard set forth in FED. R. CIV. P. 26(b)(3) and 'shelters the mental processes of the attorney, providing a privileged area within which he can analyze and prepare his client's case.'" *In re Cendant Corp. Securities Litig.*, 343 F.3d 658, 661-62 (3d Cir. 2003)(*quoting United States v. Nobles*, 422 U.S. 225, 238 (1975)). The Supreme Court articulated the essential nature of the doctrine in *Hickman v. Taylor*, 329 U.S. 495, 510-11 (1947): "In performing his various duties, it is essential that a lawyer work with a certain degree of privacy, free from unnecessary intrusion by opposing parties and their counsel. ...This work is reflected, of course, in interviews, statements, memoranda, correspondences, briefs, mental impressions, personal belief, and countless other tangible and intangible ways."

The work product doctrine is not an absolute bar to discovery of materials prepared in

anticipation of litigation.  "Work product can be produced upon a showing that the party seeking

discovery has substantial need of the materials in the preparation of the party's case and that the party

is unable without undue hardship to obtain the substantial equivalent of the materials by other

means."  *In re Cendant*, 343 F.3d at 663.  Even if the party seeking discovery of information

otherwise protected by the work product doctrine has made the requisite showing, "courts must still

protect against the disclosure of mental impressions, conclusions, opinions, or legal theories of an

attorney and his agents."  *Id*.  Thus, there are "two tiers of protection: first, work prepared in

anticipation of litigation by an attorney or his agent is discoverable only upon a showing of need and

hardship; second, 'core' or 'opinion' work product that encompasses the 'mental impressions,

conclusions, opinion, or legal theories of an attorney or other representative of a party concerning

the litigation' is 'generally afforded near absolute protection from discovery' and requires a

heightened showing of extraordinary circumstances".  *Id*. at 663-64; *see also In re Ford Motor Co.*,

110 F.3d 954, 962 n.7 (3d Cir. 1997); *Sporck v. Peil*, 759 F.2d 312, 316 (3d Cir. 1985).

     **5.**        **Attorney-Client Privilege**

     FED. R. EVID. 501 provides that evidentiary privileges are "governed by the principles of the

common law as they may be interpreted by the courts of the United States in light of reason and

experience".  Thus, Third Circuit precedent controls with respect to procedural questions such as the

assertion of the attorney-client privilege.  The attorney client privilege applies as follows:

> (1) the asserted holder . . . is or sought to become a client;
>
> (2) the person to whom the communication was made (a) is a member of a bar of a court . . . and (b) in connection with this communication is acting as a lawyer;
>
> (3) the communication relates to a fact of which the attorney was

informed (a) by his client (b) without the presence of strangers (c) for the purpose of securing primarily either (i) an opinion on law or (ii) legal services or (iii) assistance in some legal proceeding, . . .; and

(4) the privilege has been (a) claimed and (b) not waived by the client.

*In re Grand Jury Investigation*, 599 F.2d 1224, 1233 (3d Cir. 1979) (*quoting United States v. United Shoe Machinery Corp.*, 80 F. Supp. 357, 358-59 (D. Mass. 1950)).  Communications between an attorney and client are protected by the attorney-client privilege with the purpose of this privilege being to promote frank discussions between attorneys and their clients*. Upjohn v. United States*, 449 U.S. 383, 389 (1981); *see also Fisher v. United States*, 425 U.S. 391, 403 (1976).  The privilege is not unconditional.  It can be waived if the privileged information is communicated to outside parties. *U.S. v. Rockwell International*, 897 F.2d 1255, 1265 (3d Cir. 1990).  Because the privilege may be employed to obstruct the search for truth, the privilege is not absolute and care must be taken to insure that the privilege is not abused.  *United Jersey Bank v. Wolosoff*, 196 N.J. Super 553, 561-62 (App. Div. 1984).

The attorney-client privilege "unquestionably extends to corporations which must act through agents, including their officers and employees."  *Wolosoff*, 196 N.J. Super at 562 (*citing Macey v. Rollins Environmental Services*, 179 N.J. Super 535, 540 (App. Div. 1981)).  The "necessity for full and open disclosure between corporate employees and in-house counsel . . . demands that all confidential communications be exempt from discovery."  *Wolosoff*, 196 N.J. Super at 562 (citations omitted).  However, the privilege is limited to "confidential communications made within the context of the strict relation of attorney and client."  *Id*.  Generally, when a party discloses privileged information to a third party, the privilege is extinguished, and the document is discoverable.  *See In*

*re Teleglobe Commc'n Corp.*, 493 F.3d 345, 364 (3d Cir. 2007).

The burden of proving privilege rests on the party resisting disclosure. *Glaxo, Inc. v. Novopharm, Ltd.*, 148 F.R.D. 535, 538 (E.D.N.C. 1993)(*citing Fischer v. United States*, 425 U.S. 391 (1976)). Specifically, that party must state its privilege claim expressly by "describ[ing] the nature of the documents, communications, or things not produced." Fed. R. Civ. P. 26(b)(5). The failure to identify with specificity the recipients of the information alleged to be privileged does not necessarily void the assertion of the privilege. However, such failure requires enhanced scrutiny to ensure that the privilege was not waived by disseminating the information to those who did not require access to it. *See Smithkline Beecham Corp. v. Apotex Corp.*, 232 F.R.D. 467, 476 (E.D. Pa. 2005).

## 6.    Implied Waiver of Privilege

Privilege may not be used both as a sword and a shield. *In re Human Tissue Prods. Liab. Litigation*, 255 F.R.D. 151, 158 (D.N.J. 2008). Indeed, "a litigant cannot at one and the same time make use of those privileged communications which support his position while hoping to maintain the privilege as those communications which undercut his legal position". 1 Edna Selan Epstein, The Attorney-Client Privilege and the Work Product Doctrine 508 (5th ed. 2007) ("Epstein"). "Courts have found an implied waiver of the attorney-client and/or attorney work product privilege where a client affirmatively places otherwise privileged information at issue in the case". *In re Human Tissue*, 255 F.R.D. at 158. There are several factors that courts have considered in determining whether a waiver by affirmative reliance has occurred. These include:

> (1) assertion of the privilege was a result of some affirmative act, such as filing suit, by the asserting party;

(2) through this affirmative act, the asserting party put the protected information at issue by making it relevant to the case; and

(3) application of the privilege would have denied the opposing party access to information vital to his defense.

*Hearn v. Rhay*, 68 F.R.D. 574, 581 (E.D. Wash. 1975); *see also In re Human Tissue*, 255 F.R.D. at 159; *Rhone-Poulenc Inc. v. Home Indem. Co.*, 32 F.3d 851, 863 (3d Cir. 1994).

Other courts have focused on overriding fairness considerations in assessing whether an implied waiver has occurred. *In re Human Tissue*, 255 F.R.D. at 159. *See*, e.g., *Goldberg v. Hirschberg*, 10 Misc.3d 292, 806 N.Y.S.2d 333, 335 (N.Y. Sup. Ct. 2005) ("The sanctity of the attorney-client privilege notwithstanding, '[it] may implicitly be waived when [a party] asserts a claim that in fairness requires examination of protected communications.'")(*quoting United States v. Bilzerian*, 926 F.2d 1285, 1292 (2d Cir. 1991)); *Wolosoff*, 196 N.J. Super at 567 ("We are persuaded that 'when confidential communications are made a material issue in a judicial proceeding, fairness demands waiver of the privilege.'"); *In re Hillsborough Holdings Corp.*, 176 B.R. 223, 238-39 (M.D. Fla. 1994) ("A party waives the attorney-client and accountant-client privileges which attach to various communications if that party 'injects into the case an issue that in fairness requires an examination of otherwise protected communications.'"). Whether fairness requires disclosure is decided "on a case-by-case basis, and depends primarily on the specific context in which the privilege is asserted". *In re Grand Jury Proceedings*, 219 F.3d 175, 183 (2d Cir. 2000).

**B.    PMC's Requests Related to Graco's Employee Opinion Witnesses and Experts**

Here, PMC seeks to compel the following:

(1) all documents, including without limitation, communications, electronically stored information, and draft reports and affidavits considered, reviewed or relied upon by the Employee Opinion

Witnesses, Mainey, and Rice concerning their respective affidavits and declarations;

(2) all documents, including without limitation, communications, electronically stored information, and draft reports and affidavits responsive to Requests Nos. 6-9 of PMC's Amended Notices of Deposition of Weinberger and Pagano, specifically:

> (a) any and all documents considered or relied upon...concerning affidavits submitted by Mr. Jack DeMita ("DeMita"), the Employee Opinion Witnesses, Mainey, and Rice;

> (b) any and all communications concerning affidavits submitted by DeMita, the Employee Opinion Witnesses, Mainey, and Rice;

> (c) any and all communications between Weinberger/Pagano, including without limitation Graco, and Mainey; and

> (d) any and all communications between Weinberger/Pagano, including without limitation Graco, and Rice.

In the alternative, PMC requests

> (1) that the affidavits of the Employee Opinion Witnesses, Mainey and Rice, including any exhibits, amendments, or supplementations to those affidavits and declarations, be stricken from the record;

> (2) that the deposition testimony of Weinberger and Mulder, submitted to the Declaration of Clifford M. Greene in Support of Plaintiffs' Opposition to Defendants' Motion for Partial Summary Judgment, be stricken from the record; and

> (3) that all references made by Graco concerning any information described in (1) and (2) above, including all such reference made by Graco in its Opposition to Defendants' Motion for Partial Summary Judgment and supporting pleadings, be stricken from the record.

Presently, the Court finds that the Employee Opinion Witnesses have not – as yet – been named as testifying witnesses, are employed by Graco, do not regularly give expert testimony, and

submitted affidavits related to dispositive motion practice in this lawsuit.  Concurrently, the Court

finds that Mainey and Rice have not – as yet – been named as testifying witnesses, are not employed

by Graco, have been retained or specially employed to provide expert testimony, and submitted

affidavits related to dispositive motion practice in this lawsuit.  Based upon the law set forth above,

the Court acknowledges a significant divergence between the 1993 version (and related case law)

and the 2010 version of Rule 26.  For purposes of this Motion, the Court finds the 2010 Advisory

Committee Note persuasive regarding intent related to relevant provisions of Rule 26.

The Court finds that, based upon Graco's affirmative reliance on the facts and opinions set

forth in their respective affidavits submitted in support of, and opposition to, dispositive motion

practice, the Employee Opinion Witnesses, Mainey and Rice should be considered "testifying

witnesses".  *See Plymovent Corp. v. Air Technology Solutions, Inc.*, 243 F.R.D. 139, 143 (D.N.J.

2007); *see also Atari Corp. v. Sega of America*, 161 F.R.D. 417, 418-20 (N.D. Cal. 1994); *United

States v. Hooker Chemicals & Plastics Corp.*, 112 F.R.D. 333, 339 (W.D.N.Y. 1986).  Therefore,

with respect to the Employee Opinion Witnesses, the Court finds:

> (1) PMC is not entitled to a written report for the Employee Opinion
> Witnesses pursuant to current, and amended, Rule 26(a)(2) and the
> 2010 Advisory Committee Note;
>
> (2) PMC is entitled to a disclosure stating the subject matter and a
> summary of the facts and opinions proffered by the Employee
> Opinion Witnesses pursuant to amended Rule 26(a)(2)(C) and the
> 2010 Advisory Committee Note and supplements thereto pursuant to
> amended Rule 26(a)(2)(E);
>
> (3) PMC is not entitled to any drafts, regardless of form, of expert
> reports, affidavits, or disclosures pursuant to amended Rule
> 26(b)(4)(B) and 2010 the 2010 Advisory Committee Note;
>
> (4) PMC is entitled to all relevant discovery regarding the facts/data

23

considered, reviewed or relied upon for the development, foundation, or basis of their affidavits/declarations (e.g. testing of material involved in litigation, notes of any such testing, communications with anyone other than Graco's counsel about the opinions expressed, alternative analyses, testing methods, or approaches to the issues proffered, whether or not considered in forming the opinions expressed) pursuant to amended Rules 26(b)(4)(B) and (C) and the 2010 Advisory Committee Note;

(5) Communications between Graco's counsel and the Employee Opinion Witnesses are protected by the attorney-client privilege (*see United Jersey Bank v. Wolosoff,* 196 N.J. Super 553, 561-62 (App. Div. 1984));

(6) PMC is not entitled to documents and tangible things prepared in anticipation of litigation or for trial without showing that it has a substantial need for the materials to prepare its case and, cannot, without undue hardship, obtain their substantial equivalent by other means pursuant to amended Rule 26(b)(3)(A) and the 2010 Advisory Committee Note;

With respect to Mainey and Rice, the Court finds:

(1) PMC is entitled to written reports that comply with amended Rule 26(a)(2) and the 2010 Advisory Committee Note and supplements thereto pursuant to amended Rule 26(a)(2)(E);

(2) PMC is not entitled to any drafts, regardless of form, of expert reports, affidavits, or disclosures pursuant to amended Rule 26(b)(4)(B) and 2010 the 2010 Advisory Committee Note;

(3) PMC is entitled to all relevant discovery regarding the facts/data considered, reviewed or relied upon for the development, foundation, or basis of their affidavits/declarations (e.g. testing of material involved in litigation, notes of any such testing, communications with anyone other than Graco's counsel about the opinions expressed, alternative analyses, testing methods, or approaches to the issues proffered, whether or not considered in forming the opinions expressed) pursuant to amended Rules 26(b)(4)(B) and (C) and the 2010 Advisory Committee Note;

(4) PMC is not entitled to communications between Graco's counsel and Mainey/Rice except to the extent that the communications: relate

24

to compensation or additional benefits provided by Graco's counsel for any study or testimony , relate to the identification of facts or data that Graco's counsel provided and that was considered in forming opinions expressed, or relate to the identification of any assumptions that Graco's counsel provided and that were relied upon in forming opinions expressed pursuant to amended Rule 26(b)(4)(C)(i-iii) and the 2010 Advisory Committee Note;

(5) PMC is not entitled to documents and tangible things prepared in anticipation of litigation or for trial without showing that it has a substantial need for the materials to prepare its case and, cannot, without undue hardship, obtain their substantial equivalent by other means pursuant to amended Rule 26(b)(3)(A) and the 2010 Advisory Committee Note;

Based upon the foregoing, the Court amends PMC's requests and compels Graco to provide

the following:

(1) all relevant discovery regarding the facts/data considered, reviewed or relied upon for the development, foundation, or basis of the affidavits/declarations submitted by the Employee Opinion Witnesses, Mainey, and Rice (however, this does not include work-product, as PMC has failed to demonstrate a substantial need for same pursuant to Rule 26(b)(3)(A); this does not includes communications between Graco's counsel and Mainey/Rice other than those set forth in amended Rule 26(b)(4)(C)(i-iii); this does not include communications between Graco's counsel and the Employee Opinion Witnesses, as PMC has failed to demonstrate exceptional circumstances or that Graco waived its attorney-client privilege);

(2) all discovery responsive to Requests Nos. 6-9 of PMC's Amended Notices of Deposition of Weinberger and Pagano, specifically:

(a) all relevant discovery about the facts, opinions offered and/or the development, foundation, or basis of those opinions that was considered, reviewed, or relied upon concerning affidavits and declarations submitted by the Employee Opinion Witnesses, Mainey, Rice, and DeMita;

(b) any and all communications concerning affidavits submitted by the Employee Opinion Witnesses, Mainey, Rice, and DeMita (excluding communications as set forth in (1)

25

above);

(c) any and all communications between Weinberger and/or Pagano and Mainey (excluding communications as set forth in (1) above); and

(d) any and all communications between Weinberger and/or Pagano and Rice (excluding communications as set forth in (1) above).

**C.    PMC's Requests Related to Graco's Revised Supplemental Privilege Log**

Here, PMC seeks to compel the following:

(1) all documents listed in Exhibit G to the Declaration of Robyn Callahan with entry numbers corresponding to Graco's Revised Supplemental Privilege Log.

The Court finds that, based upon the allegations set forth in the Complaint and PMC's defenses thereto, in addition to the fact that Commette is a named Defendant, all of the privileged material sought by PMC is relevant. Graco has admitted as much. *See* Pl.'s Opp'n Br. at 13. Assuming Graco is entitled to assert privilege with respect to the documents requested, a review of Graco's opposition papers and Revised Supplemental Privilege Log demonstrates that Graco has failed to sustain its burden with respect to proving its claim(s) of privilege by sufficiently describing the nature of the materials not produced.

Even if Graco has met its burden – a point the Court does not concede – the Court finds that Graco has exercised an implied waiver with respect to the requested materials. Graco's Complaint arises as a result of its acquisition of Gusmer from PMC, a transaction executed through two (2) SPAs. Among other claims, Graco has alleged that PMC and Commette breached their contractual obligations and legal duties, including the implied duty of good faith and fair dealing. In essence, then, Graco's lawsuit revolves around the conduct, intent, state of mind, and actions leading up to,

during, and after consummation of the SPAs.  Even if Graco's prosecution of this matter is focused on actions that took place substantially thereafter, due to the allegations raised by Graco, PMC is entitled to mount a defense based upon what occurred before, during and after the SPAs – including review and use of related communications.  Allowing Graco to assert privilege as to the materials requested by PMC would deny Defendants access to information vital to their defense.  Further, the Court finds that Graco's claims – in fairness – require examination of the privileged materials requested by PMC.  As set forth *In re Human Tissue Prods. Liab. Litigation*, 255 F.R.D. 151, 158 (D.N.J. 2008), privilege may not be used as both a sword and a shield.

## IV.    CONCLUSION AND ORDER

The Court having considered the papers submitted and opposition thereto, and for the reasons set forth above;

**IT IS** on this 14th day of February, 2011,

**ORDERED** that Plaintiff's Motion to compel regarding Graco's privilege logs [dkt. entry no. 474] compel is **GRANTED** in part and **DENIED** in part, consistent with the findings set forth above; and it is further

**ORDERED** that Graco shall provide the materials set forth above related to the Employee Opinion Witnesses, Mainey, Rice, and DeMita by **March 4, 2011**; and it is further

**ORDERED** that Graco shall provide the materials set forth above related to its Revised Supplemental Privilege Log by **March 4, 2011**.

s/ *Douglas E. Arpert*
**DOUGLAS E. ARPERT**
**UNITED STATES MAGISTRATE JUDGE**

27