<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | | |
|---|---|---|
| **GRACO, INC., et al.,** | : | **Civil Action No.: 08-1304 (FLW)** |
| | : | |
| **Plaintiffs,** | : | |
| | : | |
| **v.** | : | **REPORT & RECOMMENDATION** |
| | : | |
| **PMC GLOBAL, INC., et al.,** | : | |
| | : | |
| **Defendants.** | : | |

<u>**ARPERT, U.S.M.J**</u>

**I.      INTRODUCTION**

This matter comes before the Court on Motion by Defendants PMC Global, Inc., PMC, Inc.

("PMC Inc."), PMC Europe Investments, S.L., Denis S. Commette ("Commette"), and Gama

Machinery USA, Inc. ("Gama USA") (collectively, "Defendants" or "PMC") for sanctions pursuant

to FED. R. CIV. P. 11 and  FED. R. CIV. P. 37 [dkt. entry no. 483], returnable October 18, 2010.

Plaintiffs Graco, Inc. and Graco Minnesota, Inc. (collectively, "Plaintiffs" or "Graco") submitted

opposition on October 4, 2010.  This matter was referred here for a Report and Recommendation.

The Court has fully reviewed and considered the parties' submissions pursuant to FED. R. CIV. P. 78

and, for the reasons stated below, recommends that Defendants' Motion be denied.

**II.      FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

Graco filed a Complaint [dkt. entry no. 1] on March 14, 2008 alleging "breach of contract

and related duties" (*see* Pl.'s Complaint, dkt. entry no. 1 at 19-21), "tortious interference" (*Id.* at 21-

23), "misappropriation of trade secrets and misuse of confidential business information" (*Id.* at 23-

24), violation of the "Lanham Act" (*Id.* at 24-25), violation of the "New Jersey Fair Trade Act" (*Id.*

at 25-26), "unfair competition" (*Id*. at 26), and "unjust enrichment" (*Id*.) related to its acquisition of Gusmer Corporation and Gusmer Europe (collectively, "Gusmer") from PMC by way of two (2) Stock Purchase Agreements ("SPA") (*Id*. at 7, ¶¶ 28-29).  More specifically, Graco alleges that Gama USA, a Delaware corporation and PMC, Inc., subsidiary that "also does business as Gama-Europe and Garraf Maquinaria, S.A." (*see* Pl.'s Second Amended Complaint, dkt. entry no. 91 at 3, ¶ ), and Garraf Maquinaria S.A. ("Garraf"), a Spanish corporation with PMC affiliations that "also does business as Gama and Gama-Europe" (*see* Pl.'s Second Amended Complaint, dkt. entry no. 91 at 3, ¶ 7), "[were] manufacturing, marketing, and selling spare parts for Gusmer products without Graco's permission...[and were] using Graco Trade Secrets and Confidential Business Information to manufacture these spare parts".  *See* Pl.'s Complaint at 17, ¶ 75; *see also id*. at 17-18, ¶¶ 76-79. Graco filed an Amended Complaint on July 24, 2008 [dkt. entry no. 36] and a Second Amended Complaint on May 22, 2009 [dkt. entry 91].  The Second Amended Complaint sets forth a list of infringing Gama USA and Garraf products then known to Graco.  *See* Pl.'s Second Amended Complaint at 21, ¶ 93.  Graco asserts that this is a "non-exclusive" list.  *See* Pl.'s Opp'n Br. at 3.

Upon learning about a "new Gama USA product line" ("new equipment") in October 2009 [dkt. entry no. 195], Graco informed the Court and noted that the new equipment might "also represent a further misappropriation of Graco's trade secrets" [dkt. entry no. 192].  Thereafter, on December 7, 2009, the Court ordered expedited discovery surrounding these issues. [dkt. entry no. 221] The parties disagree as to the significance and meaning of this discovery.  PMC claims that the new equipment is "not based on any Graco confidential information" and that, in fact, "Gama USA products did not exist when Graco filed its lawsuit".  *See* Def.'s Br. at 2-3; *see also* 4-6 (outlining allegations Graco has made which PMC contends lack factual support).  As such, "PMC has

2

repeatedly asked Graco to withdraw its new allegations and confine itself to the allegations contained in its Second Amended Complaint". *Id*. at 3. Oppositely, Graco maintains that the new equipment is "based upon Graco/Gusmer trade secrets" and that the new equipment is "nothing more than another re-tread of trade secret designs and tolerances that Defendants stole from Graco". *See* Pl.'s Opp'n Br. at 8-9. Further, Graco asserts that the Court overruled PMC's objections on September 1, 2010 by finding that discovery related to the new equipment was relevant. *Id*. at 11.

Separately, on April 5, 2010, PMC noticed the deposition of Graco pursuant to FED. R. CIV. P. 30(b)(6). *See* Def.'s Decl. of K. Joon Oh ("Oh"), Ex. M at 1. Therein, PMC requested a witness that could testify regarding

> Graco and Gusmer's efforts, if any, to maintain the confidentiality of its alleged trade secrets, including, but not limited to, any policy (written or verbal), procedure, practice, training (and records of such training), hand-outs, handbooks, and confidentiality or nondisclosure agreement with employees, vendors or any other individuals or entities which were given access to Graco's alleged trade secrets.

*Id*. at 11, ¶ 49 ("Topic 49"). Graco designated Mr. Nick Pagano ("Pagano") as its witness with respect to Topic 49. *See* Def.'s Decl. of Oh, Ex. N. PMC took Pagano's deposition on July 29, 2010. *See* Def.'s Decl. of Oh, Ex. I. The parties disagree as to whether Pagano meaningfully complied with Rule 30(b)(6). PMC claims that Pagano "could not answer questions about Graco's confidentiality policies and procedures" (*see* Def.'s Br. at 15-16) while Graco contends that Pagano "testified adequately" (*see* Pl.'s Opp'n Br. at 22).

On September 24, 2010, PMC filed the instant Motion seeking a Court Order "(1) confin[ing] Graco's trade secret misappropriation claims to the products identified in Paragraph 93 of the Second Amended Complaint and (2) enter[ing] evidentiary sanctions precluding Graco from contradicting

or supplementing Pagano's testimony concerning the non-existence of trade secret policies and procedures" in addition to fees and costs.  *See* Def.'s Br. at 21-22.

A.    **PMC's Arguments in Support of Sanctions**

With respect to Rule 11 sanctions, PMC claims: "(1) Graco's knowing and irresponsible failure to investigate before making baseless allegations warrants Rule 11 sanctions" (Def.'s Br. at ii); "(2) the undisputed facts are contrary to Graco's allegations" (*Id.*); "(3) Graco ignored the facts and purposefully pursued claims on the new equipment" (*Id.*); "(4) Graco's subjective beliefs are irrelevant" (*Id.*); "(5) Graco's own disclosures destroyed any misappropriation claims" (*Id.*); and "(6) PMC has complied with the safe harbor requirements of subsection (c)(2)" (*Id.*).  With respect to Rule 37 sanctions, PMC claims that "Graco's failure to meaningfully comply with Rule 30(b)(6) necessitates Rule 37 sanctions".  *Id.*

1.    **Graco's knowing and irresponsible failure to investigate before making baseless allegations warrants Rule 11 sanctions.**

PMC claims that Graco "ignored its non-delegable and absolute duty to conduct a pre-filing investigation regarding Gama USA's new equipment" and further asserts that Graco "admits that it never conducted any test, examination, or inspection of the Classic proportioner or the Vortex spray gun".  *Id.* at 7.  As such, PMC argues that "Graco's repeated representations concerning PMC's new equipment are not well grounded in law and fact and thereby violate Rule 11".  *Id.* at 7-8.  Citing *Garr v. U.S. Healthcare, Inc.*, 22 F.3d 1274, 1279-81 (3d Cir. 1994) and *Bradgate Assoc., Inc. v. Fellows, Read & Assoc., Inc.*, 999 F.2d 745, 752 (3d Cir. 1993), PMC argues that it is a "violation of Rule 11 to make any assertion to the Court that the asserting party did not personally investigate in advance" and that Graco committed such a violation, as Graco "has known of PMC's new

4

equipment since October 2009" but chose "not to acquire or examine a Classic proportioner and only acquired a Vortex spray gun moments before the discovery clean-up period expired". *Id*. at 8.  Citing *Garr*, 22 F.3d at 1280, PMC maintains that Graco "faced no statute of limitations problem compelling immediate actions, no need for emergency relief, and no possibility that PMC would evade process".  *Id*.  At this point, PMC claims that "Graco must be precluded from accusing the new Classic product line of infringement" as Graco had "over seven months between first learning about Gama USA's new equipment and the return date of its trade-secret opposition to conduct a sufficient investigation", "failed to conduct its own investigation", and "never had any facts, data or analysis to support the notion that Gama USA's new equipment incorporated any alleged trade secrets".  *Id*. at 8-9.

### (a)      The undisputed facts are contrary to Graco's allegations.

PMC maintains that the "only facts that Graco had regarding PMC's new equipment", and the "only information that exists", confirm that "none of Graco's trade secrets...were misappropriated".  *Id*. at 9.  PMC notes that the Court permitted Graco to obtain limited discovery about "the new equipment" in December 2009 in order to "confirm that Gama USA's new equipment was independently designed and developed".  *Id*.  Thereafter, PMC provided Graco with relevant paper discovery and made relevant individuals available for deposition.  *Id*.  PMC argues that the facts are "unequivocal", as "PMC's new equipment was designed and manufactured without misappropriating any protectable trade secrets".  *Id*.

### (b)      Graco ignored the facts and purposefully pursued claims on the new equipment.

PMC maintains that, "even in light of...contrary facts", Graco has continued to represent to

5

the Court that "PMC misappropriated alleged trade secrets vis-a-vis MDI".[1]  *Id*. at 9-10.  PMC

argues that Graco's claims that "MDI must have misappropriated Graco's engineering drawings,

tolerances, and dimensions for the Gusmer H20/35 proportioner pumpline and the Gusmer Gap

spray gun in order to design and manufacture PMC's new Classic proportioner and Vortex spray

gun" are "unsubstantiated", fail in terms of "Graco's obligations under Rule 11", and "directly

contradict" testimony provided by MDI's principal, Mark Daugherty ("Daugherty").  *Id*. at 10.

Specifically, PMC claims that Daugherty testified that "MDI reverse engineered equipment available

on the open market without using any of Graco's allegedly protected trade secrets".  *Id*.  PMC argues

that, despite these facts, Graco remains "unfazed" and "continues to reassert its allegations without

any factual basis at all".  *Id*.

### (c)      Graco's subjective beliefs are irrelevant.

PMC argues that, although Graco "may subjectively believe that its trade secrets were

misappropriated to create PMC's new equipment", "mere subjective belief is inadequate".  *Id*.

Citing *Bradgate*, 999 F.2d at 751 and *Lieb v. Topstone Indus. Inc.*, 788 F.2d 151, 157 (3d Cir. 1986),

PMC states that the Third Circuit "has consistently noted that the Rule 11 test is now an objective

one of reasonableness which seeks to discourage pleadings without factual foundation, even though

the paper was not filed in subjective bad faith".  *Id*. at 10-11.  Here, PMC argues that Graco has "no

objective facts" and has attempted "post-hoc" to uncover a different misappropriation theory through

discovery.  Citing *Garr*, 22 F.3d at 1279 and *Moser v. Brete Harte Union High School Dist.*, 366 F.

Supp. 2d 944, 950 (E.D. Cal. 2005), PMC maintains that "Graco cannot be absolved of its Rule 11

---

[1]PMC notes that MDI is "an independent contract supplier that has manufactured parts for Gusmer and
Graco for...20 years".  *Id*. at 10.

violations by any post-filing facts" because "a shot in the dark is a sanctionable event, even if it somehow hits the mark". *Id.* at 11. Citing *Atkinson v. Middlesex County*, 2010 WL 398500, at *3 (D.N.J. 2010), *Micro Motion, Inc. v. Kane Steel Co., Inc.*, 894 F.2d 1318, 1327 (Fed. Cir. 1990), and *Zuk v. E. Pa. Psychiatric Inst. of the Med. Coll. of Pa.*, 103 F.3d 294, 299 (3d Cir. 1996), PMC argues that "no amount of after-the-fact investigation relieves Graco of its pre-filing obligations" as this Court has held that "the post hoc approach is [an] improper" fishing expedition. *Id.* at 11-12.

### (d)     Graco's own disclosures destroyed any misappropriation claims.

PMC argues that even "assuming...Graco had evidence that MDI used Graco's engineering drawings, tolerances, and dimensions with PMC's new equipment", Graco still has "no factual or legal basis for alleging misappropriation related to MDI and PMC's new equipment". *Id.* at 12. PMC maintains that Graco "publicly disclosed" its alleged trade-secret materials "to MDI and its other independent contractors without confidentiality agreements" and, therefore, "there can be no misappropriation regardless of what MDI did". *Id.* PMC notes that "Graco represented in February 2010 that it investigated and produced all confidentiality agreements...concerning its alleged trade secrets, including any confidentiality agreements with independent suppliers". *Id.* Further, PMC points out that "notably absent was any confidentiality agreement with MDI or other independent contractors to which Graco disclosed its...allegedly trade secret information", that "Graco admitted that it has no record of a confidentiality agreement with MDI or other independent contractors", and that "Graco has confirmed that it repeatedly published the engineering drawings at issue...to MDI without a confidentiality agreement". *Id.* at 12-13. Importantly, PMC claims that Graco's "purchase orders with its independent contract suppliers...lack any confidentiality provision". *Id.* at 13.

PMC argues that "an alleged trade secret must remain confidential to be protected under trade

secrets laws" because "information that has been made public cannot be misappropriated". *Id*. Citing *Watson v. City of Salem*, 934 F. Supp. 643, 663 (D.N.J. 1995) and *Bradgate*, 999 F.2d at 752, PMC maintains that "Graco was required to investigate beforehand all pertinent details that an attorney or client was in a position to know or acquire...including all of the relevant details...that were easily ascertainble with the smallest modicum of investigation". *Id*. Citing *Zuk*, 103 F.3d at 299 and *Manhattan Life Ins. Co. v. A.J. Stratton Syndicate*, 132 F.R.D. 139, 143 (S.D.N.Y. 1990), PMC argues that the "smallest modicum of investigation of Graco's own records and documents it...produced before discovery closed reveal that Graco had no confidentiality agreements and no Rule 11 basis for alleging that it had protected, confidential trade secrets related to PMC's new equipment before Graco filed its Trade Secret Opposition and related pleadings and...motions". *Id*. at 13-14. Thus, pursuant to *Flotec, Inc. v. S. Research, Inc.*, 16 F. Supp. 2d 992, 1003 (S.D. Ind. 1988) and *Crown Ind., Inc. v. Kawneer Co., Inc.*, 335 F. Supp. 749, 761 (N.D. Ill. 1971), PMC claims that "without such confidentiality agreements, the information published to its third-party suppliers was not confidential and therefore not protectable". *Id*. at 14.

PMC argues that under the circumstances, sanctions are necessary to "forestall any additional prejudice to PMC at Graco's hands". *Id*. Citing *Bradgate*, 999 F.2d at 751, *Lieb*, 788 F.2d at 157, and *Garr*, 22 F.3d at 1279, PMC maintains that Graco's "numerous Rule 11 violations cannot be excused by a good faith belief, mistake, or inaction". *Id*. Further, citing *Garr*, 22 F.3d at 1279 and *Leuallen v. Borough of Paulsboro*, 180 F. Supp. 2d 615, 618 (D.N.J. 2002), PMC maintains that "if [Graco's] counsel was unable to verify that Graco's allegations had a basis in fact, [its] lawyers are precluded by Rule 11 from taking a shot in the dark". *Id*.

        **(e)**        **PMC has complied with the safe harbor requirements of**

8

subsection (c)(2).

PMC maintains that under Rule 11(c)(2), "Graco must be given 21 days notice of the sanctionable pleading so as to afford an opportunity to modify or withdraw the offending allegations". *Id*. at 15.  PMC argues that "Graco has been on notice of the offending allegations since November 2009", was "served with PMC's informal sanctions motion on August 13, 2010", and "has had ample opportunity to invoke the safe harbor protections...but refuses to withdraw or amend any of the offending pleadings." *Id*.  PMC claims that this issue is ripe for consideration. *Id*.

### 2.    Graco's failure to meaningfully comply with Rule 30(b)(6) necessitates Rule 37 sanctions.

PMC claims that Pagano was "unable to testify about Graco's policies and procedures with respect to protecting its confidential information, despite representations by the witness and counsel that he was sufficiently educated on Topic 49". *Id*. at 18.  PMC cites relevant portions of Pagano's deposition to support its contention that Graco failed to prepare Pagano on Topic 49.  *Id*. at 18-19; *see also* Def.'s Decl. of K. Joon Oh ("Oh"), Ex. I at 72, 78-79, 92, 117, 189-190.  PMC argues that the number of "hours the witness spent preparing", the number of "documents he purportedly reviewed", and the number of "people he spoke with" are all "immaterial" if this preparation left him unable to answer questions related to Topic 49.  Citing *Coleman v. Blockbuster, Inc*., 238 F.R.D. 167, 171 (E.D. Pa. 2006), PMC maintains that no matter if Pagano "spent an entire year preparing for hist testimony", "Graco would still be deemed to have produced an uneducated witness" if he showed up unable to answer "numerous pertinent questions".  *Id*. at 19.

PMC points out that Topic 49 "expressly seeks information as to Graco's policies and

procedures regarding the confidentiality of its alleged trade secrets" and claims that the "fact that Pagano could not affirmatively answer rudimentary questions as to the existence of policies, let alone general questions about what the policies covered or how they were implemented in practice, is no different than if the witness had not shown up at all". *Id*. at 19-20.  Citing *Harris v. New Jersey*, 259 F.R.D. 89, 92 (D.N.J. 2007) and *Ierardi v. Lorillard, Inc.*, 1991 WL 158911 (E.D. Pa. 1991), PMC maintains that the purpose of placing the burden to educate the witness on the corporation under Rule 30(b)(6) is to "avoid finger-pointing and endless buck-passing" and claims that "the onus was on Pagano...to identify the [relevant] documents and be able to substantively discuss them". *Id*. at 20.  Further, PMC points out that although it "couldn't have shown [Pagano] the documents [because] Graco has not produced them", Pagano "could have brought an index of the policies to the deposition with him (or...the policies themselves) or any other documents that he felt he needed to reference or rely upon to sufficiently respond to PMC's inquiries". *Id*.

Citing FED. R. CIV. P. 37(d), *Ideal Aerosmith, Inc. v. Acutronic USA, Inc.*, 2008 WL 4693374 (W.D. Pa. 2008), *Digital Encoding Factory v. Iron Mountain Info. Mgmt, Inc.*, 2009 WL 1532150 (W.D. Pa. 2009), *Guy Chemical Co. v. Romaco N.V.*, 2007 WL 184782 (W.D. Pa. 2007), PMC claims that sanctions are appropriate "in light of Pagano's failure to provide testimony about Graco's confidentiality policies". *Id*. at 20-21.  PMC argues that it is "entitled to hold Graco to Pagano's testimony...and preclude any contrary evidence showing the existence of any Graco confidential information or trade secret policies or procedures" and further argues that "Rule 37(d) mandates monetary sanctions...which are appropriate here given Graco's failure to produce an educated witness on Topic 49". *Id*. at 21.

**B.    <u>Graco's Arguments in Opposition to Sanctions</u>**

10

With respect to Rule 11 sanctions, Graco claims: "(1) PMC's Rule 11 motion is procedurally defective" (Pl.'s Opp'n Br. at i); "(2) Graco has done nothing sanctionable by pressing claims regarding the new equipment" (*Id*.); and "(3) PMC should be made to pay Graco's fees and costs in connection with this motion" (*Id*.).  With respect to Rule 37 sanctions, Graco claims: "(1) Pagano was prepared to testify" (*Id*.); "(2) Pagano provided ample testimony on Graco's product data management software" (*Id*.); "(3) Pagano provided ample testimony on Graco's policies for determining what information is confidential" (*Id*.); and "(4) Pagano provided ample testimony relating to Graco's nondisclosure agreements" (*Id*.).

### 1.    PMC's Rule 11 motion must be denied.

### (a)    PMC's Rule 11 motion is procedurally defective.

Citing FED. R. CIV. P. 11(c)(2), *Ortiz v. Auto. Rentals, Inc*., 2010 U.S. Dist. LEXIS 82590, at *5 (D.N.J. 2010), *In re Schaefer Salt Recovery, Inc*., 542 F.3d 90, 99 (3d Cir. 2008), and *Elliott v. Tilton*, 64 F.3d 213, 216 (5th Cir. 1996), Graco argues that a Rule 11 motion for sanctions "must be served under Rule 5" and that such a motion may not be filed until the requesting party "first presents the motion to the offending party, and allows 21 days for the other party to withdraw or correct the challenged issue".  *Id*. at 12.  Here, Graco maintains that PMC "did not serve their Motion for Rule 11 sanctions upon Graco before filing it".  *Id*.  Rather, Graco contends that PMC filed an informal application with the Court on August 13, 2010 but "did not serve that application before filing it" on September 24, 2010.  *Id*. at 12-13.  Graco points out that PMC cites "absolutely no legal authority" to support its proposition that the requirements set forth above "should be ignored because Graco has been on notice of the offending allegations since November 2009 and was served with PMC's informal sanctions motion on August 13, 2010".  *Id*. at 13.  Citing FED. R. CIV. P.

11(c)(1) and *Barber v. Miller*, 146 F.3d 707, 710 (9th Cir. 1998), Graco claims that an "informal warning" does not substitute for formal service of a motion and that "it would be legal error" for the Court to grant PMC's Motion.  *Id.*

> **(b)     Graco has done nothing sanctionable by pressing claims regarding the new equipment.**

Citing *Business Guides, Inc. v. Chromatic Communications Enters., Inc.*, 498 U.S. 533, 551 (1991), *Garr v. U.S. Healthcare, Inc.*, 22 F.3d 1274 (3d Cir. 1994), Graco states that "Rule 11 imposes an affirmative duty on a party to conduct an inquiry into the law and facts that is reasonable under the circumstances before filing".  *Id.* at 13.  Citing *Ford Motor Co. v. Summit Motor Prods., Inc.*, 930 F.2d 277, 289 (3d Cir. 1991), *Jones v. Pittsburgh Nat'l Corp.*, 899 F.2d 1350, 1359 (3d Cir. 1990), *Bensalem Twp. v. International Surplus Lines Ins. Co.*, 38 F.3d 1303, 1314 (3d. Cir. 1994), *Doering v. Union County Bd. of Chosen Freeholders*, 857 F.2d 191, 194 (3d. Cir. 1988), *Morristown Daily Record, Inc. v. Graphic Communications Union, Local 8N*, 832 F.2d 31, 32 n.1 (3d Cir. 1987), Graco states that an "inquiry is considered reasonable under the circumstances if it provides the party with an objective knowledge or belief at the time of the filing of a challenged paper that the claim was well-grounded in law and fact", that "sanctions may be imposed only in exceptional circumstances", and that "Rule 11 is not to be used routinely when the parties disagree about the correct resolution of a matter in litigation".  *Id.* at 13-14.

Here, Graco maintains that PMC's request for Rule 11 sanctions is based upon its contention that their "new equipment was developed without using trade secrets misappropriated from Graco" while Graco contends that the "new equipment does incorporate Graco trade secrets, that Graco/Gusmer took reasonable steps to protect these trade secrets, and that PMC or its agents

misappropriated them from Graco" based upon evidence Graco has cited in support of these claims. *Id*. at 14.  Graco points out that the "new equipment did not exist when Graco initiated this litigation" and that it "has made every reasonable effort to learn precisely what products PMC [was] developing and manufacturing".  *Id*. at 15.  Graco states that by the time the Second Amended Complaint was filed, "discovery had provided...an apparently complete list of the products that PMC [was] manufacturing and selling that incorporated Graco/Gusmer trade secrets" and that "all of these products were manufactured by Garraf".  *Id*.  However, Graco notes that it did not know that "the Garraf machines did not reflect the universe of spray foam equipment that PMC was manufacturing, marketing, or planning at the time of the Second Amended Complaint", as PMC "had been preparing to launch a second generation of products for months" but "kept the existence of these new products secret from Graco...even though Graco had asked direct questions that called for information about the new products".  *Id*.  Graco argues that "despite its diligent efforts to investigate and pursue discovery from PMC, [it] did not learn about the new machines until PMC publicly launched them more than ten months after they were conceived".  *Id*.

Graco points out that when it learned about "the new equipment from a promotional press release in October 2009, it immediately sought discovery regarding those products".  *Id*. at 16. Graco claims that "discovery unearthed evidence that the new equipment incorporated trade secret specifications and tolerances stolen from Graco".  *Id*.  Graco argues that "given that PMC [has] yet to produce [its] own documents related to the new equipment, Graco agrees there is more to learn about the extent of PMC's unlawful activity" and "is precisely why Graco moved the Court to compel PMC to provide complete discovery responses relating to the development of the new equipment" and "why Graco sought to provide...limited materials PMC [has] produced to its

13

technical expert". *Id*. Graco maintains that once it "receives complete information regarding the development of the new equipment, and once its expert has completed his review of this information, Graco expects to have an even stronger case that PMC's new equipment incorporates misappropriated...trade secrets". *Id*. at 17. Further, Graco claims that it "has conducted a reasonable inquiry into the new machines...[which] has given rise to evidentiary support for Graco's contention that the new machines incorporate its trade secrets", and, Graco believes that its factual contentions "will likely have additional evidentiary support after a reasonable opportunity for further investigation or discovery". *Id*. Thus, Graco believes "there is nothing...that could possibly warrant...Rule 11 sanctions". *Id*.

       **(c)**    **PMC should be made to pay Graco's fees and costs in connection with this motion.**

Graco notes that "if warranted", Fᴇᴅ. R. Cɪᴠ. P. 11(c)(2) allows the Court to "award to the prevailing party the reasonable expenses, including attorneys' fees, incurred for the motion". *Id*. at 17. Graco argues that it is "beyond the rules of zealous advocacy" for PMC to seek Rule 11 sanctions based upon Graco "lacking evidence on the new equipment", as Graco "has an evidentiary basis to support its allegations" and "any limitations in Graco's evidence are the result of PMC's own misrepresentations and omissions". *Id*. Similarly, Graco argues that it is "beyond the pale" for PMC to suggest that Graco should be sanctioned for failure to investigate when it is, in fact, "Defendants themselves who have systematically blocked Graco's legitimate efforts to obtain discovery relating to that equipment". *Id*. at 17-18. Graco points out that "the Court has repeatedly rejected PMC's arguments in the context of fact and expert discovery motions" with respect to the "new equipment" and claims that "PMC will continue making this argument" if the "Court does not

take a firm position". *Id*. at 18.  Therefore, Graco requests that the Court order PMC to reimburse the fees and expenses Graco has incurred in responding to this Motion and to PMC's prior informal application for Rule 11 sanctions.  *Id*.

### 2.   PMC's Rule 37 motion must be denied.

### (a)   Pagano was prepared to testify.

Graco argues PMC's Motion is based upon the fact that, in seventeen (17) hours of deposition testimony which produced almost five hundred (500) pages of transcript, Pagano "was unable to answer five questions with 100% certainty".  *See* Pl.'s Opp'n Br. at 22.  Graco notes that Topic 49 within PMC's deposition notice was "exceptionally broad" and "implicates scores of policies and procedures".  *Id*. at 20.  Graco points out that Topic 49 asks Graco's designee to be prepared to answer questions with respect to

> Graco and Gusmer's efforts, if any, to maintain the confidentiality of its alleged trade secrets, including, but not limited to, any policy (written or verbal), procedure, practice, training (and records of such training), hand-outs, handbooks, and confidentiality or nondisclosure agreement with employees, vendors or any other individuals or entities which were given access to Graco's alleged trade secrets.

*See* Pl.'s Decl. of Mark L. Johnson ("Johnson"), Ex. I at 11, ¶ 49.  Graco maintains that Pagano spent "in excess of 100 hours preparing for his deposition", "approximately 40 hours with his attorney preparing for his deposition" and, "over the course of six weeks", met with "half a dozen of Graco's attorneys" in addition to meeting with counsel "before he was ever designated as a Rule 30(b)(6) witness".  *See* Pl.'s Opp'n Br. at 20, 22.  Graco states that Pagano "spoke at length" with "other Graco employees", including "eight to ten meetings in which [Pagano] and Graco's counsel spoke with other Graco employees" and "eight additional Graco employees with whom [Pagano] met on

his own". *Id* at 20-21.  In addition, Pagano "reviewed countless documents to prepare for his deposition", including "a binder of affidavits, interrogatory responses, briefs, key deposition transcripts and other documents" and "hundreds of additional documents beyond those contained in his notebook". *Id.* at 21.

>    **(b)**     **Pagano provided ample testimony on Graco's product data management software.**

Graco maintains that PMC's "primary complaint" is that Pagano was unable to answer with certainty several questions about Graco's Product Data Management software ("PDM")". *Id.* at 22. Graco points out that PDM, "a software system that Graco uses to store trade secret engineering drawings", is "not expressly mentioned within Topic 49" and PMC provided "no advance warning that [it] intended to cover issues relating to PDM in detail". *Id.* at 22-23.  Graco cites relevant portions of Pagano's deposition to support its contention that Pagano "testified at length and in detail about how [PDM] works". *Id.* at 23; *see also* Pl.'s Decl. of Johnson, Ex. H at 61-67, 76-81, 84, 87-88.  Graco points out that Pagano testified that he "remembered reviewing policies on PDM access" and stated that "the policy exists", but could not remember "exactly what the policy in question said". *Id.* at 24; *see also* Pl.'s Decl. of Johnson, Ex. H at 73.  Graco "admits that Pagano was unable to recite the policy regarding PDM access verbatim" but, contrary to PMC's account, "did testify about how the policy worked". *Id.* at 26; *see also* Pl.'s Decl. of Johnson, Ex. H at 75.  Graco also argues that PMC's complaint that Pagano "did not know whether there were logs of who has accessed Graco's PDM system" is a stretch, as Topic 49 "speaks to Graco's policies and procedures for maintaining the confidentiality of trade secrets". *Id.* at 28.  Graco notes that Pagano testified that "he was uncertain about what functionality PDM has related to history" but that someone in "Graco's

16

IT Department would know the answer to that specific question". *Id*.; *see also* Pl.'s Decl. of Johnson, Ex. H at 78-79.

Graco maintains that PMC seeks "sanctions because Pagano was unable to memorize and recite details of Graco's policies on PDM access", but argues that "memorization is neither reasonable nor required under Rule 30(b)(6)". *Id*. at 27. Further, Graco maintains that PMC's complaint that "Pagano was unsure of the precise policy on terminating access to PDM upon an employee's departure" is unfounded, as the answer to that question was implicit in Pagano's testimony that "access to specific parts of PDM is based upon...job function". *Id*.; *see also* Pl.'s Decl. of Johnson, Ex. H at 75. Graco claims that the only truly relevant question relating to access to PDM upon an employee's termination is "whether Commette's access to Graco's PDM system was terminated upon his departure", but PMC failed to effectively ask this question. *Id*. at 27; *see also* Pl.'s Decl. of Johnson, Ex. H at 92.

> **(c)** **Pagano provided ample testimony on Graco's policies for determining what information is confidential.**

Graco claims that PMC's complaint that Pagano "was not sure whether Graco has a policy for determining what information is proprietary or confidential" misrepresents Pagano's testimony. *Id*. at 28. Graco cites relevant portions of Pagano's deposition to support its contention that Pagano "testified that Graco has numerous policies and procedures that speak to whether a given piece of information is proprietary or confidential". *Id*. at 28-29; *see also* Pl.'s Decl. of Johnson, Ex. H at 57-60, 65-66, 103-109, 170-183. Graco maintains that Pagano "already testified about the various policies and procedures Graco uses to identify, describe, and protect confidential information" prior to PMC's question (near the end of Pagano's deposition) about whether Graco had a policy for

determining what information is proprietary or confidential. *Id*. at 29. Further, Graco notes that its attorney objected "as to form, asked and answered" prior to Pagano's answer that he was not "sure". *Id* at 29-30; *see also* Pl.'s Decl. of Johnson, Ex. H, p. 190. When taken in context with the entire deposition, Graco argues that "Pagano provided" responsive information and that Graco "should not be sanctioned simply because its witness was uncertain how to answer the question when it was asked again in a different way". *Id*. at 30.

### (d)   Pagano provided ample testimony relating to Graco's nondisclosure agreements.

Graco claims that PMC's complaint that Pagano "was unprepared to discuss policies on nondisclosure agreements with suppliers" is "false". *Id*. at 30. Graco cites relevant portions of Pagano's deposition to support its contention that Pagano "provided extensive information about Graco's policies and procedures regarding the use of nondisclosure agreements with vendors". *Id*. at 30-31; *see also* Pl.'s Decl. of Johnson, Ex. H at 113-117, 101-111, 121-124. Graco maintains that PMC's "sole complaint...that Pagano was unsure whether Graco actually possesses a copy of every single nondisclosure agreement it has ever had with any of its supplies", while perhaps factually accurate, does not warrant sanctions. *Id*. at 31-32. Graco notes that Pagano "testified that Graco has a policy to maintain copies of these agreements, and that he had reviewed several such agreements with suppliers" but "could not say with certainty that Graco has actually maintained such copies in every single instance". *Id*. at 31-32; *see also* Pl.'s Decl. of Johnson, Ex. H at 111, 113-121. Graco argues that Pagano "cannot reasonably be expected to know whether Graco has maintained copies of 100 percent of the nondisclosure agreements it has with suppliers around the world", as "no corporation of Graco's size and complexity could ever state under oath that its document retention

policies are followed to the letter 100% of the time" nor does Rule 30(b)(6) "require that level of

certainty". *Id*. at 32.

## III.   DISCUSSION

### A.   Legal Standards

#### 1.   FED. R. CIV. P. 11

Pursuant to FED. R. CIV. P. 11(b),

> By presenting to the court a pleading, written motion, or other paper – whether by signing, filing, submitting, or later advocating it – an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:
>
> (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;
>
> (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;
>
> (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and
>
> (4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information.

Pursuant to FED. R. CIV. P. 11(c),

> (1) If, after notice and a reasonable opportunity to respond, the court determines that Rule 11(b) has been violated, the court may impose an appropriate sanction on any attorney, law firm, or party that violated the rule of is responsible for the violation.   Absent exceptional circumstances, a law firm must be held jointly responsible for a violation committed by its partner, associate, or employee.

19

> (2) A motion for sanctions must be made separately from any other
> motion and must describe the specific conduct that allegedly violates
> Rule 11(b).  The motion must be served under Rule 5, but it must not
> be filed or be presented to the court if the challenged paper, claim,
> defense, contention, or denial is withdrawn or appropriately corrected
> within 21 days after service or within another time the court sets.  If
> warranted, the court may award to the prevailing party the reasonable
> expenses, including attorney's fees, incurred for the motion.
>
> ...(4) A sanction imposed under this rule must be limited to what
> suffices to deter repetition of the conduct or comparable conduct by
> other similarly situated.  The sanction may include nonmonetary
> directives; an order to pay a penalty into court; or, if imposed on
> motion and warranted for effective deterrence, an order directing
> payment to the movant of part or all of the reasonable attorney's fees
> and others expenses directly resulting from the violation.

"The first step in a Rule 11 analysis is to determine whether the party filing the Rule 11 motion complied with the safe harbor provision of Rule 11(c)(2).  Under that provision, a party cannot file a motion for sanctions until it first presents the motion to the offending party, and allows 21 days for the other party to withdraw or correct the challenged issued".  *Ortiz v. Auto Rentals, Inc*., 2010 U.S. Dist. LEXIS. 82590, at *5 (D.N.J. 2010); *see also In re Schaefer Salt Recovery, Inc*., 542 F.3d 90, 99 (3d. Cir. 2008).   Warnings and informal applications are not considered motions, however, "and the Rule requires service of a motion".  *Barber v. Miller*, 146 F.3d 707, 710 (9th Cir. 1998); *see also* FED. R. CIV. P. 11 Advisory Committee Note (1993).

With respect to substance, "the rule imposes on counsel a duty to look before leaping and may be seen as a litigation version of the familiar railroad crossing admonition to 'stop, look, and listen.'" *Lieb v. Topstone Indus. Inc*., 788 F.2d 151, 157 (3d Cir. 1986).  Rule 11 is "intended to discourage pleadings that are 'frivolous, legally unreasonable, or without factual foundation, even though the paper was not filed in subjective bad faith'".  *Lieb*, 788 F.2d at 157(*quoting Zaldivar v.*

*City of Los Angeles*, 780 F.2d 823, 831 (9th Cir. 1986)); *see also Eavenson, Auchmuty & Greenwald v. Holtzman*, 755 F.2d 535 (3d Cir. 1985).   "'Subjective good faith no longer provides the safe harbor it once did'".   *Id.*(quoting *Eastway Const. Corp. v. City of New York*, 762 F.2d 243, 253 (2d Cir. 1985)).   "The signer's signature on a pleading, motion, or other paper certifies the signer has done three things: (1) read the pleading, motion, or paper; (2) made a reasonable inquiry into the contents of the pleading, motion, or other paper and concluded that it is well ground in fact and warranted in law; and (3) has not acted in bad faith in signing the document".   *Garr v. U.S. Healthcare*, 22 F.3d 1274, 1278 (3d Cir. 1994); *see also CTC Imports and Exports v. Nigerian Petroleum Corp.*, 951 F.2d 573, 578 (3d Cir. 1991).

"Counsel's certification also warrants that the pleading is not being used for an improper purpose, such as to cause harassment, undue delay, or needless increase in litigation expense".   *Lieb*, 788 F.2d at 157.   The court determines the reasonableness of an inquiry by applying an objective standard, inquiry that is "fact specific" within "all the material circumstances".   *Garr*, 22 F.3d at 1278; *see also Business Guides, Inc. v. Chromatic Communications Enters., Inc.*, 498 U.S. 533, 11 S. Ct. 922, 932-33 (1991), *Bradgate Assocs., Inc. v. Fellows, Read & Assocs.*, 999 F.2d 745, 752 (3d Cir. 1993).   "Reasonableness in the context of a Rule 11 inquiry has been defined as 'an objective knowledge or belief at the time of the filing of a challenged paper that the claim was well grounded in law and fact'".   *Leuallen v. Borough of Paulsboro*, 180 F. Supp. 2d 615, 618 (D.N.J. 2002)(*quoting Ford Motor Co. v. Summit Motor Products, Inc.*, 930 F.2d 277, 289 (3d Cir.), *cert. denied*, 502 U.S. 939 (1991)).   "There is no room for pure heart, empty head defense under Rule 11".   *Lieb*, 788 F.2d at 157.   Importantly, "it is clear that the signer has a 'personal, nondelegable responsibility' to comply with the requirements of Rule 11 before signing the document".   *Garr*, 22

F.3d at 1278(*quoting Pavelic & LeFlore v. Marvel Entertainment Group*, 493 U.S. 120, 126 (1989));

*see also In re Mitchell*, 901 F.2d 1179, 1188 & n.23 (3d Cir. 1990).

The Court notes that "Rule 11 sanctions may be awarded in exceptional circumstances to discourage [parties] from bringing baseless actions or making frivolous motions'". *Bensalem Twp. v. International Surplus Lines Ins. Co.*, 38 F.3d 1303, 1314 (3d Cir. 1994)(*quoting Doering v. Union County Bd. of Chosen Freeholders*, 857 F.2d 191, 194 (3d Cir. 1988); *see also Morristown Daily Record, Inc. v. Graphic Communications Union, Local 8N*, 832 F.2d 31, 32 n.1 (3d Cir. 1987) (noting that "Rule 11 is not to be used routinely when the parties disagree about the correct resolution of a matter in litigation...[but] is instead reserved for only exceptional circumstances").

### 2.   FED. R. CIV. P. 37

Pursuant to FED. R. CIV. P. 37(d)(1)(A), "the court where the action is pending may, on motion, order sanctions if: (i) a party or a party's officer, director, or managing agent – or a person designated under Rule 30(b)(6) or 31(a)(4) – fails, after being served with proper notice, to appear for that person's deposition...".  Importantly, "when a witness is designated by a corporate party to speak on its behalf pursuant to Rule 30(b)(6), 'producing an unprepared witness is tantamount to a failure to appear' that is sanctionable under Rule 37(d)".  *Black Horse Lane Assoc., L.P. v. Dow Chem. Corp.*, 228 F.3d 275, 304 (3d Cir. 2000)(*quoting United States v. Taylor*, 166 F.R.D. 356, 363 (M.D.N.C. 1996)).

### 3.   FED. R. CIV. P. 30(b)(6)

Pursuant to FED. R. CIV. P. 30(b)(6), "a party may name as the deponent a public or private corporation...or other entity and must describe with reasonable particularity the matters for examination.  The named organization must then designate one or more officers, directors, or

managing agents, or designate other persons who consent to testify on its behalf; and it may set out the matters on which each person designated will testify. ...The persons designated must testify about information known or reasonably available to the organization". "Rule 30(b)(6) places the burden upon the deponent to 'make a conscientious good faith endeavor to designate the persons having knowledge of the matters sought...and to prepare those persons in order that they can answer fully, completely, unevasively, the questions posed...as to the relevant subject matters". *Costa v. County of Burlington*, 254 F.R.D. 187, 189 (D.N.J. 2008)(*quoting Harris v. New Jersey*, 259 F.R.D. 89, 92 (D.N.J. 2007)). "The duty of preparation goes beyond matters personally known to the designee or to matters in which the designee was personally involved, and if necessary the deponent must use documents, past employees, or other sources to obtain responsive information". *Harris*, 259 F.R.D. at 92-93. "While the rule may not require absolute perfection in preparation – it speaks after all of matters known or reasonably available to the organization – it nevertheless certainly requires a good faith effort on the part of the designate to find out the relevant facts – to collect information, review documents, and interview employees with personal knowledge just as a corporate party is expected to do in answering interrogatories". *Wilson v. Lakner*, 228 F.R.D. 524, 528-29 (D. Md. 2005).

### B.     PMC's Request for Rule 11 Sanctions and Graco's Request for Costs/Fees

Here, PMC seeks the following relief:

> (1) Graco's trade secret misappropriation claims concerning any of Defendants' equipment other than the Garraf Evolution G-140H-Hydraulic Proportioner, Garraf Evolution G-250H-Hydraulic Proportioner, Garraf Evolution G-200A-Pneumatic Proportioner, Garraf Master Air Purge Spray Gun, Garraf Evolution Star Mechanical Purge Spray Gun, Garraf Evolution VR unit, and Garraf braided hose identified in Paragraph 93 of the Second Amended Complaint are hereby dismissed with prejudice; and

(2) Graco is hereby precluded from relying upon, or introducing evidence, discussion, or argument (whether documents, testimony, witnesses, or otherwise) concerning equipment designed, developed, or manufactured by Gama USA, including the Classic proportioner and Vortex spray gun, as party of any filings or proceeding with the Court, including at trial.

Preliminarily, the Court finds that PMC has failed to comply with the requirements of FED. R. CIV. P. 11(c)(2) with respect to its request for Rule 11 sanctions.  PMC was required to serve Graco with its Motion and allow twenty-one (21) days to elapse, during which time Graco would have the opportunity to withdraw or correct any issue, prior to filing with the Court.  *See* FED. R. CIV. P. 11(c)(2); *see also Ortiz v. Auto Rentals, Inc.*, 2010 U.S. Dist. LEXIS. 82590, at *5 (D.N.J. 2010); *see also In re Schaefer Salt Recovery, Inc.*, 542 F.3d 90, 99 (3d. Cir. 2008).  Although PMC's letter to Graco dated November 6, 2009 together with meet and confer sessions may be construed as informal warnings or applications, same did not include service of any motion papers on Graco. *See* Def.'s Decl. of Oh, Ex. F.  Pursuant to *Barber v. Miller*, 146 F.3d 707, 710 (9th Cir. 1998) and FED. R. CIV. P. 11 Advisory Committee Note (1993), warnings and informal applications are not considered motions.  Further, PMC's service of its "informal sanctions motion" (*see* Def.'s Br. at 15), even if construed as a motion, was served on Graco concurrently with the Court (*see* Def.'s Decl. of Oh, Ex. L).  Thus, PMC has failed to comply with the requirements of Rule 11 and its request for Rule 11 sanctions should be denied procedurally.

However, even assuming PMC had complied with Rule 11(c)(2) – a point the Court does not concede – the Court finds that PMC's request for Rule 11 sanctions should also be denied substantively.  Graco learned of the new equipment in October 2009 [*see* dkt. entry no. 192] and PMC confirmed that the new equipment had been on sale for less than two (2) weeks shortly

24

thereafter [*see* dkt. entry no. 195].  However, based upon an email authored by Bill Hrynkiewicz, Gama USA's Vice President, PMC was developing and perhaps manufacturing the new equipment as early as January 2009.  *See* Pl.'s Decl. of Johnson, Ex. B.  By way of answers to interrogatories dated December 5, 2008, PMC represented that Gama USA and Commette had "marketed and attempted to sell Garraf Evolution G-125, G-140, G-200, and G-250 pneumatic and hydraulic proportioners along with Garraf Master Air Purge and Evolution Star Mechanical Purge Spray Gun dispensing products starting in September 2007" but had not "designed, manufactured, assembled, or planned to design, manufacture, or assemble any 'Equipment', as Graco defines that term, since February 4, 2005".  *See* Pl.'s Decl. of Johnson, Ex. C at 13-14.  Similarly, during his deposition in March 2009, Commette represented that "at this point in time, Gama USA is not a manufacturer...[although] there are possibilities that Gama USA could do that".  *See* Pl.'s Decl. of Johnson, Ex. D (Commette Tr. 30:13-19).

Once this information was brought to the Court's attention, relevant discovery was conducted with respect to the new equipment.  [*see* dkt. entry no. 221]  During his deposition in December 2009, Commette represented: that the Gama USA Classic line of proportioners was based upon the Gama proportioners manufactured by Garraf (which Graco has alleged is based upon the Graco/Gusmer H-20/35) and that parts utilized in the Gama USA proportioners were "identical" to Gama proportioners manufactured by Garraf "with the exception of thread sizes" (*see* Pl.'s Decl. of Johnson, Ex. E (Commette Tr. 48:12-23)); that the new pumpline was developed by copying a "Gama pumpline" (a product that Graco has alleged was created based upon misappropriation of Graco/Gusmer trade secrets) provided by PMC (*Id.* (Commette Tr. 59:6-12)); and that the new Vortex Gun was created by taking a Gama Master Gun (a product that Graco has alleged was created

based upon misappropriation of Graco/Gusmer trade secrets), copying it, and incorporating new ideas (*Id*. (Commette Tr. 39:3 thru 41:8)). Based upon a comparison of Gama and Graco drawings, in addition to reviewing other pertinent documents and information, Graco's expert has submitted an affidavit stating that "Graco/Gusmer trade secret manufacturing dimensions and tolerances were misappropriated by the defendants...[as] it is highly unlikely that the exact values of nominal dimensions and the associated tolerances values would be arrived at as a result of a reverse engineering effort". *See* Pl.'s Rice Decl., dkt. entry no. 335 at 20; *see also* dkt. entry no. 329-1 at 33, ¶ 91.

Importantly, with respect to nondisclosure and confidentiality, during his deposition in March 2010, Daugherty represented that: MDI does not allow the general public access to its files (*see* Pl.'s Decl. of Johnson, Ex. G (Daugherty Tr. 61:4-11); MDI blanks out all customer names on documents, including engineering drawings; (*Id*. (Daugherty Tr. 61:12 thru 62:3); MDI keeps its information confidential for its own purposes of viability and at the request of its clients (*Id*. (Daugherty Tr. 62:4 thru 63:4); MDI's understanding, practice, and procedure with respect to work done for Gusmer, Graco, and Gama was that information and engineering drawings were to be kept confidential (*Id*. (Daugherty Tr. 63:5-14)); MDI's understanding of Gusmer/Graco tolerance ranges was based solely on engineering drawings for parts MDI manufactured (*Id*. (Daugherty Tr. 111:13 thru 112:19 . Pagano also testified that Gusmer/Graco had a nondisclosure agreement in place with MDI, although he was uncertain about actual documentation. S*ee* Pl.'s Decl. of Johnson, Ex. H (Pagano Tr. 132:18 thru 133:21). Pagano went on to testify that: based on Gusmer's policies, he assumed a nondisclosure agreement existed between Gusmer and any vendors used by Gusmer China but he was uncertain about actual documentation (*see* Def.'s Decl. of Oh, Ex. Q (Pagano Tr. 221:19 thru

222:10)); he suspected Gusmer/Graco had a nondisclosure agreement with Urethane Supply but was uncertain about actual documentation (*Id*. (Pagano Tr. 136:13-23)); Gusmer/Graco had a nondisclosure agreement with Electrocable, though he was uncertain about actual documentation (*Id*. (Pagano Tr. 136:24 thru 139:2)); Gusmer/Graco had a nondisclosure agreement with Galaxy Wire and Cable but he was uncertain about actual documentation (*Id*. (Pagano Tr. 139:4 thru 140:4)); he was uncertain about actual documentation for nondisclosure agreements between Gusmer/Graco and Allied Wire & Cable, J. Monroe Wire and Cable, Central Jersey Screw, ECI, Fastinal, Fozzio, Friend Container, Gallagher, IBOCO, Iron Bound Heat, Jones & Aurbacher, J-Tron, KWG, Libby Welding, McMaster, RKD, or SNS Electronics (*Id*. (Pagano Tr. 141:16 thru 143:11)).

Under these circumstances, although the Court acknowledges that the allegations, facts, and legal arguments in this matter – and their significance/meaning – are hotly disputed by both parties, the Court finds that Graco's conduct does not meet the requirements for the imposition of Rule 11 sanctions.  It is clear that, at the time it filed both its original Complaint and the Second Amended Complaint, Graco was unaware of PMC's new equipment and had no reason to believe that PMC was developing or manufacturing same until October 2009.  Since that time, and at the Court's instruction, discovery relevant to the new equipment has taken place and remains ongoing (as several motions remain outstanding).  While the Court makes no finding as to the weight of evidence obtained, Graco has presented sufficient information to demonstrate that its arguments are not frivolous, unreasonable, or without some factual foundation.  *See Lieb*, 788 F.2d at 157.  Further, Graco has presented sufficient information to demonstrate that its counsel read relevant pleadings, motions, or papers, made reasonable inquires into the contents of relevant pleadings, motions, or other papers and concluded that they were well grounded in fact and warranted in law, and did not

act in bad faith in signing such documents. *Garr*, 22 F.3d at 1278. Importantly, Graco has provided sufficient information to demonstrate that its factual contentions have some support or will likely have evidentiary support after reasonable further discovery. Pursuant to *Bensalem Twp.,* 38 F.3d at 1313, *Doering*, 857 at 194, and *Morristown Daily Record*, 832 F.2d at 32 n.1, the Court declines PMC's invitation to impose Rule 11 sanctions at this time based upon the parties disagreement about the correct resolution of this matter. Although PMC's Rule 11 Motion is denied, the Court finds that PMC proffered its informal and formal arguments in good faith and not for any improper purpose. Thus, the Court likewise declines Graco's invitation to impose costs and fees on PMC related to PMC's request for Rule 11 sanctions.

### C.    PMC's Request for Rule 37 Sanctions

Here, PMC seeks the following relief:

> (1) Graco is precluded from contradicting or supplementing Pagano's testimony concerning the non-existence of policies or procedures related to protection of trade secrets or confidential business information;
>
> (2) Graco is precluded from introducing any evidence concerning the existence of any policy or procedure regarding protection of its trade secrets or confidential business information at trial or in any pleadings submitted to the Court; and
>
> (3) PMC is entitled to fees and costs according to proof.

The Court finds that Pagano spent ample time preparing for his Rule 30(b)(6) deposition both before and after it was noticed, including meeting with multiple attorneys on multiple occasions, meeting with multiple Graco employees on multiple occasions, and reviewing relevant documents on multiple occasions. *See* Def.'s Decl. of Oh, Ex. I (Pagano Tr. 21-41). Specifically: Pagano met with David Wallace-Jackson, Graco's attorney who defended Pagano's deposition, "between 15 and

25 times" (*Id*. (Pagano Tr. 24:2-5)) for approximately "40 hours" (*Id*. (Pagano Tr. 24:15-18)) in addition to preparing for approximately 100 to 125 hours "independent of any meetings...with any attorneys" (*Id*. (Pagano Tr. 37:20-24)); Pagano met with at least eight (8) Graco employees (*Id*. (Pagano Tr. 38:7-9, 38:13, 38:18, 38:25)); in addition to the binder of documents Pagano brought to his deposition, Pagano reviewed a stack of documents approximately "six (6) to ten (10) feet high" (*Id*. (Pagano Tr. 35:18-25, 36:1-3)).

With respect to Topic 49 and the specific examples of non-responsiveness cited by PMC (*see* Def.'s Br. at 18-19), the Court acknowledges that both Topic 49 and several of Pagano's deposition answers lacked specificity. However, the Court finds that Pagano testified adequately. Although Pagano was uncertain as to whether there was a policy for "a change in an individual's access to Graco's PDM system" (*see* Def.'s Decl. of Oh, Ex. I (Pagano Tr. 72:5-14)) or whether there were logs of who has accessed Graco's PDM system, Pagano provided substantial information about PDM, what information is protected by PDM, who could access PDM, the process of designating employee access, whether anyone not employed by Graco has access, whether any evaluation was conducted as to which former Gusmer employees would be granted access, and whether an individual's electronic access is terminated when an employee leaves Graco. *Id*. (Pagano Tr. 55:22 thru 92:18). Importantly, although he was not completely certain, Pagano testified that he remembered "reviewing policies on PDM access" and acknowledged that "the policy exists", but referred PMC's attorney to Graco's IT department with respect to what "functionality PDM has related to history". *Id*. (Pagano Tr. 72:22 thru 75:19, 78:19 thru 79:4).

Although Pagano was uncertain as to how "Graco would determine whether it...[has] signed nondisclosure agreements with every one of its suppliers" (*Id*. (Pagano Tr. 117:7-11)), Pagano

provided substantial information about whether Graco employees are required to sign a confidential nondisclosure agreement, whether Graco suppliers are required to sign a confidential nondisclosure agreement, whether Graco employees – including Graco's purchasing department – were trained on relevant confidentiality/nondisclosure policy, where Graco's standard operating procedures were stored, whether Graco had a policy – and actually retained – confidential nondisclosure agreements with all of its suppliers, whether Graco requires third parties to execute nondisclosure agreements before providing confidential or trade secret information, and whether Gusmer had a policy – and actually retained – confidential nondisclosure agreements with all of its suppliers (*Id*. (Pagano Tr. 101:18 thru 124:18). Importantly, although he was not completely certain, Pagano testified that he believes Graco keeps signed copies of nondisclosure agreements with every one of its suppliers and acknowledged reviewing "nondisclosure agreements...that Graco has with [its] suppliers". *Id*. (Pagano Tr. 72:22 thru 75:19).

Although Pagano was uncertain as to whether Graco had "a policy for determining what information is proprietary or confidential" (*Id*. (Pagano Tr. 189:23 thru 190:4)) or whether an "individual's access to PDM [is] terminated" when an individual leaves Graco (*Id*. (Pagano Tr. 91:23 thru 92:18)), Pagano provided substantial information about Graco's policies regarding "providing trade secret or confidential business information to third parties" and "nondisclosure agreements" (*Id*. (Pagano Tr. 55:22 thru 59:1)), whether Graco "restrict[s] access to trade secret information" and related policy (*Id*. (Pagano Tr. 59:2 thru 61:20), whether Graco maintains electronically stored trade secret information together with access designation processes  (*Id*. (Pagano Tr. 61:21 thru 84:16)), whether training is provided to Graco employees regarding trade secret and confidential/proprietary information policy and related documentation defining same (*Id*. (Pagano Tr. 103 thru 109, 170 thru

183)), and about Graco's "Conduct of Business activities" and training as to trade secrets and the importance of proprietary business information (*Id*. (Pagano Tr. 102:23 thru 109:15)).

Under these circumstances, the Court concludes that Graco made a good faith endeavor to designate and prepare an appropriate witness with respect to Topic 49. *See Costa*, 254 F.R.D. at 189; *see also Harris*, 259 F.R.D. at 92-93. Further, under these circumstances, the Court concludes that Pagano made a good faith effort to obtain and provide relevant information. *See Wilson*, 228 F.R.D. at 528-29. Accordingly, the Court declines PMC's invitation to impose Rule 37 sanctions at this time.

## IV.   CONCLUSION

For the reasons stated above, it is recommended that Defendants' Motion for sanctions pursuant to Fed. R. Civ. P. 11 and  Fed. R. Civ. P. 37 [dkt. entry no. 483] be **DENIED** and that Plaintiff's request for costs, fees, and reimbursement related to Defendants' Fed. R. Civ. P. 11 Motion be **DENIED**.

Local Civil Rule 72.1 (c)(2) and Federal Rule of Civil Procedure 72(b) permit objections to this Report and Recommendation to be filed within ten (10) days after service hereof. Any party may respond to another party's objections within ten (10) days after being served with a copy thereof. The Clerk of Court is directed to serve a copy of this Report and Recommendation on Counsel for Plaintiffs and Counsel for Defendants by **regular and certified mail**.

Respectfully submitted,

s/ *Douglas E. Arpert*

**DOUGLAS E. ARPERT**
**UNITED STATES MAGISTRATE JUDGE**

**DATED: February 14, 2011.**