<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | | |
|---|---|---|
| **GRACO, INC., et al.,** | : | **Civil Action No.: 08-1304 (FLW)** |
| | : | |
| **Plaintiffs,** | : | |
| | : | |
| **v.** | : | **MEMORANDUM OPINION** |
| | : | **AND ORDER** |
| **PMC GLOBAL, INC., et al.,** | : | |
| | : | |
| **Defendants.** | : | |
| _____ | : | |

<u>**ARPERT, U.S.M.J**</u>

## I.    INTRODUCTION

This matter comes before the Court on Motion by Defendants PMC Global, Inc., PMC, Inc., PMC Europe Investments, S.L., Denis S. Commette ("Commette"), and Gama Machinery USA, Inc. ("Gama" or "Gama USA") (collectively "Defendants" or "PMC") to compel further responses to written discovery [dkt. entry no. 486], returnable October 18, 2010.  Plaintiffs Graco, Inc. and Graco Minnesota, Inc. (collectively "Plaintiffs" or "Graco") filed opposition on October 4, 2010.  For the reasons stated herein, PMC's Motion is granted in part and denied in part.

## II.    FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Based upon the fact that the Court and the parties are well-versed with respect to the factual background and procedural history of this matter, only a brief recitation of same is necessary here.

Graco filed a Complaint [dkt. entry no. 1] on March 14, 2008 alleging "breach of contract and related duties" (*see* Pl.'s Complaint, dkt. entry no. 1 at 19-21), "tortious interference" (*Id*. at 21-23), "misappropriation of trade secrets and misuse of confidential business information" (*Id*.

at 23-24), violation of the "Lanham Act" (*Id*. at 24-25), violation of the "New Jersey Fair Trade Act" (*Id*. at 25-26), "unfair competition" (*Id*. at 26), and "unjust enrichment" (*Id*.) related to its acquisition of Gusmer Corporation and Gusmer Europe (collectively, "Gusmer") from PMC by way of two (2) Stock Purchase Agreements ("SPA") (*Id*. at 7, ¶¶ 28-29).   More specifically, Graco alleges that Gama USA, a Delaware corporation, and PMC, Inc., a subsidiary that "also does business as Gama-Europe and Garraf Maquinaria, S.A." (*see* Pl.'s Second Amended Complaint, dkt. entry no. 91 at 3, ¶ 6), and Garraf Maquinaria S.A. ("Garraf"), a Spanish corporation with PMC affiliations that "also does business as Gama and Gama-Europe" (*Id*. at 3, ¶ 7), "are manufacturing, marketing, and selling spare parts for Gusmer products without Graco's permission...and are using Graco Trade Secrets and Confidential Business Information to manufacture these spare parts" and "are directly soliciting the trade of current customers of Graco...using Graco Trade Secrets and Confidential Business Information" (*see* Pl.'s Complaint at 17-18, ¶ 75, 81; *see also id*. at 17-18, ¶¶ 76-79, 82-86).

On June 30, 2008, PMC filed an Answer [dkt. entry no. 23] denying Graco's allegations (*see* Def.'s Answer, dkt. entry no. 23 at 2-39) and a Counterclaim alleging violation of "section 2 of the Sherman Act, 15 U.S.C. § 2" (*Id*. at 53-54), "attempted monopolization and conspiracy to monopolize" (*Id*. at 54-55), "tortious interference with business advantages" (*Id*. at 55), violation of the "New Jersey Fair Trade Act" (*Id*. at 55), "unfair competition" (*Id*. at 56), and "trade libel and disparagement" (*Id*.) related to Graco's business practices and conduct in the "in-plant polyurethane processing equipment ("IPPE") market nationwide" (*Id*. at 46, ¶¶ 1-3).   More specifically, PMC alleges that "through its acquisitions of Liquid Control, Decker Industries ("Decker"), Gusmer, and GlasCraft, Graco has built a monopoly position in the IPPE market...[with] nearly 100% market share and no significant competitors".   *Id*. at 48, ¶ 12.   PMC

alleges that in response to Garraf asking Gama "to distribute Garraf products", Graco "has taken multiple steps to ensure that Gama's efforts to sell Garraf products in the United States meet with failure...that go well beyond legitimate competition and into the realm of abuse of monopoly position". *Id.* at 49, ¶¶ 15-19. PMC maintains that Graco has threatened not to deal with any IPPE distributor "that considers carrying Garraf products" (*Id.* at 49, ¶¶ 20-21), that such threats have been successful as "it has been essentially impossible to identify distributors for Garraf products...and existing Gama customers have stopped buying" even though Gama and Commette "have been informed on multiple occasions by distributors that the distributors would have carried or continued to carry Garraf products but for Graco's refusal to deal with any distributor carrying competing products" (*Id.* at 50, ¶¶ 22-24). Further, PMC contends that "Graco also has engaged in other false and predatory communications intended to block Garraf products from being distributed in the United States and to destroy Gama's business" (*Id.* at 50, ¶ 25), including "falsely claim[ing] to the trade that Gama's products are based on old or outmoded Gusmer technology" (*Id.* at 51, ¶ 26), making "numerous public false and knowing statements and threats concerning Gama's continued viability and the quality of Gama's product line" (*Id.* at 51, ¶¶ 27, 30-31), and "asserting that Graco prohibits current distributors from picking up and selling Gama's line or products and demanding that the distributor elect between Graco and Gama lines" (*Id.* at 51, ¶ 32).

At issue here is PMC's contention that "Graco's discovery obligations...are still incomplete" even after "the parties have extensively met and conferred". *See* Def.'s Br. at 1. Specifically, according to PMC, written discovery that remains in dispute includes:

-Graco's Fourth Supplemented Responses to Commette's First Set of Interrogatories ("Commette 1st Interrogatories"), nos. 1-4;

-Graco's Third Supplemented Responses to PMC's First Set of

Interrogatories ("PMC 1st Interrogatories"), nos. 1, 5, 6, 8;

-Graco's Responses to Commette's First Set of Requests for Production ("Commette 1st RFP"), generally;

-Graco's Responses to PMC's First Set of Requests for Production ("PMC 1st RFP"), generally;

-Graco's Supplemented Responses to Defendants' Second Set of Interrogatories ("Def.'s 2nd Interrogatories"), nos. 19-21;

-Graco's Responses to Defendants' Second Set of Requests for Admissions ("Def.'s 2nd RFA"), nos. 65-70;

-Graco's Responses to Defendants' Second Set of Requests for Production ("Def.'s 2nd RFP"), nos. 146, 148-176, 180, 195-197, 207 (improperly designated within Graco's Responses to Defendants' Third Set of Requests for Production), 211 (improperly designated as within Graco's Responses to Defendants' Third Set of Requests for Production);

-Graco's Supplemented Responses to Defendants' Third Set of Interrogatories ("Def.'s 3rd Interrogatories"), nos. 24-27, 29, 32-33;

-Graco's Supplemented Responses to Defendants' Third Set of Requests for Admissions ("Def.'s 3rd RFA"), nos. 157-158; and

-Graco's Responses to Defendants' Third Set of Requests for Production ("Def.'s 3rd RFP"), nos. 213-214, 217, 225-227, 229-237, 250-259, 261-262, 268, 271-273, 275-277, 289, 298-317.

*Id.* at 1-3.

PMC maintains that "Graco has largely failed to amend or supplement any of the requests at issue" and, "even in the rare instances where Graco has agreed to supplement a response, its supplementation has been incomplete and falls far short of addressing the issues the parties discussed during...meet and confer sessions". *Id.* at 3. Importantly, PMC notes that "Graco has largely refused to identify the specific documents [it] claim[s] are responsive", instead arguing that same "should be self-evident to PMC by conducting searches through the over six hundred thousand pages of documents produced to date". *Id.* at 3-4. With respect to damage-related

4

discovery, PMC maintains that "the parties agreed that they would create reports and/or documents not necessarily generated in the normal course of business" in order to "enable both parties to provide the information necessary for each to perform its damage analyses without producing thousands of pages of useless spreadsheets and other financial records". *Id*. at 4. PMC further maintains that the parties "reviewed the types of damage documents that each side wanted and confirmed that the terminology each side was using was understood by the other" so as to "avoid blanket objections based exclusively upon the manner in which PMC described [Graco] divisions" and that "Graco expressly confirmed that it understood what PMC was referring to by the use of 'HPCF' and 'Fast Set' and represented that this language was sufficient to be able to work on obtaining the substantive financial information PMC requested". *Id*. at 4-5.

PMC contends that "Graco has subsequently taken the position that it will not run reports or compilations that are not normally generated during day-to-day business...after PMC produced the corresponding reports" and, although Graco "produced two Access databases, neither are wholly responsive to PMC's damage-related requests". *Id*. at 5. PMC further contends that "Graco has not amended or supplemented its responses or withdrawn its meritless objections" and "is attempting to circumvent this Motion and further delay resolution of the issues". *Id*. at 5-6. PMC argues that Graco's assertion that it "failed to meet and confer on damage-related requests" is "preposterous" because PMC "has already met and conferred with Graco on each of the discovery requests pertaining to damages through written correspondence, telephone conferences and in person". *Id*.

Oppositely, Graco contends that PMC's "countless complaints and [its] requests to compel and sanction Graco lack merit". *See* Pl.'s Opp'n Br. at 1. Graco notes that it "has produced documents and information responsive to PMC's requests" and that, "where it has

declined to do so, [Graco] has asserted timely and proper objections to PMC's vastly overbroad requests for irrelevant materials". *Id.* Graco relies on the arguments set forth below in support of its contention that "all of PMC's requests for relief should be denied". *Id.*

On September 24, 2010, PMC filed the instant Motion seeking a Court Order compelling further responses to written discovery.

### A. PMC's Arguments in Support of the Motion to Compel

#### 1. Graco should be required to revise all vague responses to indicate one way or the other whether it has produced responsive documents.

PMC maintains that Graco cannot "justify its ongoing discovery deficiencies by blaming PMC for propounding written discovery within the timeframe permitted by statute and the Court's Scheduling Order" and notes that "Graco has now had almost four months to produce documents responsive to the last set served on May 28, 2010 and is...still not in compliance with its obligations". *See* Def.'s Br. at 9. PMC notes that it "operated under the same time constraints...[as Graco] and nonetheless produced documents while depositions were ongoing". *Id*. at 9-10. Importantly, PMC maintains that its decision "not to take the deposition of [Graco's] Rule 30(b)(6) witness on document collection issues" has nothing to do with, and is not determinative, as "to what Graco produced...[rather than what Graco] collected or how it did so". *Id*. at 10.

Citing *Armor Screen Corp. v. Storm Catcher, Inc.*, 2009 WL 291160, at *3 (S.D. Fla. 2009), PMC argues that "the ambiguity in Graco's responses is axiomatic – either Graco believes it has produced responsive documents, which PMC disputes, or Graco acknowledges that it has not, but will produce documents" – and that "it is not acceptable for a party to respond by objecting and stating it will produce responsive documents to the extent they exist". *Id*. Therefore, PMC "requests the Court order Graco to revise all such vague responses to indicate

6

one way or the other whether it has produced all responsive documents". *Id*.

> **2.    Graco should be required to provide more specific answers to Commette 1st Interrogatories nos. 1-4 related to Graco's evidence of access to purported trade secrets and confidential information.**

PMC notes that "these interrogatories ask Graco to describe in detail all instances where Commette or Carles Royo ("Royo") purportedly misappropriated or improperly disclosed Graco's trade secrets, including the identification of the dates, witnesses, supporting documents, and specifically what trade secret is at issue". *Id*. at 11.  PMC points out that they "do not seek to have Graco further identify its alleged trade secrets but rather how PMC is alleged to have accessed them". *Id*.  PMC argues that "despite a Fourth Supplemented Response, Graco still has not said how Commette and Royo misappropriated the trade secrets [at] issue". *Id*.  Although Graco's response is voluminous in length, PMC contends it is "wholly lacking in terms of necessary facts to connect the dots between Graco's allegations and speculative assumptions as to who had access to what and when, and which alleged trade secrets were taken when and by whom". *Id*.  Rather, "Graco makes vague references to meetings for which it cannot confirm the attendees, the agenda, or any other pertinent details", including references to "other former Gusmer employees". *Id*.  Therefore, PMC states that "if Graco does not know these facts, it has an obligation to say so". *Id*.

> **3.    Graco should be required to provide more specific answers to interrogatories and further responses to requests for production and admissions related to PMC's alleged used of Graco's confidential information or misappropriation of Graco's alleged trade secrets.**

> **(a)    Def.'s 2nd Interrogatories nos. 19-21.**

Although "Graco claims that it is not required to respond to these interrogatories because they would require the production of a final list of trial exhibits", PMC maintains that they "merely seek the identification of documents that support Graco's claims of misappropriation"

and that this "does not require Graco to reveal attorney-client or work product information". *Id*. at 12.  PMC contends that Graco's cross-references to "other voluminous sets of discovery...[are] wholly inadequate". *Id*.  Citing FED. R. CIV. P. 33(d) and *Govas v. Chalmers*, 965 F.2d 298, 302 (7th Cir. 1992), PMC argues that although a party may answer an interrogatory "by specifying a business record where the answer may be found, ...a party that knows or has access to an interrogatory answer may not use Rule 33(d) to avoid furnishing a responsive interrogatory answer where the answer cannot be ascertained from the documents". *Id*.

### (b)      PMC 1ˢᵗ Interrogatories no. 5.

PMC notes that "this interrogatory asks Graco to provide a detailed description of all instances where PMC or Royo allegedly solicited Graco's current or former customers or distributors, and to identify for each instance individuals with knowledge of the solicitation, the dates and location, and any documents which may support the solicitation". *Id*. at 13.  PMC points out that Graco's response "only references another interrogatory" and vaguely refers to "other individuals employed or otherwise retained by PMC". *Id*.  PMC argues that, "to the extent Graco has knowledge of other individuals, it is obligated to tell PMC who they are" and, if not, is obligated to "say so". *Id*.  Further, Graco's "response mainly omits a description of the solicitation, the dates, the identity of witnesses, and the identification of any supporting documents" and the "few documents that Graco listed in its August 2010 supplemental responses are not illuminating on this matter". *Id*.  Citing *Smoothline v. North American Foreign Trading Corp.*, 2003 U.S. Dist. LEXIS 3085, at *2-5, 15 (S.D.N.Y. 2003) and *In re Stasch*, 2007 Bankr. LEXIS 1768, at *11-15 (Bankr. S.D. Fla. 2007), PMC argues that it "is entitled to a negative inference that there were no such instances other than those for which Graco provided specific detail". *Id*. at 13-14.

### (c) PMC 1st Interrogatories no. 6.

PMC notes that "this discovery request calls for a description of all instances where Graco lost sales, orders, customers, or distributors arising out of any alleged misconduct by PMC or Royo, and also seeks the identity of the customer, the products involved, the loss in dollars, the date of each loss, the parties involved, and the identification of any witnesses or supporting documents as to each purported loss". *Id*. at 14.  PMC contends that although "Graco provided a list of entities, it failed to include any of the other pieces of information called for by this interrogatory" and "inexplicably limits its response to a comparison between lost sales in 2006 and 2008" including a "single column of negative numbers which is incomprehensible". *Id*. PMC points out that although "Graco recently supplemented with a list of alleged supporting Bates numbered documents", these documents "provide no insight as to why sales would increase or decrease as a result of Gama USA" and "address only Graco's non-North American customers". *Id*. at 15-16.  PMC states that it "has sought clarification" but that "Graco's supplementation has done little to shed light on these matters" even though "Graco's own witness has testified as to data that is maintained such as logging lost opportunities and lost sales and even confirmed that reports can be run showing such data". *Id*. at 15.  PMC argues that "Graco should be ordered to provide a complete supplemental response". *Id*.

### (d) PMC 1st Interrogatories no.  8.

PMC notes that this interrogatory "seeks a description of all instances where PMC or Royo allegedly acted in concert with others and agreed to inflict injury on Graco, including the dates and locations of each such instance and the identification of any witnesses with knowledge of the facts and documents supporting the facts". *Id*.  PMC argues that "Graco declined to provide any substantive response to this interrogatory and instead cross-references three other

voluminous sets of discovery responses". *Id*.

### (e)    Def.'s 2nd RFP nos. 148-176.

PMC notes that in response to these documents requests, "Graco identified certain entities that...PMC solicited causing Graco to lose the associated business". *Id*.   Based on these assertions, PMC "sought documents supporting Graco's contentions for each of the identified entities". *Id*. at 15-16.   However, "a search of Graco's production reveals very few hits which are even responsive to the entity's name let alone support the contention". *Id*. at 16.   PMC argues that Graco should be compelled to "to amend its written responses or identify documents by Bates number...or else concede that it has no proof of lost sales". *Id*.

### (f)    Def.'s 2nd RFA nos. 65-70.

PMC notes that "these requests ask Graco to admit or deny whether affidavits from Doug Farrow, Jush Mulder, Eric Rennerfeldt, Mark Weinberger, Brian Zumbolo, and Max Baumgartner[, ...previously submitted in support of pending motions,] were submitted as expert testimony". *Id*.   PMC "served these Requests for Admissions...[in order] to learn more about Graco's position in light of similar objections Graco raised regarding document requests". *Id*. PMC contends that "Graco has objected to each of these requests and refused to provide a response on the grounds that these requests improperly seek expert opinion which Graco claims is premature". *Id*. at 16-17.   PMC argues that "whether or not Graco chooses to identify these declarants as its experts for trial is irrelevant...[because] PMC...is entitled to an admission in response admitting that these affidavits were submitted (at least in part) in an expert capacity". *Id*. at 17.   PMC further argues that "given the state of the waiver law and Graco's failure to advance a sustainable objection, the Court should deem these matters admitted and compel Graco to comply with PMC's document requests or enter an order striking each of these affidavits". *Id*.

at 17.

> **4.    Graco should be required to provide more specific answers to interrogatories and further responses to requests for production and admissions related to steps Graco took to protect trade secret and confidential information.**
>
> > **(a)    Def.'s 2nd RFP no. 180 and Commette 1st Interrogatories nos. 3-4.**

PMC maintains that Graco has asserted that "it has Confidential Disclosure Agreements with various employees and third parties" and, therefore, PMC is entitled to see and review any related documents that Graco relies upon in support thereof". *Id*. However, to date "Graco has produced blank, undated versions of the Confidential Disclosure Agreement" and it is not clear "whether or how this template was used". *Id*. PMC states that the "50 executed copies" that Graco produced "were from the disclosures associated with the sale of Gusmer and for prior Gusmer suppliers...not Graco's suppliers or anyone with whom Graco has done business since the date of the sale". *Id*. PMC further notes that its request "pertains not only to Confidential Disclosure Agreements with suppliers and third parties, but also with Graco's employees". *Id*. at 17-18. PMC argues that "Graco's refusal to comply is particularly damaging in light of Graco's inability to identify...what its trade secrets are, what Graco did to maintain their secrecy, and the circumstances under which PMC allegedly acquired, used, or disclosed those trade secrets". *Id*. at 18.

Separately, PMC claims that "Graco has completely ignored the interrogatories which require it to identify each trade secret disclosed to third parties as well as the identities of those third parties". *Id*. PMC argues that "Graco's misappropriation claims fail in their entirety if it cannot prove that the alleged trade secrets were protected" and that "sharing confidential information with its suppliers negates Graco's claims unless it can demonstrate that it took

necessary steps to maintain...confidentiality". *Id*. Citing *Nestle Foods Corp. v. Aetna Cas. & Sur. Co.*, 135 F.R.D. 101, 104-105 (D.N.J. 1990), PMC argues that it "is entitled to the actual executed agreement for every supplier to whom the alleged trade secrets were disclosed at any point in time" and "explicitly seeks an order compelling complete production and responses". *Id*.

(b)    **Def.'s 2ⁿᵈ RFP nos. 195-197.**

PMC notes that it "asked for documents showing which employees attended...[conduct-of-business ("COB") training,] what the training consisted of, and any documents provided at [the] training" in response to Graco's representations that it "routinely administers COB training" in order to protect "confidential information and trade secrets" . *Id*. at 19.  PMC contends that Graco "only produced acknowledgment of receipts of a document entitled Code of Business Guidelines" but that such "an acknowledgment that an employee received the document is not responsive to this request". *Id*.  Importantly, PMC references deposition testimony given by Graco's "30(b)(6) witness on training and records of such training" with respect to "electronic training logs...documenting what types of training...[each] employee...received" and the fact that "Graco maintains that it has produced all responsive documents". *Id*.  Similarly, PMC references the "depositions of Graco's witnesses" and claims that it became clear "that Graco did not provide actual training to all of its employees". *Id*.  Citing *Smoothline*, 2003 U.S. Dis. LEXIS 3085, at *2-5, 15 and *Stasch*, 2007 Bankr. LEXIS 1768, at *11-15, PMC argues that it is "entitled to a negative inference with respect to any attempt by Graco to rely upon the acknowledgment of receipts as constituting training". *Id*.

(c)    **Def.'s 3ʳᵈ RFA nos. 157-158.**

PMC notes that "request 157 asked Graco to admit that the former Gusmer Europe employees did not attend the COB training held post-acquisition as described in Graco's

Responses to...Interrogatories". *Id*. at 20.  Citing FED. R. CIV. P. 36(a)(4), PMC maintains that

"Graco's answer to this request is incomplete and only partially responsive", as "Graco must

admit that some of the employees did not attend said training" if "the entirety of the group of

former Gusmer Europe employees did not attend the training". *Id*.

Separately, PMC notes that "request 158 asked Graco to admit that the former Gusmer

Europe employees did not sign the COB Guidelines". *Id*.  Citing FED. R. CIV. P. 36(a)(4), PMC

maintains that "Graco's answer...is similarly incomplete and only partially responsive," as "Graco

must admit that some of the employees did not sign said document" if "the entirety of the group

of former Gusmer Europe employees did not sign the COB Guidelines". *Id*. at 20-21.

> ### 5. Graco should be required to provide more specific answers to interrogatories and further responses to requests for production related to or arising from Graco's breach of contract allegations.

> #### (a)   Def.'s 2nd RFP no. 146.

PMC notes that it "requested documents concerning Graco's post-acquisition valuation of

the goodwill, trade secrets, technology, and customer relationships Graco acquired when it

bought Gusmer" as same is "pertinent to [PMC's] antitrust claims and damages analysis". *Id*. at

21.  Although Graco responded that it "has produced or will produce documents", PMC argues

that "to date it seems that Graco has omitted all valuation documents for the years 2007-2010 as

well as for most of 2006" and, at this time, "should be compelled to do so". *Id*.

> #### (b)   PMC 1st Interrogatories no. 1.

PMC notes that "this interrogatory asks Graco to provide a detailed description as to all

instances where Graco negotiated for, paid consideration for, and entered into a non-compete

contract or agreement with PMC, Commette, and Royo and to identify each document and

witness that supports said contention".  *Id*.   Although Graco "responded by identifying two

documents pursuant to Rule 33(d)", PMC maintains that "neither of these documents are responsive to this interrogatory nor meet the requirements of Rule 33(d)" as one is a "confidentiality agreement between Commette and Gusmer...[rather than] a non-compete agreement with Graco" while the other "is an agreement with Royo...[that] does not provide any information as to the negotiation of said agreement particularly with respect to...timeline, ...individuals involved, ...and consideration".  *Id*. at 21-22.  Importantly, PMC notes that in its opposition to PMC's August 13, 2010 letter brief, Graco identified "3 documents by Bates number relating to the drafting, terms, and execution of Royo's agreement"; however, PMC argues that "Graco is...obligated to supplement its response to the written discovery to include this information".  *Id*. at 22.  Similarly, PMC maintains that "Graco has not provided any description or document showing any non-compete agreement with PMC and has...omitted any written response in this regard".  *Id*.  PMC points out that "Graco's response...states it has a claim that PMC and Royo owed Graco a common law or other related duties but failed to provide any information as to the instances giving rise to this purported common law obligation, what the obligation consisted of, what the other related duties are, whether PMC and Royo agreed to or even knew about these obligations, who was involved or the dates giving rise to said obligations".  *Id*.  Citing FED. R. CIV. P. 33(d)(1), PMC argues that although "a party may exercise the option of specifying the records from which the answer to an interrogatory may be derived or ascertained, the specification must be in sufficient detail to enable the interrogating party to locate and identify them as readily as the responding party could" and that, to date, Graco's response "remains grossly inadequate".  *Id*. at 22-23.

**6.      Graco should be required to provide supplemental responses to Commette 1st and PMC 1st RFP.**

PMC notes that "Graco has yet to serve a supplemental response to either Commette's or

PMC's First Set of Requests for Production of Documents" and has "taken the position that it is not obligated to provide any written supplementation" although "numerous deficiencies...were discussed at length over the course of multiple meet and confer calls...and Graco represented it would supplement in an effort to correct...items at issue".  *Id*. at 23.  Citing FED. R. CIV. P. 34(b)(2)(B) and *Armor Screen*, 2009 WL 291160, at *3, PMC maintains that Graco's "written responses...are indecipherable and create impermissible ambiguities as to whether documents actually exist".  *Id*.  PMC argues that "based upon the ambiguity Graco created in its responses and its similar failure to commit one way or the other as to what it has and has not produced", PMC "cannot adequately ascertain whether Graco's production is complete" and its concerns are heightened by the fact that "Graco produced another twenty-five thousand pages over a period of weeks after the close of the discovery clean-up period".  *Id*. at 23-24.  As such, PMC "seeks an order compelling Graco to amend its written responses to the requests for production accordingly".  *Id*. at 24.

### 7. Graco should be required to provide more specific answers to interrogatories and further responses to requests for production related to Graco's alleged damages.

PMC notes that its "damages-related requests (Def.'s 3rd RFP nos. 225-6 & 298-315) seek documents crucial to proving that Graco has suffered no harm based on PMC's alleged misconduct" and are "critical to proving that Graco has illegally brandished its power as a monopolist to drive its profits and market share higher in violation of antitrust laws".  *Id*.  PMC points out that it spent "significant time and energy conferring with Graco before even serving requests to ensure that the damages requests were clear and that Graco would timely produce responsive materials".  *Id*.  However, PMC maintains that "Graco's responses were wrought with baseless objections that directly contradict and undercut the parties' earlier agreements and

understandings". *Id*.

> **(a)** **Def.'s 3rd RFP nos. 298-303 related to Graco's annual and quarterly income statements for 2002-2010.**

PMC contends that "Graco attempts to avoid its obligations under these requests based upon its wavering and ever-changing terminology with respect to how it defines and organizes the division which is responsible for products which PMC has referred to as 'Fast Set'". *Id*. at 24. "Given that the parties explicitly discussed this terminology well in advance of the requests being propounded", PMC maintains that Graco's "objections are not well-founded" and that "it is without question that Graco can reasonably deduce the information PMC is seeking based upon the issues in the case and the product lines Graco's allegations are based upon". *Id*. at 24-25.

PMC further contends that Graco "tries to escape its obligations by taking a mechanical approach" and "arguing that it does not keep separate financial statements for the subdivision". *Id*. at 25. PMC maintains that "this does not absolve [Graco of] its obligations under the request", as "responsive documents would include...underlying income statements for each of the Consolidated Financial Statements and all income statements related to Graco's audited financials". *Id*. PMC further maintains that "to the extent...information is contained as part of another all-encompassing report or noted as a line item as part of Graco's overall financials, [Graco] is required to...produce those documents". *Id*.

PMC argues that "Graco impermissibly places the burden on PMC for not specifically identifying...documents by their proper title", stating that "PMC made a good faith effort to do just that" during meet and confers. *Id*. Citing FED. R. CIV. P. 34, *Mallinckrodt Chemical Works v. Goldman, Sachs & Co.*, 58 F.R.D. 348, 353-54 (S.D.N.Y. 1973), *In re Folding Carlton Antitrust Litigation*, 76 F.R.D. 420, 424 (N.D. Ill. 1977), and *SEC v. American Beryillium & Oil Corp.*, 47 F.R.D. 66, 68 (S.D.N.Y. 1968), PMC maintains that "a propounding party need not call

out the document it is requesting by name so long as the description is reasonably understandable" and "Graco cannot deny that it knew what was being requested". *Id*. at 25-26. As such, PMC requests that the Court "order these documents be produced". *Id*. at 26.

> **(b)** **Def.'s 3rd RFP nos. 304-209 related to income statements and consolidated financial statements of GlasCraft, Gusmer, and Decker.**

PMC notes that "Graco does not dispute that these documents are relevant and must be produced, but...has yet to represent that it has actually produced the responsive statements in its possession, custody, or control". *Id*. at 26. As such, PMC "seeks an order instructing Graco to supplement its responses accordingly". *Id*.

> **(c)** **Def.'s 3rd RFP no. 310 related to Graco's consolidated financial statements.**

Although "Graco claims its 10-Ks are responsive to this request", PMC maintains that "10-Ks are not the same as Consolidated Financial Statements or audited statements" and that its "request is not limited to [Graco's] public filings". *Id*. PMC notes that "10-Ks are merely projections and estimates reflecting [a] company's expectations, while audited financial statements contain more precise and actual numbers rather than estimates". *Id*. PMC argues that it is "entitled to and needs information contained in audited statements and any other related Consolidated Financial Statements which contain relevant data such as scorecards, dashboards, or quarterly reviews" because same is "necessary to show...exactly what Graco's profits were on sales for each product group or Graco's actual costs for selling, marketing, and distributing the products". *Id*. at 26-27. As such, PMC seeks an order compelling "Graco to produce all responsive documents without further delay". *Id*. at 27.

> **(d)** **Def.'s 3rd RFP nos. 312-315 related to Graco's annual sales reports.**

PMC contends that "Graco speciously claims that no responsive documents exist in the ordinary course of business" with respect to these requests, and that, as a result, it is "clear that Graco is placing improper limitations on its obligations...due to its focus on technicalities in identifying the division and products and by wholly ignoring the parties extensive negotiations, agreement and plans for collecting and producing damage-related documents...which includes documents not necessarily generated in ordinary day-to-day business". *Id*. Citing *S.E.C.*, 47 F.R.D. at 68, PMC maintains that "Graco cannot deny that it understood what information PMC is seeking given that Graco's counsel explicitly acknowledged so" and that, "even where a responding party may have uncertainties, they are obligated to apply a reasonable interpretation in good faith and respond to the extent possible". *Id*.

Although Graco "will likely try to rely on the Access databases it...produced [in order] to argue [that] it has complied with this request", PMC maintains that "these databases are not responsive and do not fulfill Graco's discovery obligations under Rule 34". *Id*. Further, PMC states that it "has no way of knowing...Graco intended the databases to be responsive to these requests given that it expressly denies the existence of responsive documents in its written responses". *Id*. at 27-28. PMC argues that "the Access databases are indecipherable and meaningless without an extensive list of further information and corresponding legends...and even then are unlikely to be fully responsive to these requests". *Id*. at 28. Citing questions and inconsistencies that it has divined, PMC maintains that "Graco's delphic spreadsheet is designed to obscure...[rather than] reveal". *Id*.

Citing Adv. Comm. Notes to 1980 Amendment to FED. R. CIV. P. 33(d), *Puerto Rico Aqueduct & Sewer Authority v. Clow Corp.*, 108 F.R.D. 304, 306 (D.P.R. 1985), and *T.N. Taube Corp. v. Marine Midland Mortg. Corp.*, 136 F.R.D. 449, 454 (W.D.N.C. 1991), PMC argues that

18

"records must be offered in a manner that permits the same direct and economical access that is available to the responding party" and that "if compilations and summaries exist...[they] should be made available". *Id*. at 28-29. Although Graco claims that "it has no responsive documents that show its sales of fast set products, dates of the sale, the number of units sold, the cost of producing each product, the customer for each purpose, or the revenue from the sale", PMC maintains that this is "nonsense" because "Graco tracks this data...[in order] to compile the financial information necessary to complete its 10-Ks or Consolidated Financial Statements...[and to] run its day-to-day operations". *Id*. at 29. PMC states that "without a court order compelling immediate discovery, and without that immediate production, PMC will be unable to properly defend its case and prosecute its counterclaims". *Id*.

(e)    **Def.'s 3ʳᵈ RFP nos. 225-226 related to Graco's revenue and profits for all spray foam equipment for the past five years.**

Although "Graco contends that it has produced documents responsive to these requests", PMC maintains that "despite reasonable and diligent search efforts...[it] has been unable to locate more than few isolated responsive documents". *Id*. at 29. PMC argues that "these documents are an integral part of [its] damage evaluation" and that "Graco should be ordered to identify, by Bates number, the documents it contends are responsive particularly in light of the fact that [Graco] did not produce searchable text Excel files". *Id*. at 29-30. PMC contends that "if Graco had in fact produced responsive documents, it would seem that [it] should have no objection to identifying said documents" and should "not be permitted to evade [its] obligations by its vague responses". *Id*. at 30.

(f)    **Def.'s 3ʳᵈ Interrogatories nos. 26 & 33 related to Graco's sales and revenue data.**

PMC notes that interrogatory no. 26 requires Graco to "identify the total sales and

19

revenue for each discontinued product, which it identified in response to Interrogatory No. 25, for the years 2001 through 2007". *Id*. PMC points out that "Graco responds that it must ascertain whether the information is maintained in the ordinary course of business and agrees to respond under Rule 33(d) if it determines there are responsive documents", but maintains that "Graco mistakes this interrogatory as a request for production under Rule 34 – which it is not". *Id*. PMC argues that "even if Graco determines it does not possess a document which sufficiently identifies the information sought, it is nonetheless still obligated to provide a substantive response to this interrogatory and should be ordered to do so". *Id*.

Separately, PMC notes that interrogatory no. 33 "is similarly deficient in that it omits each of the facets of the information expressly called for by the request, thereby depriving PMC of crucial damage-related information which [Graco] is obligated to provide in a form that is clear and comprehensible". *Id*. PMC points out that Graco's "initial response to this interrogatory...stated that no document existed and therefore [Graco] could not provide a response pursuant to Rule 33(d)". *Id*. at 30-31. PMC argues that Graco "wholly ignored the fact that its obligations extend beyond what it can reference by way of document" and maintains that "Graco's supplementation still is insufficient". *Id*. at 31. As such, PMC contends that "Graco should be ordered to substantively respond to these requests". *Id*.

> **8.** **Graco should be required to provide responses to requests for production related to documents dated before 2004 (Def.'s 3rd RFP nos. 213-214, 227, 235-237, 250-259, 261-262, 276, 289, 304-311).**

PMC notes that Graco "has limited its discovery responses to the years 2004 through the present". *Id*. at 31. However, PMC has previously explained to Graco that it is "seeking documents dating back a few years prior to the Gusmer acquisition in February 2004...[in order] to set the landscape in terms of what the status quo was prior to Graco's acquisition". *Id*. PMC

maintains that this information is "particularly relevant to [its] damages assessment", as "the data from the preceding years is necessary to provide an accurate picture as to what changed and what remained constant following the Gusmer acquisition as well as the later acquisitions of GlasCraft and Liquid Control". *Id*. PMC notes that "Graco remains unwilling to provide any information prior to 2004". *Id*.

> **9.** **Graco should be required to provide answers to interrogatories and responses to requests for production related to Distributor Agreements (Def.'s 3rd RFP nos. 229-234 and Def.'s 3rd Interrogatories no. 24).**

PMC contends that "as part of its September 2, 2010 ruling, the Court ordered that each of the distributor agreements must be produced". *Id*. at 31. PMC argues that "distributor agreements are responsive to the requests that seek documents sufficient to identify which distributor agreements Graco had in effect at various times" and, therefore, that the September 2, 2010 ruling "should control these requests as well". *Id*.

PMC notes that "interrogatory no. 24 seeks information about Graco's distributors who complained about or questioned the quality, prices, or availability of Graco's Spray Foam equipment and products, or Graco's discontinuation of Spray Foam equipment and products after Graco's acquisition of Gusmer". *Id*. at 32. PMC maintains that "Graco's apparent failure to maintain a comprehensive system to track the complaints it receives does not absolve Graco of the requirement to respond to this interrogatory to the extent that it has information in its possession, custody, or control". *Id*. PMC contends that "the interrogatory calls for identification of all complaining/questioning distributors, not just the representative categories Graco has chosen to address", that "Rule 33(d) requires that the responding party specify the records that must be reviewed in sufficient detail to enable the interrogating party to locate and identify them as readily as the responding party could", that "Graco's identification of

21

representative categories is insufficient on its face in that it fails to include or provide Bates numbers for clearly responsive document sets", and that "Graco's identification of its customer service department is not sufficient to identify each person with knowledge of such complaints" but rather "each individual with knowledge needs to be identified with specificity". *Id*.

> **10.** **Graco should be required to provide responses to requests for production related to exclusivity with suppliers (Def.'s 3rd RFP nos. 272-273, 275, and 277).**

PMC notes that "Graco's response to request for production no. 272 states that no responsive documents related to distributors or customers exist, but does not address suppliers". *Id*. at 33.  Further, Graco "has advised that it will not produce documents regarding suppliers because it contends that suppliers are outside the scope of [this] litigation". *Id*.  PMC argues that Graco's position is "untenable in light of PMC's antitrust counterclaims which directly encompass suppliers". *Id*.  PMC notes that "Graco has taken a similar position with respect to request for production nos. 273, 275, and 277 and has now advised...that it is unwilling to respond to these requests". *Id*.  PMC maintains that the "Court should require immediate production" with respect to all of these items. *Id*.

> **11.** **Graco should be required to provide answers to interrogatories and responses to requests for production related to presentations to investors and financial reporting (Def.'s 3rd RFP nos. 316-317 and Def.'s 3rd Interrogatories no. 32).**

PMC contends that "despite Graco's unfounded objections, these documents relate to...[PMC's] counterclaims on a number of levels". *Id*. at 33.  By way of example, PMC claims that it is entitled to know "what Graco presented as its financial or market strengths, what industries Graco claimed it has a presence in, ...[and] what type of presence Graco claimed it had" and that it is entitled to "Graco's presentation of business strategy or plans that would be contained in such documents...as well as any internal analysis or management discussion of the

22

merits of such representations and plans". *Id*. at 33-34.  PMC notes that "Graco has admittedly failed to even inquire as to the existence of [this] information yet claims that it is irrelevant without having seen it". *Id*. at 34.

PMC notes that "interrogatory no. 32 asks Graco to identify each document that shows, explains, or set forth Graco's Quarterly and Annual Income Statements and Annual Consolidated Financial Statements for the years 2002 through 2010". *Id*.  PMC maintains that "Graco's response to this interrogatory is insufficient and disingenuous in light of the parties' extensive meet and confer discussions". *Id*.  Specifically, PMC contends that "Graco's identification of certain...10-K forms and...publicly available Annual Reports and letters to shareholders is not sufficient to satisfy this interrogatory" as the interrogatory requests all statements, "not just publicly available ones". *Id*.  PMC argues that "10-K statements are intentionally vague and general because they are public and...typically omit specific sensitive information which would be beneficial to competitors". *Id*.  PMC states that it "needs additional internal information...because the internal documents may and should reflect different information than 10-Ks and annual reports" such as "what portion of...net sales...relate to the products at issue". *Id*. at 34-35.  PMC claims that it "has specifically asked for this information and Graco has simply regurgitated its position that everything is in the 10-K", a position that PMC contends "is false".  *Id*. at 35.  PMC requests that the Court order Graco "to fully respond".  *Id*.

**12.   Graco should be required to provide responses to requests for production related to Graco's "natural acquisitions" (Def.'s 3rd RFP nos. 213-214, 217, 251-254, and 271).**

PMC argues that it "is entitled to documents regarding Graco's natural acquisition list or wish list for acquisitions...which was identified...at Mark Sheahan's ("Sheahan") deposition in July 2010" because "this information is directly relevant to PMC's antitrust counterclaims".  *Id*.

at 35.  Although "Graco will try to draw superficial distinctions", PMC maintains that Graco "had a practice of evaluating companies for acquisition on a seemingly regular basis which is part of its business model (and precisely how it expanded its spray foam business at issue in this case) and even had a name for it – 'natural acquisitions'".  *Id.*  PMC argues that "regardless of whether Graco "now tries to differentiate between potential and natural[,] responsive and relevant [documents] must be produced".  *Id.*

13. **Graco should be required to provide more specific answers to interrogatories and further responses to requests for production related to Graco's marketing and market share.**

(a) **Def.'s 3rd Interrogatories no. 29.**

PMC contends that "Graco attempts to limit this request by erroneously assuming that only programs expressly directed at Gama and Garraf are called for" and thereby "provided only a sampling of its programs...[including] only list[ing] a number of supporting documents".  *Id.* at 35-36.  PMC argues that "Graco needs to provide a comprehensive list of the programs that comprise its sales and marketing strategy regarding competition as a whole in order to provide a complete answer to this interrogatory".  *Id.* at 36.

(b) **Def.'s 3rd RFP no. 207.**

Although Graco "stated that it has produced or will produce responsive documents", PMC maintains that "Graco's production continues to be deficient with respect to providing documents regarding Graco's market share for Spray Foam equipment, particularly for the North American market from 2005 to the present".  *Id.*  PMC argues that "if Graco contends that it has actually produced all responsive documents, it must identify them by Bates number or some other means which would allow PMC to locate the documents within the...hundreds of thousands of documents produced".  *Id.* at 26.

24

**14.    Graco should be required to provide responses to requests for production related to trade libel claims (Def.'s 3rd RFP no. 268).**

PMC notes that "this request seeks documents reflecting communications between Graco and any of its distributors or suppliers about their use of Graco's name and/or trademark(s)". *Id.* at 36.  PMC maintains that "Graco objected on the basis of relevance...and pointed to a sample distributor agreement which is wholly unresponsive" in an attempt to circumvent its obligations. *Id.*  PMC points out that it has explained to Graco that "this request is designed to capture exchanges between Graco and third party distributors and suppliers which show that Graco demanded that any distributor or supplier who decided to carry Gama products or work with Gama remove the Graco name, logo, trademark, artwork, etc. from their website and any other marketing materials".  *Id.* at 36-37.  PMC contends that it "has learned of at least one instance in which this occurred and is entitled to documents reflecting any others" as "this request goes to the heart of PMC's antitrust claims".  *Id.* at 37.

**15.    Graco should be required to provide answers to interrogatories and responses to requests for production related to price increases (Def.'s 3rd Interrogatories no. 27 and Def.'s 3rd RFP no. 211).**

PMC notes that interrogatory no. 27 and request for production no. 211 "seek information about (1) the date of...price increases, (2) the amount of the increases, (3) and the reasons for the increases".  *Id.* at 37.  Although "Graco identified a number of price books" in response, PMC maintains that "identifying retail price lists is not a sufficient response" because "the reasons for increases...are not encompassed in the price lists".  *Id.*  Further, PMC contends that "Graco's production...is insufficient...[because] Graco has failed to produce a price book...for 2006" and because Graco has failed "to identify wholesale or distributor price increase information".  *Id.*  PMC requests that Graco "be ordered to supplement these...responses".  *Id.*

**16.    Graco should be required to amend its written responses to requests**

25

> **for production nos. 128-129, 133, 131-144, and 258 to reflects its representations that it has no further documents in its possession, custody, or control.**

PMC notes that "in its August 25, 2010 opposition..., Graco...affirmatively indicates that it has...produced all responsive documents to particular requests identified in PMC's August 13, 2010 letter-brief". *Id.* at 37. Based upon these representations, "PMC has withdrawn its requests to compel further documents" with respect to "request for production nos. 128-29, 133, 131-144, and 258". *Id.* at 37-38. However, PMC "maintains its request for an order from the Court requiring Graco to amend its written responses to reflect its representations that it has no further documents in its possession, custody, or control". *Id.*

**B.   Graco's Arguments in Opposition to the Motion to Compel**

**1.   Graco has satisfied its document production obligations.**

Initially, Graco notes that PMC served "406 document requests..., nearly half of which...[were] served on May 28, 2010 – just two months before the close of discovery that has been ongoing for almost two years". *See* Pl.'s Opp'n Br. at 1. Graco maintains that it "diligently searched for and produced more than 150,000 documents in response" and points out that this production was "many times the volume of PMC's production". *Id.* Although PMC claims that "Graco must be withholding documents", Graco notes that PMC does so "despite the fact that [it] declined to depose the Rule 30(b)(6) witness Graco designated to testify regarding its document collection and production efforts". *Id.* Further, although PMC "contends that the Court should relieve [it] of the task of reviewing Graco's production and compel Graco to do so for PMC", Graco notes that PMC offers "no support for this argument...[and that] no support exists". *Id.* at 2. Graco argues that the "Court should not tolerate PMC's transparent attempt to avoid doing the work necessary to defend against Graco's claims and pursue their own counterclaims" and that

PMC's "requests for relief should be denied". *Id.*

> **(a)** **The rules do not require Graco to categorize documents by responsiveness to particular document requests.**

Although PMC complains that "Graco must be compelled to identify documents responsive to each request by Bates number...because it is burdensome for them to review these documents and determine which are relevant to which requests", Graco contends that "this is a problem of [PMC's] own making" as PMC "should have served fewer and more limited requests" if it did not want to do this review. *Id.*  Citing Fed. R. Civ. P. 34(b)(2)(E)(i), Fed. R. Civ. P. 34(e)(i), and *In re G-I Holdings, Inc.*, 218 F.R.D. 428, 439-40 (D.N.J.  2003), Graco maintains that it "has produced documents responsive to PMC's requests as they are kept in the usual course of business", that it "has no duty to organize and label the documents by request", and that PMC's "arguments fail in light of the plain phrasing of Rule 34(b)". *Id.* at 2-3.  Graco argues that PMC "cannot claim [it is] unable to review Graco's production...[because] Graco produced its documents with optical character recognition...and standard metadata where possible" making the documents "electronically searchable". *Id.*  Graco maintains that PMC has "received what [it] is entitled to under the Rules and the parties' agreements" and the Court "should deny PMC's motion to compel...". *Id.* at 3.

> **(b)** **Graco has timely produced responsive documents.**

Graco notes that PMC served "195 of [its] 406 requests on May 28 – just one month before the close of discovery...". *Id.* at 3.  Graco states that it "immediately began searching for responsive documents and started producing documents before its objections were even due" while simultaneously "(1) defending thirteen depositions that PMC waited to take until the final weeks of discovery, (2) responding to 109 new requests for admissions and twelve new interrogatories that PMC served on May 28, and (3) participating in countless meet and confer

sessions". *Id*.  Although PMC has argued that "the timing of their requests has no bearing because [it] operated under the same constraints and produced documents while depositions were ongoing", Graco points out that it served "its final set of documents requests on January 7, 2010". *Id*. at 4.  Therefore, Graco asks the Court to note PMC's double standard, as PMC "simultaneously argue[s] that it was proper for [it] to produce responsive documents more than five months after Graco served its final documents requests in January 2010 but that Graco should be sanctioned for producing documents responsive to PMC's May 28 requests less than three months after PMC served the May 28 requests". *Id*.

Separately, although PMC contends that "Graco should be sanctioned for failing to produce documents responsive to 195 new requests before PMC even propounded them", Graco argues that "the rules do not [include this] require[ment]". *Id*.  Graco contends that "to the extent [it] continued to produce documents responsive to earlier [PMC] requests", this is because Graco "takes seriously its obligations to continuously search for and produce all documents that are responsive to PMC's...discovery requests". *Id*.  Graco notes that it has "reviewed the massive amount of documents it collects and its privilege designations to ensure nothing slipped by unproduced" and, in fact, "recently produced certain privileged documents pursuant to Rule 502 to resolve a discovery dispute". *Id*. at 4-5.

### (c)    Graco's responses to PMC's requests are proper.

Graco notes that "when it responded to PMC's discovery requests, it was continuing to investigate whether responsive documents exist" and, "where it remained uncertain", Graco "responded that it would produce responsive documents if they exist". *Id*. at 5.  Graco points out that PMC "took the same approach in their discovery responses". *Id*.  Although PMC complains that "Graco has refused to advise of the existence of responsive documents", Graco maintains

28

that it "has answered all of PMC's inquiries regarding the existence of responsive documents" by way of "numerous meet and confers and in correspondence" and that it "complied with any purported discovery obligations under *Armor Screen Corp. v. Storm Catcher, Inc.*, 2009 U.S. Dist. LEXIS 63538, at *9-10 (S.D. Fla. 2009). *Id*. at 5-6. Graco argues that PMC's motion to compel should be denied, but, if it is granted, "the Court should likewise require PMC to revise [its] discovery responses to eliminate any uncertainty about whether responsive documents exist". *Id*. at 6.

### (d)   PMC's claims regarding Graco's production of financial documents are meritless (Def.'s 3rd RFP nos. 298-310).

Graco notes that while "PMC refer[s] to these requests as seeking damages-related discovery, [PMC] actually seek[s] very specific financial documents" and has previously been advised that "Graco has not withheld any responsive documents" as same have either been "produced" or "do not exist". *Id*. Graco states that PMC has failed "to meet and confer in good faith" based upon the fact that "during a May 2010 discussion regarding PMC's failure to produce financial documents responsive to Graco's January 2010 requests, PMC announced [its] own desire to obtain financial documents" without having "served requests for such documents" and waiting until "just weeks before the close of discovery". *Id*. At that time, "PMC advised Graco that [it] intended to serve requests related to High Performance Coating and Foam ("HPCF") and Fast Set equipment". *Id*. at 7. Thereafter, the parties "agreed they would produce data from databases if requested...but [would not] create documents not generated in the ordinary course of business". *Id*. "On May 28[,] PMC served requests for...[(1)] quarterly and annual income statements and annual consolidated financial statement for Graco for 2002 to the present, [(2)] quarterly and annual income statements for Graco's HPCF Division and Fast Set Subdivision for 2002 to the present, and [(3)] annual income and consolidated financial

statements for GlasCraft, Gusmer and Decker for 2002 to the date of acquisition". *Id*. Graco states that it "produced documents responsive to these requests" and has subsequently "made clear that it does not generate or possess some of the requested documents". *Id*.

### i. Graco has produced its income statements and consolidated financial statements (Def.'s 3rd RFP no. 310).

Graco maintains that its "quarterly and annual income statements and its annual consolidated financial statements are contained in its Forms 10-K and 10-Q", that it "has repeatedly advised PMC of this fact", and that "it has produced those documents". *Id*. at 8. Although PMC claims that "Graco must have additional income and consolidated financial statements", Graco maintains that PMC is wrong. *Id*. Graco states that "as a publicly held company, the securities laws require [it] to prepare Forms 10-K and 10-Q...[and] these forms constitute Graco's income and consolidated financial statements". *Id*. Despite PMC's protestations that Graco "has other documents responsive to [its] requests", that "these Forms are merely projections and estimates", or that "the Forms are intentionally vague and general", Graco contends that "there are no other responsive documents". *Id*. Citing *Rockwell Intern. Corp. v. H. Wolfe Iron & Metal Co.*, 576 F. Supp. 511, 513 (W.D. Pa. 1983), Graco argues that "the Rules do not require [it] to create income or financial statements that do not exist" and that "the parties explicitly acknowledged and agreed to that fundamental principle". *Id*. Importantly, Graco notes that it "produced detailed spreadsheets showing annual sales, revenues, and margins for all Fast Set equipment that it had created for its own use for purposes of this litigation" and that "these charts contain more information and detail than income or financial statements would include...if such documents actually existed". *Id*. at 8-9. Graco points out that "PMC never tell[s] the Court what relevant information [it] believe[s] is missing from these or other documents Graco

produced". *Id.* at 9.  Finally, Graco notes that it "produced transactional data showing all sales of all HPCF equipment, including Fast Set products", and that "among other things, the data identifies the month of sale, customer account, product, price, rebates, and cost" and "provide[s] PMC [with] the underlying information needed to assess anything of relevance to this case". *Id.* Graco states that it "has produced all of the responsive documents in its possession...[and argues that] there is no legitimate dispute requiring the Court's resolution". *Id.*

ii.   **No additional income statements exist for Graco's HPCF business unit or a purported "Fast Set Subdivision" (Def.'s 3ʳᵈ RFP no. 298-303).**

Although PMC "claim[s] that Graco has failed to produce income statements for its HPCF business unit prior to 2010", Graco maintains that "as it advised PMC, Graco never prepared income statements for the HPCF business unit prior to 2010...[and that] only two quarterly statements exist". *Id.*  Graco states that "it has produced both of these documents". *Id.* Further, although PMC "complain[s] that Graco has not produced income statements for its Fast Set Subdivision", Graco maintains that "as it explained to [PMC] before PMC issued [its] May 28 requests, Graco has never had a Fast Set Subdivision". *Id.* at 9-10.  Rather, Graco states that "Fast Set products are manufactured and sold by the HPCF business unit...[and that] it has produced income statements for that unit" because it "does not prepare income statements specific to Fast Set products". *Id.* at 10.  Citing *Rockwell*, 576 F. Supp. at 513, Graco maintains that "it is not required to create income statements for a nonexistent subdivision for PMC's benefit". *Id.*

iii.   **Graco has produced existing income and consolidated financial statements for GlasCraft, Gusmer, and Decker (Def.'s 3ʳᵈ RFP no. 304-309).**

Graco states that it "has produced documents responsive to these requests" and that "there is nothing more for the Court to compel Graco to produce". *Id.* at 10.

31

       **iv.**    **Graco has produced sales dates in response to document request nos. 225 and 312-315 (Def.'s 3rd RFP no. 225 and 312-315).**

Graco notes that "request no. 225 seeks documents sufficient to identify Graco's sales for products it discontinued after acquiring Gusmer" and that "request nos. 312-15 seek annual and monthly sales reports for each Fast Set product sold from 2002 to 2010 and for each product sold by Gusmer or GlasCraft from 2002 until the acquisition by Graco, sorted by (a) product, (b) customer, (c) date, (d) units sold, (e) costs of production, and (f) revenue from the sale". *Id.* at 10. Graco states that it has advised PMC that "it does not maintain sales reports containing the information" sought. *Id.* at 10-11. However, Graco "produced, in native format, all transactional sales data that it maintains in its databases for all HPCF products...[and] the compilation charts described above, which detail total annual sales and margins". *Id.* at 11. Graco maintains that "PMC...failed to meet and confer" with respect to these issues and, "to this day, PMC [has] never informed Graco or the Court precisely what information [it] believe[s] is missing". *Id.* Even in their motion papers, Graco contends that "PMC vaguely assert[s] that the information Graco produced was unintelligible but...[does] not describe what more [it] want[s]". *Id.*

       **v.**    **Graco has produced – and identified – documents showing revenue and profits for spray foam equipment (Def.'s 3rd RFP no. 226).**

Graco notes that "this request seeks documents sufficient to show Graco's revenue and profits for all of its Spray Foam equipment and products for the past 5 years". *Id.* at 11-12. Although PMC's "complaint centers on [its] inability to locate responsive documents in Graco's production", Graco maintains that it "has already identified responsive documents for defense counsel" and that "no dispute remains". *Id.* at 12.

       **(e)**    **Graco has placed appropriate time limitations on its responses**

**to PMC's document requests (Def.'s 3ʳᵈ RFP no. 262).**

Graco notes that the requests at issue "seek a wide range of documents from Graco's spray-foam equipment strategies to industry publications to customer complaints" but that "none of these requests defines a reasonable time frame, and instead request all documents". *Id*. at 12. Importantly, Graco contends that because document request no. 262 "already limits the time period to 2004 to the present[,]...no dispute exists" with respect to that request. *Id*. With respect to the other requests, in order to create reasonable time limits on discovery, "Graco limited its responses to the 2004 to the present time period". *Id*. Graco points out that "this time limitation has been in place from the beginning of discovery" based upon "an ESI questionnaire that defined the relevant time period for document investigation at January 1, 2004 to the present" which the parties agreed to in October 2008. *Id*. Graco maintains that it "openly maintained this limitation throughout its responses during...discovery" and that it "searched for and reviewed documents based on this limitation". *Id*. Citing *Wells v. Sears Roebuck & Co.*, 203 F.R.D. 240, 241 (S.D. Miss. 2001), Graco argues that because PMC "waited to bring their objection to this agreed upon timeframe to the Court until after all of this work was done and after discovery closed", it should be considered untimely. *Id*. at 12-13. Graco contends that requiring it to "redo its search and review based on a new timeframe" would be unduly burdensome, especially given that PMC's "only stated need for these documents is to allow them to set the landscape". *Id*. at 13. Further, Graco points out that it "has already produced pre-2004 documents that PMC claim[s] [that it] needs in order to do [its] damages assessment, including HPCF sales data and compilations dating back to 2000". *Id*. Graco maintains that PMC has never explained "what need [it has] that these documents do not fill", nor has PMC identified "particular pre-2004 documents that they want" as it was invited to do by Graco. *Id*.

**(f)     Many issues PMC continues to pursue have been resolved.**

Graco notes that "PMC raised issues that the parties had already resolved during the meet and confer process" in their informal application to the Court and "many of those issues" are not being pursued here.  *Id*. at 13-14.  Although PMC contends that "Graco's response to [its] informal application was the first time Graco...affirmatively indicated that it has produced all responsive documents to particular requests", Graco maintains "that is false" and refers the Court to "the letters Graco cited in its response to PMC's application showing Graco's affirmative indications that it had produced all documents responsive to those requests".  *Id*. at 14.  However, Graco states that "PMC continues to seek discovery orders on some issues [that] the parties [have] resolved".  *Id*.

**i.     Distributor agreements (Def.'s 3rd RFP nos. 229-234).**

Graco states that it "produced distributor agreements for the time period from 2006 to the present with those who [sic] received Graco's October 2007 letter".  *Id*.  Graco argues that "PMC concede[s] the Order controls these requests".  *Id*.

**ii.     Documents regarding distributors' use of Graco's trademark (Def.'s 3rd RFP no. 268).**

Graco notes that "request no. 268 seeks documents regarding Graco's communications with its distributors or suppliers regarding their use of Graco's trademarks or trade names".  *Id*. Notwithstanding its relevance objections, Graco states that it "has produced responsive documents" and that "no dispute remains".  *Id*.

**iii.     2006 price increases (Def.'s 3rd Interrogatories no. 27 and Def.'s 3rd RFP no. 211).**

Graco notes that in response to interrogatory no. 27, it identified "price books[,] lists[,]...[and] the reasons for such increases" in addition to citing "deposition testimony

regarding the increases". *Id.* at 15.  Graco states that it "has produced 2006 price lists in response to request no. 211".  *Id.*

> **(g)    The issues PMC raises regarding Graco's production in response to particular requests lack merit.**

> **i.    Post-acquisition valuations (Def.'s 2nd RFP no. 146).**

Although PMC contends that "Graco has not produced post-acquisition valuations regarding Gusmer's goodwill, trade secrets, technology, and customer relationships", Graco maintains that its "response to this request stated that it would produce documents that relate to the valuation conducted pursuant to the SPAs" and Graco "has produced such documents".  *Id.* at 15.  Graco notes that it produced "correspondence with PMC regarding the post-closing valuation", "correspondence with American Appraisal (the company that completed the post-closing valuation)", "American's Appraisal's final report (and draft reports) of Fair Value of Tangible & Identifiable Intangible Assets", "tax filings exchanged between Graco and PMC which relate to the post-acquisition valuation", "a document regarding the valuation of the Gusmer Europe name", and "documents that constitute impairment reviews and corresponding charts".  *Id.* at 15-16.  Graco argues that although "it is unclear what PMC want[s], ...[it is] entitled to nothing more" as Graco has "searched for and produced documents responsive to this request...during the 2006 to 2010 timeframe".  *Id.* at 16.

> **ii.    Documents regarding solicitations and lost sales (Def.'s 2nd RFP nos. 148-176).**

Graco notes that "these requests seek documents that support Graco's contention that PMC solicited and caused particular customers to cease doing business with Graco".  *Id.*  Graco further notes that it "has produced responsive documents", including "spreadsheets detailing sales to these customers, emails and letters to customers, and transactional sales data".  *Id.*

Although PMC contends that Graco should be compelled "to identify responsive documents by Bates number or concede that it has no proof of lost sales", Graco maintains that it "has already identified such documents in its response to PMC interrogatory no. 6" and that "nothing in the Rules require[s] Graco to respond to PMC's document requests by identifying responsive documents by Bates number". *Id*. at 16-17.  Graco argues that PMC offers "no authority for their claim that Graco should concede it lacks evidence of lost sales" and fails to "provide the Court a full description of the documentary and testimonial evidence Graco has produced in this regard". *Id*. at 17.

### iii.    Confidential disclosure agreements (Def.'s 2nd RFP no. 180).

Graco notes that "this request seeks Graco's confidential disclosure agreements ("CDA") including those signed by Graco's employees between January 2005 and the present". *Id*.  Graco points out that it "agreed to produce templates of this agreement which...is with suppliers...[and] also produced its Standard Operating Procedure related to the CDAs". *Id*.  Although PMC complains that "Graco has not produced signed CDAs with its employees", Graco maintains that its "employees do not execute CDAs" and that it has produced "other forms of confidentiality agreements" that Graco employees do execute including "the new hire form related to non-disclosure, ...its Conduct of Business ("COB") Guidelines and employee handbooks, ...and every Gusmer employee's COB acknowledgment in Graco's possession". *Id*.

Although PMC contends that "Graco has only produced blank, undated versions of the CDA", Graco maintains that it "produced over 50 confidentiality agreements with Gusmer suppliers, ...template CDAs that include information regarding revision dates and a description of when the agreement is to be used, ...[and] several signed CDAs". *Id*. at 17-18.  Graco argues that it has not produced "every signed CDA with every supplier because...the signed CDAs rarely if

36

ever vary from the template...[and because] not every CDA is relevant because not every supplier had access to the trade secrets at issue". *Id*. at 18.  Citing *Nestle Foods Corp. v. Aetna Cas. & Sur. Co.*, 135 F.R.D. 101, 104-05 (D.N.J. 1990) and *Hite v. Peters*, 2009 U.S. Dist. LEXIS 51894, at \*11 (D.N.J. 2009), Graco maintains that it "should not be compelled to undertake the burden and expense of collecting and producing these irrelevant documents" where PMC has "offered no reasoned basis why every CDA with every supplier is relevant".  *Id*.  However, Graco "welcomes...a discussion" if "there are particular suppliers for which PMC seek[s] such CDAs". *Id*.

Finally, Graco argues that to the extent PMC contends "request no. 180 requires Graco to identify when Graco disclosed its trade secrets to suppliers or other related facts, that contention represents a misunderstanding of Rule 34 which requires only the production of documents".  *Id*. Further, to the extent that PMC claims that "Graco must produce every CDA with every supplier pursuant to their interrogatories", Graco argues that PMC "misread[s] [its] own discovery requests" as same "are limited to the alleged trade secrets at issue in this lawsuits".  *Id*. at 18-19.

### iv.   Conduct of business training (Def.'s 3rd RFP nos. 195-197).

Graco notes that PMC seeks "documents sufficient to show (1) which former Gusmer employees attended Graco's COB training, (2) the topics discussed during such training, and (3) documents provided to employees during such training".  *Id*. at 19.  Although PMC contends that "Graco has only produced a single document on this topic", Graco maintains that it "has produced abundant documents" including "various versions of the COB Guidelines addressed at those training sessions", "COB acknowledgments for Gusmer employees that it has in its possession", "Power Point presentations from COB training sessions", "email correspondence regarding COB training, what occurred at the training, ...[information regarding] the distribution

of Graco's COB handbook at and following the training", and "governmental filings confirming the training occurred". *Id*. Graco argues that it "has satisfied its obligation" because, "even if other documents regarding COB training may exist, Graco has produced documents sufficient to show the matters set forth in these requests". *Id* at 19-20. Graco maintains that PMC's "request for negative inferences should be rejected". *Id*. at 20.

### v. Supplier agreements (Def.'s 3ʳᵈ RFP no. 272).

Graco notes that this request seeks "documents that refer or relate to any exclusivity requirement Graco has with suppliers of Spray Foam equipment and products". *Id*. Graco maintains that "such documents have no relevance in this case" because "PMC's pleadings do not allege that Graco's supplier agreements have impacted PMC's business...nor [has] PMC taken such a position in [its] discovery responses or...in deposition testimony". *Id*. Nevertheless, Graco points out that it "has already produced documents related to a supplier exclusivity provision". *Id*.

### vi. Requests related to non-spray foam products (Def.'s 3ʳᵈ RFP nos. 273, 275, and 277).

Graco notes that "request nos. 273, 275 and 277 seek documents regarding distributors, customers, and suppliers of products other than Spray Foam equipment". *Id*. at 20-21. Graco argues that PMC "limited [its] antitrust counterclaims to the market for Spray Foam equipment" and, therefore, "the requested documents are not relevant to PMC's counterclaims". *Id*. Citing *Nestle Foods*, 135 F.R.D. at 104-05, Graco maintains that PMC's two-sentence argument on this issue...is not sufficient to satisfy PMC's burden to show that these documents are relevant...[or] to justify the burden of [Graco having to search] numerous other business units for responsive documents". *Id*. at 21.

### vii. Potential investors (Def.'s 3ʳᵈ RFP nos. 316-317).

Graco notes that "these requests seek documents that refer or relate to presentations Graco made to potential investors or to management regarding potential investors". *Id*. Graco maintains that "this information, if it exists, is of limited relevance in light of the thousands of documents Graco has produced that describe Graco's business segments, markets, and competitors" and claims that PMC "cannot seriously contend that [it has] been unable to discover this sort of information through other means". *Id*. Graco argues that "this information would be some of the most confidential within Graco" such that "Graco's in-house legal department may not know about it" and any "potential investor or buyer would likely...consider this information highly confidential". *Id*. at 21-22. Graco claims that "given standard industry practices...such information would likely be protected by a non-disclosure agreement...[and] that Graco would be precluded from sharing it". *Id*. at 22. Citing *Tonnemacher v. Sasak*, 155 F.R.D. 193, 195 (D. Ariz. 1994), Graco argues that "given the highly confidential nature of these documents, their limited relevance, and the damage that could result from their disclosure, discovery of responsive documents...is unwarranted" and PMC's "request to compel should be denied". *Id*.

### viii.   Graco's list of "Natural Acquisitions" (Def.'s 3rd RFP nos. 213-214, 217, 251-254, and 271).

Graco notes that PMC "contend[s] that Graco must produce documents regarding its list of natural acquisitions", or "those companies that someone at Graco has identified as possibly making sense for Graco to someday acquire if the opportunity presented itself", which differs from "potential acquisitions". *Id*. Graco maintains that PMC "never served a request for Graco's list of natural acquisitions" but, instead, "[(1)] request nos. 213, 214, and 271 seek documents regarding Graco's alleged plans to dominate, control, or be the leading company in the market without reference to acquisitions", "[(2)] request no. 217 seeks documents regarding plans to

39

increase market share", and "[(3)] request nos. 251-54 seek documents that relate to analyses or discussions of how competition, pricing, output, or product offerings have been or will be impacted by Graco's actual or potential acquisitions". *Id*. at 23.  Graco argues that none of these requests include natural acquisitions, as same "is different from any plan to dominate or control or increase market share", "does not explain how competition, pricing, output, or product offerings will be impacted", and "differ from potential acqusitions" in a non-superficial way. *Id*. Citing *Nestle Foods*, 135 F.R.D. at 104-05, Graco contends that "even if PMC had requested documents regarding natural acquisitions, PMC [has] not articulate[d] any relevance of these documents" which "are some of the most confidential and competitively sensitive documents that Graco possesses". *Id*. at 23-24.  Further, "even if PMC had properly requested these documents and demonstrated their relevance, it would be extremely burdensome for Graco to locate and produce all documents throughout its worldwide business that reference companies that someone somewhere identified as possibly making sense for Graco to acquire". *Id*. at 24.  Importantly, Graco notes that it "did produce documents that refer to natural acquisitions because they were responsive to other requests". *Id*. at 23.

## 2.    Graco's interrogatory responses are sufficient.

Preliminarily, citing *Banks v. Office of the Senate Sergeant-At-Arms & Doorkeeper*, 222 F.R.D. 7, 9 (D.D.C. 2004), Graco notes that PMC "served 33 Interrogatories...many of which contain improper subparts". *Id*. at 24.  Further, Graco points out that it "responded to every Interrogatory", "its responses total over 140 pages", and "it has supplemented its responses several times". *Id*.

### (a)    PMC 1st Interrogatories no. 1.

Graco notes that this interrogatory "asks Graco to describe its negotiations for and entry

into noncompetition agreements with PMC or Royo". *Id*. at 25. Graco points out that it responded pursuant to Rule 33(d) by "identifying two agreements, one of which was a 1992 agreement between Gusmer and Commette". *Id*. Although PMC has maintained that "this agreement is nonresponsive because it is a confidentiality agreement with Gusmer...[and] not a non-compete agreement with Graco", Graco argues that had PMC "read beyond the title of this document...[it] would never have made this argument" because the agreement mentioned above contains a "noncompetition clause...that belongs to Graco following its Gusmer acquisition". *Id*. Graco notes that the "only complaint with respect to the second noncompetition agreement" identified is that "Graco did not identify documents showing negotiations". *Id*. Graco maintains that it "identified those documents in response to PMC's informal application and has since supplemented its responses to include...Bates numbers". *Id*.

Separately, although PMC has maintained that "Graco must explain the common-law duties [that] PMC and Royo owe to Graco in response to this interrogatory", Graco argues that "this interrogatory does not request an explanation of these common-law duties" and that same were only referenced in Graco's response "to make clear that its identification of noncompetition agreements should not be construed as waiver of Graco's common-law claims". *Id*. at 26. Graco maintains that such references do not "necessitate an explanation beyond what this interrogatory specifically requests". *Id*.

### (b)    Commette 1st Interrogatories nos. 1-4.

Graco notes that "these interrogatories seek information regarding Graco's trade secret claims, including a description of each instance where Commette or Royo misappropriated Graco's trade secrets". *Id*. at 26. Graco points out that it provided "a 78-page response that includes all responsive information known to Graco". *Id*. Although PMC initially complained

41

that "Graco's responses...do not identify specifically what trade secrets it claims Commette and Royo misappropriated", Graco notes that PMC now complains "that Graco's interrogatory response still has not said how Commette and Royo misappropriated the trade secrets [at] issue". *Id*. at 26-27. Graco argues that PMC's contentions are "beyond the pale given all of the discovery that has occurred to date and the hundreds of pages of briefing and exhibits the parties submitted pursuant to PMC's motion for partial summary judgment on these claims". *Id*. at 27. Graco maintains that its responses "clearly set forth how Commette and Royo misappropriated the trade secrets and confidential business information at issue" – namely, "they had access to these trade secrets and confidential business information as a result of their high-level positions with Gusmer and Graco", "they or their agents took or retained that information when they left Graco", and "they are now using [that information] to manufacture, market, and sell Gama products and run the Gama businesses". *Id*. Citing *SI Handling Sys., Inc. v. Heisley*, 753 F.2d 1244, 1261 (3d Cir. 1985) and *Atochem N. Am., Inc. v. Gibbon*, 1991 U.S. Dist. LEXIS 11670 (D.N.J. 1991), Graco argues that the law does not require that it "show the precise method by which Commette and Royo took these trade secrets" but rather, Graco need only "construct a web of perhaps ambiguous circumstantial evidence from which the trier of fact may draw inferences which convince him that it is more probable than not that what...[is alleged] did in fact take place". *Id*. at 27-28.

Separately, Graco argues that "PMC's complaints related to Graco's references to other former Gusmer employees are...unfounded". *Id*. at 28. Graco maintains that where it used that phrase, "it specifically identified the employees by name or by their status as current Gama employees". *Id*. Further, Graco contends that its "Rule 30(b)(6) designee provided a complete list of all individuals Graco claims stole its trade secrets". *Id*. Graco argues that "PMC's

complaints regarding Graco's description of how it protects its trade secrets from disclosure by third parties..ring hollow". *Id*. Graco maintains that its "responses thoroughly describe how Graco does so, including by requiring CDAs when engineering drawings or other confidential information is shared, and the protective steps Gusmer took pre-acquisition". *Id*. Graco contends that it is not clear what more it can do, noting that PMC does "not ask the Court for any particular relief". *Id*.

(c)     **PMC 1st Interrogatories no. 5.**

Graco notes that this interrogatory "asks Graco to describe all instances where PMC or Royo solicited current or former Graco customers". *Id*. at 29. Graco points out that it provided "four pages identifying the known instances of solicitations, including the dates, the circumstances and context, the form of the solicitation, the location, and the individuals with knowledge of the solicitations" in addition to referencing "additional details provided in response to interrogatory no. 6...which identifies documents regarding these solicitations including email correspondence with customers, internal communications, and spreadsheets showing the changes in sales to those customers who began doing business with Gama following such solicitations". *Id*. Although PMC has complained that Graco's response states that the solicitations were "by Commette, Royo, and/or other individuals employed or otherwise retained by PMC", Graco argues that "this response is proper". *Id*. Specifically, while Graco "has learned that PMC...solicited the customer identified and has disclosed the information known to it, Graco has not been able to discover which of PMC's agents were specifically involved in these solicitations due to PMC's failure to produce such information through discovery". *Id*. Graco contends that PMC is in a better position than Graco to "state which of these agents made these solicitations" and hopes that "the identities of PMC's agents" might be revealed in the "thousands of pages of

documents PMC...[provided] on the date this brief was due". *Id*. at 29-30.  Graco maintains that PMC's "request for a negative inference should be denied...[because] Graco has provided as complete of a response as it can given the handicap thrust upon it by PMC's...withholding of responsive documents about their own customer and distributor relationships". *Id*. at 30.

**(d)      PMC 1ˢᵗ Interrogatories no. 6.**

Graco notes that this interrogatory "asks Graco to identify information regarding Graco's lost sales or customers". *Id*. at 30.  Although PMC complains that Graco "provided a list of entities but failed to include any of the other pieces of information called for by this interrogatory", Graco maintains that it "identified specific customers, the change in sales to those customers between 2006 (before Gama began doing business) and 2008 (after the customers ceased doing business with Graco in favor of Gama), ...the bases for its knowledge that these customers ceased doing business with Graco in favor of Gama, the date it acquired such knowledge, the individuals who possess such knowledge, the nature of the products at issue (where known), and documents related to these lost sales". *Id*.  Further, although PMC complains that "Graco does not know what the dollar figures represented and cannot explain why they responded with an arbitrary comparison between 2006 and 2008", Graco argues that "the 2006 and 2008 figures represent the difference in Graco's total sales pre- and post-Gama", that it "produced and identified by Bates number spreadsheets that show the annual sales to the entities identified", and that it "produced transactional sales data". *Id*. at 31.  Graco maintains that PMC's reference to Keith May's ("May") testimony "is misleading", as May "testified that Graco's CRM database...allows managers to identify where they lost a sale" and Graco "produced all CRM content related to sales-manager activity and all monthly reports that reference PMC". *Id*.

44

Graco points out that "even as [PMC] demand[s] sanctions against Graco for refusing to produce additional information regarding lost sales, PMC refuse[s] to produce any such information in support of [its] own purported antitrust counterclaim".  *Id*.  Specifically, Graco states that "PMC refused to respond" to Graco's interrogatory "seeking facts related to PMC's alleged lost sales", claiming that "the interrogatory called for expert testimony".  *Id*.  In response to Graco's inquiry of PMC as to "how [it] could argue that Graco should provide more facts in response to [its] interrogatory while simultaneously stating that [PMC] had no obligation to produce any facts in response to Graco's nearly-identical interrogatory", PMC stated that "Graco was out of luck because it had chosen to provide information...rather than taking PMC's approach of asserting a...calls-for-expert-testimony objection".  *Id*. at 31-32.  Graco argues that "unlike PMC, [it] has produced the lost sales information it has in its possession".  *Id*. at 32.

### (e)      PMC 1st Interrogatories no. 8.

Graco notes that this interrogatory "requests a description of instances where PMC or Royo acted in concert with others and agreed to inflict a wrong against or injury upon Graco".  *Id*.  Graco points out that "this interrogatory seeks information that in all material respects is called for by other interrogatories seeking descriptions of PMC's or Royo's (1) misappropriation of Graco trade secrets, (2) use of Graco marks, (3) suggestions of an affiliation with Graco/Gusmer, (4) solicitations of Graco/Gusmer customers, (5) breaches of the SPAs, and (6) actions taken with ill-purpose or bad motive".  *Id*.  Citing *In re Savitt/Adler Litig.*, 176 F.R.D. 44, 52 n.10 (N.D.N.Y. 1997), Graco argues that it properly "incorporated by reference its responses to other interrogatories" and notes that PMC "points to no contrary rule or case".  *Id*. at 32-33.

### (f)      Def.'s 2nd Interrogatories nos. 19 & 21.

Graco notes that "these interrogatories merely seek the identification of documents that

support Graco's claims of misappropriation" and assumes that "PMC's inclusion of interrogatory no. 20...was unintended as it has nothing to do with the identification of documents that support Graco's claims of misappropriation".   *Id*. at 33.   Specifically, interrogatory no. 19 seeks "identification of all documents which Graco intends to rely upon to support its allegations that PMC misappropriated its alleged trade secrets" and interrogatory no. 21 asks Graco "to identify documents supporting its allegation that PMC or [its] employees actually used Graco's alleged trade secrets".   *Id*.   Citing *PMC, Inc. v. Kadisha*, 78 Cal. App. 4th 1368, 1383 (Cal. App. 2D Dist. 2000) and *Savitt*, 176 F.R.D. at 52, n.10, Graco argues that "the information these interrogatories seek is entirely duplicative of other interrogatories" and that it properly "incorporated its responses to those other interrogatories by reference".   *Id*. at 33-34. Specifically, Graco points to "Commette's Interrogatory No. 1...[which] asks Graco to identify documents that support its misappropriation contentions" and notes that it responded to said interrogatory by explaining how "PMC came to possess the trade secrets at issue[,] how PMC [is] unlawfully using those trade secrets, and...identified documents evidencing these facts".   *Id*. at 33.

### (g)    Def.'s 3rd Interrogatories no. 24.

Graco notes that "this interrogatory asks Graco to identify all customers who complained about or questioned Graco's quality, prices, product availability, or discontinuations following the Gusmer acquisition".   *Id*. at 34.   Graco argues that "this request is grossly overbroad" as "Graco is a large company that sells products across various manufacturing sectors" and, therefore, "it would be unduly burdensome for Graco to identify all customers who voiced any concern about Graco's quality, prices or products in the past five years".   *Id*.   However, "Graco recognizes that some information responsive to interrogatory no. 24 may be relevant...[and has]

therefore identified individuals with knowledge of relevant customer complaints and...identified the following categories of documents...regarding such complaints: (1) documents entitled 'Customer Survey Results', (2) documents entitled 'HPCF Area Manager Monthly Report', (3) documents entitled 'Graco Distributor Survey_IPD/AFTD', and (4) 'Graco End User Survey_IPD/AFTD'". *Id*. at 34-35. Graco notes that because it produced its documents "with OCR and metadata, PMC can easily locate these documents in Graco's production". *Id*. at 35. Graco argues that its response "is sufficient...[because] Rule 33(d) does not require Graco to identify all documents by Bates number...[but rather,] requires the responding party to provide sufficient detail to enable the interrogating party to locate and identify them as readily as the responding party could". *Id*. Graco maintains that "because PMC can search for these documents by title as easily as Graco can, Graco has fulfilled its obligation". *Id*.

Separately, although PMC complains "about Graco's reference to its customer service department", Graco argues that PMC was "free to depose one or more representatives from Graco's customer service department" and notes that it "produced a Rule 30(b)(6) deponent" which PMC could have questioned "regarding the customer-service department's involvement with such complaints". *Id*. at 35-36. Graco argues that PMC's failure "to do so...is a problem of [its] own making". *Id*. at 36.

### (h)    Def.'s 3rd Interrogatories nos. 26 & 33.

Graco notes that interrogatory no. 26 "seeks calculations regarding Graco's total sales (by month and year) for each piece of spray foam equipment or product identified in interrogatory no. 25". *Id*. at 36. Graco points out that it responded by stating that "it does not maintain the information sought by this interrogatory in the ordinary course of business...[but] has produced documents containing sales data...[identified as] GRAC0578679". *Id*. Graco maintains that

PMC "can derive information regarding Graco's sales for any product simply by using the data in the document...identified" and contends that it "produced that data natively for the precise purpose of allowing PMC to manipulate it as...deemed necessary". *Id*.

Separately, Graco notes that interrogatory no. 33 "asks Graco to identify with specificity (and with reference to bates number) each of Graco's monthly and annual sales reports for each spray foam equipment or product, including, but not limited to, all Fast Set products sold for the years 2002 through 2010". *Id*. Graco responded "that no such documents exist". *Id*. Although PMC claims that "Graco's response wholly ignores the fact that its obligations extend beyond what it can reference by way of document", Graco maintains that such "ignores the fact that the only information this interrogatory seeks is an identification of documents" and that it "cannot identify what does not exist". *Id*. at 36-37. Graco contends that "in an effort to point PMC to documents that do exist and that may provide PMC with the information...[sought], [it] directed PMC to sales data in [its] production for spray foam equipment and products". *Id*. at 37.

### (i)    Def.'s 3rd Interrogatories no. 29.

Graco notes that interrogatory no. 29 asks whether Graco has or ever had "a marketing and/or sales strategy or strategies for competing with Gama and/or Garraf" and, if so, requesting an identification and description of Graco's "marketing and/or sales strategy", "persons with knowledge or information concerning such strategy", and "documents which reflect, show, support, demonstrate, or explain such strategy". *Id*. Although PMC claims that "Graco's response to this interrogatory is improper because it assumes that only programs expressly directed at Gama and Garraf are called for", Graco argues that this "is precisely what this interrogatory requests". *Id*. Specifically, Graco responded by "confirming that [it] has never had a marketing and/or sales strategy or strategies...that was directed exclusively at competition from

48

Gama and/or Garraf", went on to describe "its sales programs directed at competition generally", and "identified those with knowledge of these programs and the titles of documents related to these programs". *Id*. at 37-38. Graco maintains that it "has already provided more information than this interrogatory required" and that PMC's "complaints should be rejected". *Id*. at 38.

### (j) Def's 3rd Interrogatories no. 32.

Graco notes that this interrogatory asks Graco "to identify each document which shows, explains, or sets forth Graco's Quarterly and Annual Income Statements and Annual Consolidated Financial Statements for the years 2002 through 2010". *Id*. In response, Graco states that it "identified its Forms 10-K and 10-Q", that such documents "are the Quarterly and Annual Income Statements and Annual Consolidated Financial Statements", and that its "response is complete". *Id*.

### 3. Graco properly objected to and denied the requests for admissions at issue.

### (a) Def.'s 2nd RFA nos. 65-70 are not proper under Rule 36.

Graco maintains that these requests "ask Graco to admit that the affidavits it filed in support of its preliminary-injunction motion constitute expert testimony" and that Graco "appropriately objected that these are not proper requests for admissions under Rule 36". *Id*. at 38. Specifically, Graco argues that requests nos. 65-70 do not seek admissions regarding "(1) facts, the application of law to fact, or opinions about either, or (2) the genuineness of a document" but, instead, "seek to discover Graco's legal strategy with respect to experts before the November 1 expert-disclosure deadline". *Id*. at 38-39.

### (b) Graco has fully responded to Def.'s 3rd RFA nos. 157-158.

Graco maintains that these requests "ask Graco to admit that Gusmer Europe employees did not (1) attend COB training, or (2) sign the COB acknowledgment" and that Graco "denied

these requests...[because] Gusmer employees did attend the training and did sign the acknowledgment". *Id*. at 39.   Specifically, Graco argues that PMC has "misread [its] own requests" and that PMC's claim that "if the entire group of former Gusmer Europe employees did not attend the training and did not sign the acknowledgment, then Graco must admit" is improper. *Id*.

## III.   DISCUSSION

### A.   Legal Standards

#### 1.   Discovery

Pursuant to FED. R. CIV. P. 26(b)(1), "parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense" and "the court may order discovery of any matter relevant to the subject matter involved in the action", although "relevant information need not be admissible at trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence".   Courts refuse to order discovery if the information being sought is (1) irrelevant to the claim or (2) protected by a recognized privilege. *See Pearson v. Miller*, 211 F.3d 57, 65 (3d Cir. 2000).   The precise boundaries of the Rule 26 relevance standard depend upon the context of each particular action, and the determination of relevance is within the discretion of the District Court. *See Barnes Found. v. Twp. of Lower Merion*, 1996 WL 653114, at *1 (E.D. Pa. 1996).   However, "courts have construed [Rule 26] liberally, creating a broad range for discovery which would encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case". *Jones v. Derosa*, 238 F.R.D. 157, 163 (D.N.J. 2006); *see also Caver v. City of Trenton*, 192 F.R.D. 154, 159 (D.N.J. 2000); *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978); *Lesal Interiors, Inc. v. Resolution Trust Corp.*, 153 F.R.D. 552, 560 (D.N.J. 1994); *Tele-Radio*

50

*Systems, Ltd. v. De Forest Electronics, Inc.*, 92 F.R.D. 371, 375 (D.N.J. 1981).  "Review of all relevant evidence provides each party with a fair opportunity to present an effective case at trial".  *Id.*; *see also Caver*, 192 F.R.D. at 159.  "Mutual knowledge of all the relevant facts gathered by both parties is essential to proper litigation...[and] either party may compel the other to disgorge whatever facts he has in his possession".  *Hickman v. Taylor*, 329 U.S. 495, 507 (1947).  "Whether certain documents are relevant is viewed in light of the allegations of the complaint, not as to evidentiary admissibility".  *Id.*; *see also Scouler v. Craig*, 116 F.R.D. 494, 496 (D.N.J. 1987).  Importantly, "the party resisting discovery has the burden of clarifying and explaining its objections to provide support therefor".  *Tele-Radio*, 92 F.R.D. at 375; *see also Gulf Oil Corp. v. Schlesinger*, 465 F. Supp. 913, 916-17 (E.D. Pa. 1979); *Robinson v. Magovern*, 83 F.R.D. 79, 85 (E.D. Pa. 1979).

### 2.    Requests for Admissions

Pursuant to FED. R. CIV. P. 36,

> (1) Scope.  A party may serve on any other party a written request to admit, for purposes of the pending action only, the truth of any matters within the scope of Rule 26(b)(1) relating to:
>
>> (A) fact, the application of law to fact, or opinions about either; and
>>
>> (B) the genuineness of any described documents.
>
> ...(4) Answer.  If a matter is not admitted, the answer must specifically deny it or state in detail why the answering party cannot truthfully admit or deny it.  A denial must fairly respond to the substance of the matter; and when good faith requires that a party qualify an answer or deny only a part of a matter, the answer must specify the part admitted and qualify or deny the rest.  The answering party may assert lack of knowledge or information as a reason for failing to admit or deny only if the party states that it has made reasonable inquiry and that the information it knows or can readily obtain is insufficient to enable it to admit or deny.

(5) Objections.  The grounds for objecting to a request must be stated.  A party must not object solely on the ground that the request presents a genuine issue for trial.

(6) Motion Regarding the Sufficiency of an Answer or Objection. The requesting party may move to determine the sufficiency of an answer or objection.  Unless the court finds an objection justified, it must order that an answer be served.  On finding that an answer does not comply with this rule, the court may order either that the matter is admitted or that an amended answer be served.  The Court may defer its final decision until a pretrial conference or a specified time before trial.  Rule 37(a)(5) applies to an award of expenses.

### 3.    Interrogatories to Parties

Pursuant to FED. R. CIV. P. 33,

...(a)(2) Scope.  An interrogatory may relate to any matter that may be inquired into under Rule 26(b).   An interrogatory is not objectionable merely because it asks for an opinion or contention that relates to fact or the application of law to fact, but the court may order that the interrogatory need not be answered until designated discovery is complete, or until a pretrial conference or some other time.

...(b)(3) Answering Each Interrogatory.  Each interrogatory must, to the extent it is not objected to, be answered separately and fully in writing under oath.

(4) Objections.  The grounds for objecting to an interrogatory must be stated with specificity.   Any ground not stated in a timely objection is waived unless the court, for good cause, excuses the failure.

...(d) Option to Produce Business Records.  If the answer to an interrogatory may be determined by examining, auditing, compiling, abstracting, or summarizing a party's business records (including electronically stored information), and if the burden of deriving or ascertaining the answer will be substantially the same for either party, the responding party may answer by:

(1) specifying the records that must be reviewed, in sufficient detail to enable the interrogating party to locate and identify them as readily as the responding party could; and

> (2) giving the interrogating party a reasonable opportunity to examine and audit the records and to make copies, compilations, abstracts, or summaries.

"The more progressive approach to interrogatories dealing with legal matters is to view them in the factual context within which they arise". *Microtron Corp. v. Minnesota Mining & Mfg. Co.*, 269 F. Supp. 22, 25 (D.N.J. 1967); *see also Singer Manufacturing Co. v. Brother International Co.*, 191 F. Supp. 322 (S.D.N.Y. 1960). "If the answer might serve some legitimate purpose, either in leading to evidence or in narrowing the issues, and to require it would not unduly burden or prejudice the interrogated party, the court should require answer". *Id.*; *see also* 4 Moore's Federal Practice, 2d Ed. 2534; *Gagen v. Northam Warren Corp.*, 15 F.R.D. 44 (S.D.N.Y. 1953).

### 4. Requests for Production of Documents

Pursuant to Fed. R. Civ. P. 34,

> (a) In General.  A party may serve on any other party a request within the scope of Rule 26(b):

>> (1) to produce and permit the requesting party or its representative to inspect, copy, test, or sample the following items in the responding party's possession, custody, or control:

>>> (A) any designated documents or electronically stored information – including writings, drawings, graphs, charts, photographs, sound recordings, images, and other data or data compilations – stored in any medium from which information can be obtained either directly or, if necessary, after translation by the responding party into a reasonably usable form; or

>>> (B) any designated tangible things; ...

> ...(b)(2)      ...(B) Responding to Each Item.  For each item or category, the response must either state that inspection and related activities will be permitted as

requested or state an objection to the request, including the reasons.

(C) Objections.  An objection to part of a request must specify the part and permit inspection of the rest.

(D) Responding to a Request for Production of Electronically Stored Information.  The response may state an objection to a requested form for producing electronically stored information.  If the responding party objects to a requested form – or if no form was specified in the request – the party must state the form or forms it intends to use.

(E) Producing the Documents or Electronically Stored Information.  Unless otherwise stipulated or ordered by the court, these procedures apply to producing documents or electronically stored information:

> (i) A party must produce documents as they are kept in the usual course of business or must organize and label them to correspond to the categories in the request;

> (ii) If a request does not specify a form for producing electronically stored information, a party must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms; and

> (iii) A party need not produce the same electronically stored information in more than one form.

Pursuant to *Armor Screen Corp. v. Storm Catcher, Inc*., 2009 WL 291160, at *5, 2009 U.S. Dist.

LEXIS 63538, *7-9 (S.D. Fla. 2009), a case cited by both parties, the Court notes

> the need to balance Rule 34(b)(2)(E)(i)'s legitimate purpose of alleviating a responding party's burden of production while reasonably assuring a requesting party's ability to obtain discoverable documents under Rule 26(b)(1).  Rule 34 is generally designed to facilitate discovery of relevant information by preventing attempts to hide a needle in a haystack by mingling

54

responsive documents with large numbers of nonresponsive documents. A producing party fails to meet its Rule 34 obligations by producing a mass of undifferentiated documents for the responding party to inspect. While Rule 34 does not obligate a producing party to *per se* organize and label usable documents for the requesting party's convenience, a party exercising Rule 34's option to produce records as they are kept in the usual course of business should organize the documents in such a manner that the requesting party may obtain, with reasonable effort, the documents responsive to their requests. ...The standard this Court will use in determining what is required will be whether the production allows the requesting party to reasonably determine what documents are responsive to its requests. If it does, the production complies with Rule 34(b)(2)(E)(I). If it does not, then the production does not comply.

*See also Williams v. Taser Int'l, Inc.*, 2006 WL 1835437, at *7 (N.D. Ga. 2006).

**B.     PMC's Motion to Compel**

Preliminarily, with respect to the discovery disputes identified in PMC's Motion, the Court notes that in "trade secret cases[,] misappropriation and misuse can rarely be proved by convincing direct evidence. In most cases plaintiffs must construct a web of perhaps ambiguous circumstantial evidence from which the trier of fact may draw inferences which convince him that it is more probable than not that what plaintiffs allege happened did in fact take place. Against this often delicate construct of circumstantial evidence there frequently must be balanced defendants and defendants' witnesses who directly deny everything". *SI Handling Systems, Inc. v. Heisley*, 753 F.2d 1244, 1261 (3d Cir. 1985); *see also Greenberg v. Croydon Plastics Co.*, 378 F. Supp. 806, 814 (E.D. Pa. 1974); *Atochem North America, Inc. v. Gibbon*, 1991 U.S. Dist. LEXIS 11670, at *20 (D.N.J. 1991).

**1.     Requests for Admissions**

**(a)     Def.'s 2nd RFA no. 65-70**

With respect to Def.'s 2nd RFA nos. 65-70, PMC requests that Graco admit that the

testimony of Doug Farrow, Josh Mulder, Eric Rennerfeldt, Mark Weinberger, Brian Zumbolo, and Max Baumgartner – each, respectively, submitted in support of Graco's opposition to PMC's renewed motion for preliminary injunction on January 20, 2010 – is being offered as expert testimony.  *See* Def.'s Decl. of Robyn Callahan ("Callahan"), Ex. D at 7-8.  In response to each request, Graco has stated that such requests are "premature in that [they] seek what amounts to an identification of expert witnesses when the Court has established a separate deadline for such identifications".  *Id*.  Even if PMC's requests are proper pursuant to FED. R. CIV. P. 36 – a point which the Court does not concede – based upon the fact that PMC's motion for preliminary injunction was withdrawn (*see* dkt.entry nos. 565 & 566) and the fact that initial expert reports were due no later than December 15, 2010 (*see* dkt. entry no. 532), the Court finds that PMC's Motion with respect to Def.'s 2nd RFA nos. 65-70 is moot given that the parties have now identified their expert witnesses.

### (b)      Def.'s 3rd RFA no. 157-158

With respect to Def.'s 3rd RFA nos. 157-158, PMC requests that Graco admit that "the former Gusmer Europe employees did not attend the conduct-of-business training" and "did not sign the Conduct of Business Guidelines".  *See* Def.'s Decl. of Callahan, Ex. I at 35.  In response, Graco objected to no. 157 based upon the phrase "former Gusmer Europe employees" being vague and undefined but thereafter denied that "no former Gusmer Europe employees attended the conduct-of-business training held post-acquisition".  *Id*.  Separately, Graco objected to no. 158 for the same reason stated above and "to the extent that it attempts to create an inference that Graco required or requires employees to sign the Conduct of Business Guidelines", but thereafter denied that "no former Gusmer Europe employees signed the acknowledgment form regarding the Conduct of Business Guidelines".  *Id*.  By denying that no former Gusmer Europe employee

attended conduct-of-business training and by denying that no former Gusmer Europe employee signed the acknowledgment form regarding the Conduct of Business Guidelines, Graco has conversely admitted that one (1) or more former Gusmer Europe employee(s) engaged in same. The Court finds that Graco's responses to Def.'s 3rd RFA nos. 157-158 are sufficient based, in part, upon PMC's ambiguous reference to "the former Gusmer Europe employees" and overall phrasing of the requests.

### 2.   Answers to Interrogatories

### (a)   Commette 1st Interrogatories nos. 1-4

With respect to Commette 1st Interrogatories nos. 1-4: no. 1 asks Graco to "describe in detail all instances where Commette and/or Royo misappropriated or improperly disclosed...alleged trade secrets...including...all individuals who have knowledge of the facts pertaining to each instance...[and] individuals to whom Commette and/or Royo disclosed alleged trade secrets..."; no. 2 asks Graco to "describe in detail each...alleged trade secret to which Commette and/or Royo had access or came to possess...[and] how Commette and/or Royo accessed or came to possess each trade secret..."; no. 3 asks Graco to "identify every individual or entity...who had access to or came to possess...alleged trade secrets, describing in detail...each trade secret to which the individual or entity had access or came to possess [and] how each individual or entity accessed or came to possess each trade secret..."; and no. 4 asks Graco to "describe in detail...practices, procedures, and policies...use[d] to protect and maintain the secrecy and confidentiality of...alleged trade secrets...and the success or failure of...[these] practices, procedures, and policies...". *See* Def.'s Decl. of Callahan, Ex. A at 5-84. The Court notes that Graco objected to each interrogatory as overly broad and unduly burdensome, objected to nos. 1-3 as premature insofar as discovery was continuing, objected to no. 1 as irrelevant, and

objected to no. 4 as vague and ambiguous.  *Id*.  Further, the Court notes that Graco responded to all four (4) interrogatories in one (1) comprehensive answer, approximately seventy-eight (78) pages in length (*Id*.), that "includes all responsive information known to Graco" (Pl.'s Opp'n Br. at 26).  Having reviewed Commette 1st Interrogatories nos. 1-4, and Graco's responses thereto coupled with its representation that same includes all responsive information known to Graco, the Court finds Graco's answer to be sufficient.

### (b)    PMC 1st Interrogatories nos. 1, 5, 6, and 8

With respect to PMC 1st Interrogatories nos. 1, 5, 6, and 8: no. 1 asks Graco to "describe in detail all instances where [it] negotiated for, paid consideration for, and entered into a non-compete contract or agreement with PMC, Commette, and Royo..."; no. 5 asks Graco to "describe in detail all instances where defendants or Royo solicited...current or former customers or distributors, and identify all individuals who have knowledge of the facts pertaining to each instance..."; no. 6 asks Graco to "describe in detail all instances where [it] lost sales, orders, customers, distributors, or business arising out of any misconduct by any defendant or Royo, and for each instance identify the customer or distributor involved, the product involved, [Graco's] loss in dollars, ...the defendants involved, [and] the defendants' misconduct..."; and no. 8 asks Graco to "describe in detail all instances where the defendants or Royo acted in concert with others and agreed to inflict a wrong against or injury upon [Graco] and identify all individuals who have knowledge of the facts pertaining to each instance".  *See* Def.'s Decl. of Callahan, Ex. B at 5-35.

Graco answered no. 1 by referencing two (2) documents by Bates number (*Id*. at 5), including a "Confidentiality Agreement" between Commette and Gusmer that includes a non-compete clause (*see* Pl.'s Opp'n Decl. of Debra A. Jones ("Jones"), Ex. E at GRAC0022217),

58

and has subsequently supplemented its response by referencing additional documents by Bates number (*Id.*, Ex. A at 5).  Having reviewed PMC 1st Interrogatories no.1 and Graco's response, the Court finds Graco's answer to be sufficient – PMC's interrogatory does not ask about common law duties, and Graco's allusion to same does not mean that additional information is required.

Graco answered no. 5 by providing specific instances of solicitation (Def.'s Decl. of Callahan, Ex. B at 19-24), referencing its answers to PMC 1st Interrogatories no. 6 (*Id.* at 24-30) and Commette 1st Interrogatories no. 9 (*Id.*, Ex. A at 87-94), and stating that it "has disclosed the information known to...[although it] has not been able to discover which of Defendants' agents were specifically involved..." (Pl.'s Opp'n Br. at 29).  Having reviewed PMC 1st Interrogatories no. 5 and Graco's response, the Court finds Graco's answer to be sufficient.

Graco answered no. 6 by providing a list of Gusmer customers who ceased doing some or all business with Graco, a list of the difference in sales "between 2006 (before Gama began doing business) and 2008 (after the customers ceased doing business with Graco in favor of Gama)" or "the difference in Graco's total sales pre- and post-Gama" (Pl.'s Opp'n Br. at 30-31), the bases for Graco's knowledge, reference to relevant documents by Bates number, relevant documents pertaining to testimony provided by Graco representatives, and stating that it "has produced the lost sales information that it has in its possession" (*Id.* at 32).  *See also* Def.'s Decl. of Callahan, Ex. B at 24-30; Pl.'s Opp'n Decl of Jones at ¶¶ 31, 35, 54; Pl.'s Opp'n Br. at 30-32.  Having reviewed PMC 1st Interrogatories no. 6 and Graco's response, the Court finds Graco's answer to be sufficient.

Graco answered no. 8 by referencing answers provided in response to Commette 1st Interrogatories nos. 1-9 (Def.'s Decl. of Callahan, Ex. A at 5-94), PMC 1st Interrogatories nos. 2,

5, 6, and 7 (*Id.*, Ex. B at 2-18, 19-34), and Def.'s 2nd Interrogatories no. 20 (*Id.*, Ex. C at 3-15).

Although Rule 33 typically requires a separate answer for each interrogatory, the Court agrees with Graco's contention that this interrogatory seeks information that, in all material respects, is called for by other interrogatories – in fact, the other interrogatories referenced by Graco request specific information that falls within the broad brush of PMC 1st Interrogatories no. 8. *See* Pl.'s Opp'n Br. at 32-33; *see also In re Savitt/Adler Litig.*, 176 F.R.D. 44, 52 n.10 (N.D.N.Y. 1997). Having reviewed PMC 1st Interrogatories no. 8 and Graco's response, including those answers referenced, and given the substantial number of interrogatories posed by both parties, the Court will allow Graco's answer by way of incorporation and finds such response to be sufficient. *See In re Savitt/Adler Litig.*, 176 F.R.D. at 52 n.10.

### (c)   Def.'s 2nd Interrogatories nos. 19-21

With respect to Def.'s 2nd Interrogatories nos. 19-21: no. 19 asks Graco to "identify all documents which [it] intend[s] to rely upon to support [its] allegations that Defendants misappropriated [Graco's] alleged trade secrets"; no. 20 asks Graco to "identify with specificity, by stating all facts, documents and witnesses whom may have information as to each instance in which Defendants acted with ill-purpose, bad motive, or with malicious intent towards [Graco] or in their dealings with [Graco]"; no. 21 asks Graco to "identify with specificity all evidence, including all facts, documents and witnesses whom may have information supporting [Graco's] allegation that Defendants or their employees actually used Graco's alleged trade secrets". *See* Def.'s Decl. of Callahan, Ex. C at 3-16.

Graco answered no. 19 and no. 21 by stating that it will provide a final list of trial exhibits and witnesses in accordance with any Court Order and as required by Rule 26(a)(3) and by referencing documents identified in response to Commette 1st Interrogatories no. 1 (*Id.*, Ex. A

at 5-82) and Graco's Responses and Supplemented Responses to Garraf's First Set of Interrogatories nos. 1, 2, 3, 4, and 11.  Although Rule 33 typically requires a separate answer for each interrogatory, the Court agrees with Graco's contention that these interrogatories seek information that, in all material respects, is called for by other interrogatories – in fact, Commette 1st Interrogatories no. 1 requests specific information that falls within the broad brush of no. 19 and no. 21.  *See* Pl.'s Opp'n Br. at 33-34; *see also In re Savitt/Adler Litig.*, 176 F.R.D. 44, 52 n.10 (N.D.N.Y. 1997).  Further, Graco will be required to proffer a list of parties, witnesses, and documents or exhibits that it expects to use and rely upon at trial at such time as specified by the Court pursuant to FED. R. CIV. P. 26(a)(3).  Having reviewed Def.'s 2nd Interrogatories nos. 19 and 21 and Graco's responses, including Graco's answer to Commette 1st Interrogatories no. 1, and given the substantial number of interrogatories posed by both parties coupled with the impending requirements of Rule 26(a)(3), the Court will allow Graco's answer by way of incorporation and find such response to be sufficient.  *See In re Savitt/Adler Litig.*, 176 F.R.D. at 52 n.10.

Graco answered no. 20 by stating that it will provide a final list of trial exhibits and witnesses in accordance with any Court Order and as required by Rule 26(a)(3) and by referencing information provided in its responses and supplemented responses to PMC 1st Interrogatories no. 2 (Def.'s Decl. of Callahan, Ex. A at 5-82), Graco's Response and Supplemented Response to Garraf's First Set of Interrogatories no. 21, and approximately thirteen (13) pages of additional information (*Id.*, Ex. C at 3-15).  The Court can find no specific argument with respect to any deficiency in Graco's response to no. 20, although PMC included Def.'s 2nd Interrogatories no. 20 within its Table of Contents (Def.'s Br. at ii) and within an argument heading (*Id.* at 12).  Having reviewed Def.'s 2nd Interrogatories no. 20 and Graco's

response, the Court finds Graco's answer to be sufficient.

(d)     **Def.'s 3rd Interrogatories nos. 24-27, 29, 32-33**

With respect to Def.'s 3rd Interrogatories nos. 24-27, 29, 32-33: no. 24 asks Graco to "identify with specificity all of [its] distributors or customers who complained about or questioned the quality, prices, or availability of [Graco's] Spray Foam equipment and products or [Graco's] discontinuation of Spray Foam equipment and products after [Graco's] acquisition of Gusmer..."; no. 25 asks Graco to "identify with specificity which Spray Foam equipment and products (including parts) were discontinued by [Graco] after [its] acquisition of Gusmer..."; no. 26 asks Graco to "identify with specificity [its] total sales (calculated by month and year) from 2001 through 2007" for "each discontinued Spray Foam equipment or product identified in...no. 25..."; no. 27 asks Graco to "identify with specificity each instance in which [it] increased prices on Spray Foam equipment or products after [its] acquisition of Gusmer..."; no. 29 asks Graco whether it has or ever "had a marketing and/or sales strategy or strategies for competing with Gama and/or Garraf...[and,] if so, [to] identify and describe with specificity [Graco's] marketing and/or sales strategy..."; no. 32 asks Graco to "identify with specificity (and with reference to bates number) each document which shows, explains, or sets forth Graco's Quarterly and Annual Income Statements and Annual Consolidated Financial Statements for the years 2002 through 2010..."; and no. 33 asks Graco to "identify with specificity (and with reference to bates number) each of Graco's monthly and annual sales reports for each spray foam equipment or product including...all Fast Set products sold for the years 2002 through 2010...".  *See* Def.'s Decl. of Callahan, Ex. H at 5-9, 11-12, 13-14.

Graco answered no. 24 by stating that it "does not track or record every question or complaint it receives regarding the quality, prices, availability, or discontinuation of equipment

or products", identifying representative categories of documents that reference such questions or complaints, and identifying individuals and/or departments who have knowledge regarding same. *Id*., Ex. H at 5-6. The Court agrees with PMC's contention that Graco's "identification of representative categories" and "its customer service department" are insufficient under Fed. R. Civ. P. 33(d). *See* Def.'s Br. at 31-33. Having reviewed Def.'s 3rd Interrogatories no. 24 and Graco's response, the Court finds Graco's response to be insufficient and directs Graco to "specify the records that must be reviewed in sufficient detail to enable the interrogating party to locate and identify them" by referencing specific responsive documents by Bates number rather than categories of documents and by referencing specific individuals rather than department(s). Fed. R. Civ. P. 33(d)(1).

Graco answered no. 25 by identifying particular pieces of Gusmer Spray Foam Equipment that it has discontinued since the acquisition of Gusmer, identifying specific responsive documents by Bates number, and by identifying individuals with information. *See* Def.'s Decl. of Callahan, Ex. H at 6-7. The Court can find no specific argument with respect to any deficiency in Graco's response to no. 25, although PMC included Def.'s 3rd Interrogatories no. 25 within its Table of Contents (Def.'s Br. at iii) and within an argument heading (*Id*. at 24). Having reviewed Def.'s 3rd Interrogatories no. 25 and Graco's response, the Court finds Graco's answer to be sufficient.

Graco answered no. 26 by voicing objections (Def.'s Decl. of Callahan, Ex. H at 8), stating that "it does not maintain the information sought...in the ordinary course of business" (*Id*.), referencing specific responsive documents by Bates number (*Id*.), and noting that "Defendants can derive information regarding Graco's sales for any product simply by using the data in the document Graco identified" (Def.'s Br. at 36). The Court notes that pursuant to Fed.

R. C\ıv. P. 33(d), "if the answer to an interrogatory may be determined by examining...a party's business records...and if the burden of deriving or ascertaining the answer will be substantially the same for either party, the responding party may answer by (1) specifying the records that must be reviewed". Importantly, the Court notes that neither Graco nor PMC cite any case law in support of their respective positions. Having reviewed Def.'s 3rd Interrogatories no. 26 and Graco's response, the Court finds Graco's response to be insufficient as the burden placed upon PMC to derive the information requested would be substantially greater than that placed upon Graco given Graco's superior knowledge of and facility with the business records referenced. The Court directs Graco to provide PMC with a substantive, fully responsive answer.

Graco answered no. 27 by voicing objections, referencing specific responsive documents by Bates number, and identifying individuals with knowledge or information together with information provided via depositions. *See* Def.'s Decl. of Callahan, Ex. H at 8-9. Further, Graco states that it "identified the reasons for [price] increases...and produced 2006 price lists". *See* Pl.'s Opp'n Br. at 15. Having reviewed Def.'s 3rd Interrogatories no. 27 and Graco's response, the Court finds Graco's answer to be insufficient to the extent its responses to no. 27 are not clearly set forth in the referenced documents/price lists, the burden placed upon PMC to derive the information requested would be substantially greater than that placed upon Graco given Graco's superior knowledge of and facility with the business records referenced. F\ed. R. C\ıv. P. 33(d)(1). The Court directs Graco to provide PMC with a substantive, fully responsive answer.

Graco answered no. 29 by stating that it "never had a marketing and/or sales strategy or strategies...that was directed exclusively at competition from Gama and/or Garraf" though it did have "sales programs that were directed at competition generally", referencing those sales programs it has employed, identifying individuals with knowledge or information, and

referencing specific responsive documents by Bates number.  *See* Def.'s Decl. of Callahan, Ex. H at 11-12.  Having reviewed Def.'s 3rd Interrogatories no. 29 and Graco's response, the Court finds Graco's answer to be sufficient based, in part, upon PMC's specific reference to "marketing and/or sales strategy...for competing with Gama and/or Garraf" and Graco's direct response thereto.  *Id*.

Graco answered no. 32 by voicing objections, referencing specific responsive documents by Bates number, and referencing other documents that are publicly available.  *See* Def.'s Decl. of Callahan, Ex. H at 13-14.  Although Graco maintains that it has "...produced all of its Forms 10-K and 10-Q for the time period from 2002 to the present..." together with accompanying notes (Pl.'s Opp'n Decl. of Jones, ¶ 27), further maintains that its "...consolidated financial statements with accompanying footnotes are included in Forms 10-K and 10-Q..." (Pl.'s Opp'n Decl. of Caroline M. Chambers ("Chambers"), ¶ 3), and states that "there are no other responsive documents" (Pl.'s Opp'n Br. at 8), there is no specific indication that Graco has produced all documents in its possession that explain the information set forth in its Quarterly and Annual Income Statements and Annual Consolidated Financial Statements and/or whether such documents exist.  Importantly, the Court notes that a party "cannot be compelled to create...documentary evidence which is not already in existence in some form".  *Rockwell International Corp. v. H. Wolfe Iron & Metal Co.*, 576 F. Supp. 511, 513 (E.D. Pa. 1983); *see also Soetaert v. Kansas City Coca Cola Bottling Co.*, 16 F.R.D. 1, 2 (W.D. Mo. 1954).  Having reviewed Def.'s 3rd Interrogatories no. 32 and Graco's response, the Court finds Graco's response to be insufficient to the extent Graco is in possession of any document that explains the information set forth in its Quarterly and Annual Income Statements and Annual Consolidated Financial Statements and directs Graco to provide PMC with a substantive, fully responsive

answer regarding same.

Graco answered no. 33 by voicing objections, stating that "no such documents exist", and referencing other responsive documents by Bates number that included "sales data". *See* Def.'s Decl. of Callahan, Ex. H at 14. Further, Graco states that while it "does not maintain sales reports containing the information [sought]" (Pl.'s Opp'n Br. at 10), it "produced...all transactional sales data that it maintains in its databases for all HPCF products" and "compilation charts...which detail total annual sales and margins" (*Id.* at 11; *see also* Pl.'s Opp'n Decl. of Jones, ¶¶ 29-30; Pl.'s Opp'n Decl. of Coleman, ¶ 9). Graco maintains that PMC has "all of the sales information for HPCF and Fast Set products contained in Graco's databases that PMC requested" (Pl.'s Opp'n Decl. of Coleman, ¶ 10) and that PMC has refused to "discuss" or inform Graco or the Court of "precisely what information...is missing" (Pl.'s Opp'n Br. at 11). Having reviewed Def.'s 3rd Interrogatories no. 33 and Graco's response, the Court finds Graco's answer and representations about information produced to be sufficient based, in part, upon PMC's failure to specifically identify the alleged deficiency. *See* Def.'s Br. at 30-31.

### 3.    Responses to Requests for Production

### (a)    Commette 1st RFP, generally, and PMC 1st RFP, generally

With respect to Commette 1st RFP, generally, and PMC 1st RFP, generally, as set forth above, PMC contends that "Graco has yet to serve a supplemental response to either" and, despite PMC's explanations that "Graco's written responses...are indecipherable and create impermissible ambiguities as to whether responsive documents actually exist", Graco has "taken the position that it is not obligated to provide any written supplementation". *See* Def.'s Br. at 23-24. The Court notes that in nearly every response to Commette 1st RFP nos. 1-100 (Def.'s Decl. of Callahan, Ex. F at 1-47) and in nearly every response to PMC 1st RFP nos. 1-27 (*Id.*, Ex. G at

1-16), Graco has set forth objections and then stated that it "will produce all responsive, non-privileged documents, to the extent they exist, in Graco's possession or custody" (*Id.*, Ex. F at 1-47; *see also id.*, Ex. G at 1-16). Importantly, the Court notes that "Rule 34(b)(2)(B) requires...the responding party to either state that inspection will be permitted or object...with specificity or more precisely inform...[the requesting party] of the existence of documents responsive to [the] requests, but not both". *Armor Screen Corp. v. Storm Catcher, Inc.*, 2009 WL 291160, at *3 (S.D. Fla. 2009); *see also* FED. R. CIV. P. 34(b)(2). Having reviewed Commette 1st RFP, generally, and PMC 1st RFP, generally, and Graco's responses thereto, the Court finds Graco's answers and representations about information produced to be sufficient based, in part, upon PMC's failure to specifically identify any particular deficiency (*see* Def.'s Br. at 30-31) and, in part, upon Graco's representation that it "has answered all of Defendants' inquiries regarding the existence of responsive documents...during numerous meet and confers and in correspondence" (*see* Pl.'s Opp'n Br. at 5-6). The Court notes that PMC provided similar responses to Graco's requests for production (*see, e.g.*, dkt. entry no. 264) and has failed to explain why its responses are sufficient while Graco's are not.

      **(b)    Def.'s 2nd RFP nos. 146, 148-176, 180, 195-197, 207, and 211**

With respect to Def.'s 2nd RFP nos. 146, 148-176, 180, 195-197, 207, and 211: no. 146 asks Graco to produce "all documents concerning any valuation [Graco] did post-acquisition of the goodwill, trade secrets, technology and customer relationships [Graco] acquired from PMC under the SPA, from February 2005 through the present" (Def.'s Decl. of Callahan, Ex. E at 10); nos. 148-176 ask Graco to produce "all documents...which support [its] contention that Defendants' alleged solicitation of Graco customers caused" certain specific entities "to cease doing some or all business with Graco" (*Id.* at 10-21); no. 180 asks Graco to produce its

"Confidential Distribution Agreement, including copies of the executed copies...signed by Graco's employees between January 2005 and the present" (*Id*. at 22); nos. 195-197 ask Graco to produce "all documents sufficient to show...which former Gusmer employees attended the conduct-of-business training...[and] the topics discussed at and specific materials covered at the conduct-of-business training for former Gusmer employees post-acquisition..." in addition to "all documents provided to the attendees of the conduct-of-business training which was held post-acquisition for the former Gusmer employees..." (*Id*. at 25-26); no. 207 asks Graco to produce "all documents listing, reflecting, discussing, analyzing, or regarding [its] market share for any and all Spray foam equipment and products" (*Id*. at 29-30); and no. 211 asks Graco to produce "all documents discussing, analyzing, or regarding [its] actual or contemplated price increases for [Graco] Spray Foam equipment" (*Id*. at 31-32).

Graco answered no. 146 by objecting to the production of any documents "subject to the attorney-client privilege or work-product privilege" and then stating that it "has produced or will produce responsive documents that relate to any valuation conducted pursuant to the SPA". *Id*. at 10. Graco states that it has "produced correspondence with PMC regarding the post-closing valuation", "correspondence with American Appraisal...[which was the company that] completed the post-closing valuation", "American Appraisal's final report" and "drafts" of "Fair Value of Tangible & Identifiable Intangible Assets", "tax filings exchanged between Graco and PMC", "a document regarding the valuation of the Gusmer Europe name", "documents that constitute impairment reviews and corresponding charts for years 2005-2009", and "responsive documents from [American Appraisal's entire file]". *See* Pl.'s Opp'n Decl. of Jones, ¶¶ 37-38. Further, Graco states that it "has searched for and produced documents responsive to this request" for the "2006 to 2010 timeframe". *See* Pl.'s Opp'n Br. at 16. Having reviewed Def.'s 2nd RFP no. 146

68

and Graco's response, the Court finds Graco's production and representations about information produced to be sufficient.  However, due to PMC's representation that its "searches of Graco's production" indicate that "Graco has omitted all valuation documents for the years 2007-2010...[and] for most of 2006", the Court directs Graco to supplement its written answer by providing PMC with direction as to where the information produced as listed above may be found by way of Bates stamp reference(s).  *See* Def.'s Br. at 21.

Graco answered nos. 148-176 by objecting to the production of any documents "subject to the attorney-client privilege or work-product privilege" and then stating that it "has produced or will produce responsive documents on which it relied in making [these] assertions".  *See* Def.'s Decl. of Callahan, Ex. E at 10-21.  Graco states that it "has produced responsive documents" including "spreadsheets detailing sales to these customers, emails and letters to customers, and transactional sales data".  *See* Pl.'s Opp'n Br. at 16-17; *see also* Pl.'s Opp'n Decl. of Jones, ¶¶ 29, 35. Having reviewed Def.'s 2nd RFP nos. 148-176 and Graco's response, the Court finds Graco's production and representations about information produced to be sufficient. However, due to PMC's representation that "a search of Graco's production reveals very few hits which are...responsive to [each] entity's name...[or] support [Graco's] contention", the Court directs Graco to supplement its written answers by providing PMC with direction as to where the information produced for each entity as listed above may be found by way of Bates stamp reference(s).  *See* Def.'s Br. at 16.

Graco answered no. 180 by objecting to the production of any documents "subject to the attorney-client privilege or work-product privilege" and burdensome nature of production of "copies of executed copies of all of its Confidential Distribution Agreements over a five year period" and, thereafter, stated that it would "produce templates for its Confidential Disclosure

Agreements ("CDA") for suppliers (inadvertently referred to incorrectly in Graco's Third Supplemented Responses to Defendant Commette's First Set of Interrogatories as 'Confidential Distribution Agreement')".   *See* Def.'s Decl. of Callahan, Ex. E at 22.   The Court notes that Graco represented that it "has taken steps to guard the secrecy" of trade secret and confidential business information by "requiring employees to sign non-disclosure" and "confidentiality agreements" and by requiring outside vendors "to sign nondisclosure agreements" (*Id*., Ex. A at 19, 23-24), while also stating that "Graco employees do not execute CDAs" (Pl.'s Opp'n Br. at 17).   Graco states that it produced "template CDAs that include information regarding revision dates and a description of when the agreement is to be used", "several signed CDAs", "the new hire form related to non-disclosure", "Conduct of Business ("COB") Guidelines and employee handbooks", "every Gusmer employee's COB acknowledgment in its possession", "its Standard Operating Procedure related to CDAs", and "over 50 confidentiality agreements with Gusmer suppliers" but "has declined to produce every signed CDA with every supplier".   *Id*. at 17-18; *see also* Pl.'s Opp'n Decl. of Jones, ¶¶ 39, 40, 42.   Having reviewed Def.'s 2nd RFP no. 180 in tandem with Commette 1st Interrogatories nos. 3-4 and Graco's responses thereto together with other representations made by Graco, the Court finds Graco's production to be insufficient.   The Court directs Graco to supplement its production by producing any/all non-disclosure and confidentiality agreements executed by any Graco for former Gusmer employee between January 2005 and the present related to any trade secret that Graco alleges was protected or misappropriated and any/all non-disclosure and confidentiality agreements executed by suppliers or outside vendors between January 2005 and the present related to any trade secret disclosed to any supplier or outside vendor that Graco alleges was protected or misappropriated, respectively, to the extent same are in the possession, custody, or control of Graco.   The Court directs Graco to

70

supplement its written answers by providing PMC with direction as to where the information previously produced as listed above, in addition to information produced at the Court's direction herein, may be found by way of Bates stamp reference(s).

Graco answered nos. 195-197 by objecting to the production of any documents "subject to the attorney-client privilege or work-product privilege" and then stating that it "has produced or will produce email correspondence regarding...COB training", the "acknowledgment signed by Commette at or around this COB training", and "COB Guidelines (Code of Conduct)".  *See* Def.'s Decl. of Callahan, Ex. E at 25-26.  The Court notes that Graco represented that its "employees are required to review, understand, and follows its Code of Ethics and Business Conduct (formerly entitled 'Conduct of Business Guidelines')" and "all employees, including those Graco and Gusmer employees now employed by Defendants, also receive a copy of Graco's Conduct of Business Guidelines and sign acknowledgments confirming that they understand its provisions".  *Id.*, Ex. A at 20-21.  Graco states that it produced "various versions of the COB guidelines addressed at...training sessions", "COB acknowledgments for Gusmer employees", "Power Point presentations from COB training sessions", "email correspondence regarding COB training...[including] what occurred at the training and the distribution of Graco's COB handbook at and following the training", and "governmental filings confirming the training occurred".  *See* Pl.'s Opp'n Br. at 19-20; *see also* Pl.'s Opp'n Decl. of Jones, ¶ 42.  Further, Graco maintains that "even if other documetns regarding COB training may exist..., [it] has produced documents sufficient to show the matters set forth" in PMC's requests.  *Id.*  Having reviewed Def.'s 2nd RFP no. 195-197 and Graco's responses thereto together with other representations made by Graco including the testimony of Nick Pagano (Def.'s Decl. of Callahan, Ex. M at 181:17-184:2), Kevin Arseneault (*Id.*, Ex. N at 57:5-14), and Keith May (*Id.*,

Ex. O at 71:6-21), the Court finds Graco's production to be insufficient.  The Court directs Graco to supplement its production by producing any/all electronic training logs for "former Gusmer employees" and present/former Graco employees who have been deposed, provided expert testimony, will act as witnesses for Graco at trial, and/or are parties to this matter to the extent same are in the possession, custody, or control of Graco.  The Court directs Graco to supplement its written answers by providing PMC with specifications as to where the information produced at the Court's direction herein may be found by way of Bates stamp reference(s).  The Court declines PMC's request to adopt any negative inference.

Graco answered no. 207 by objecting to the production of any documents "subject to the attorney-client privilege or work-product privilege" and as to the "vague and undefined" nature of the request, and then stating that it "has produced or will produce documents reflecting analyses of its share of the market for the relevant products performed from 2004 to the present". *See* Def.'s Decl. of Callahan, Ex. E at 29-30.  Graco maintains that it "has produced documents responsive to Defendants' request as they are kept in the usual course of business" (Pl.'s Opp'n Br. at 2-3), including "Board of Directors' presentations discussing Graco's share of various markets" (Pl.'s Opp'n Decl. of Jones, ¶ 49).  Having reviewed Def.'s 2ⁿᵈ RFP no. 207 and Graco's response, the Court finds Graco's production and representations about information produced to be sufficient as Rule 34(b) "imposes no duty to organize and label...documents" if "the producing party produces documents in the order in which they were kept in the usual course of business".  *In re G-I Holdings, Inc.*, 218 F.R.D. 428, 439-40 (D.N.J. 2003); Fᴇᴅ. R. Cɪᴠ. P. 34(b)(2).

Graco answered no. 211 by objecting to the production of any documents "subject to the attorney-client privilege or work-product privilege", "vagueness", and as "overly broad and

unduly burdensome in that it seeks documents relating to alleged actual or contemplated price increases for products having no relevance to this case", and then stating that it "has produced or will produce price lists for products relevant to this case and documents dismissing, analyzing, or setting overall pricing and pricing strategy for Spray Foam equipment...from 2004 to the present".  *See* Def.'s Decl. of Callahan, Ex. E at 31-32.  Graco states that it identified "price books and lists", "the reasons for such increases", citations to "deposition testimony regarding the increases", and has produced "2006 price lists in response to Request No. 211".  *See* Pl.'s Opp'n Br. at 15; *see also* Pl.'s Opp'n Decl. of Jones, ¶ 34. Having reviewed Def.'s 2ⁿᵈ RFP no. 211 and Graco's response, the Court finds Graco's production and representations about information produced, including references to Bates stamp numbers (*see* Pl.'s Opp'n Decl. of Jones, ¶ 34), to be sufficient.

> **(c)      Def.'s 3ʳᵈ RFP nos. 213-214, 217, 225-227, 229, 237, 250-259, 261-262, 268, 271-273, 275-277, 289, 298-317**

With respect to Def.'s 3ʳᵈ RFP nos. 213-214, 217, 225-227, 229-237, 250-259, 261-262, 268, 271-273, 275-277, 289, 298-317: nos. 213, 214, 217, and 271 ask Graco to produce "all documents that refer or relate to [Graco's] plans, strategy, efforts, or intent" to "dominant, ...control", or "increase...market share", or "be the leading company" with respect to the "markets for the sale, manufacture, or distribution of Spray Foam equipment and products", and "products...other than Spray Foam equipment and products", in the United States or North America" (Def.'s Decl. of Callahan, Ex. J at 4-7, 30-31) and nos. 251-254 ask Graco to produce "all documents that refer or relate to discussions or analysis of how [Graco's] acquisition of other manufacturers of Spray Foam equipment and products have affected or may effect competition", "[Graco's] ability to raise prices", "[Graco's] ability to reduce output", and "[Graco's] ability to limit product offerings" in the "Spray Foam equipment market" (*Id*. at 21-23); nos. 225 and 226

ask Graco to produce "documents sufficient to show" Graco's "revenue and profits for all of [its] Spray Foam equipment and products for the past 5 years" and "documents sufficient to identify [Graco's] sales (including...total revenue and profits)" for the "Spray Foam equipment and products that were discontinued by [Graco] following [its] acquisition of Gusmer" for a "five year period immediately preceding the discontinuation" (*Id.* at 10-11); nos. 229-234 ask Graco to produce "all documents sufficient to identify what distributor agreements [Graco] had in effect" as of "January 1, 2007", "January 1, 2008", "January 1, 2009", "January 10, 2010", and at the time Graco "sent the Refusal to Deal Letter" in addition to "all documents sufficient to identify any distributor agreement [Graco had] in effect that does not require exclusivity" (*Id.* at 12-14); no. 268 asks Graco to produce "all documents that refer or relate to communications between [Graco] and any of [Graco's] distributors or suppliers of Spray Foam equipment and products concerning their use or intended use of [Graco's] trademark(s) or trade name(s)" (*Id.* at 29-30); nos. 272 and 273 ask Graco to produce "all documents that refer or relate to any exclusivity requirement [Graco has or has asserted] with respect to [Graco's] distributors, customers, or suppliers" of "Spray Foam equipment and products" and "of products other than Spray Foam equipment and products", no. 275 asks Graco to produce "all documents that refer or relate to any best efforts [Graco has] in [its] distributorship agreements with [its] distributors of products other than Spray Foam equipment and products", and no. 277 asks Graco to produce "all documents that refer or relate to any requirement [Graco] may have that [its] distributors of products other than Spray Foam equipment not sell, market, or distribute competing products manufactured by one or more of [Graco's] competitors" (*Id.* at 31-34); nos. 298 and 299 ask Graco to produce "Quarterly Income Statements (aka Statement of Operations)" and "Annual Income Statements (aka Statement of Operations" for "2002 through 2010", nos. 300 and 301

ask Graco to produce "Quarterly Income Statements (aka Statement of Operations)" and "Annual Income Statements (aka Statement of Operations" for "2002 through 2010" for Graco's "HPCF...showing the fixed costs for the HPCF Division", nos. 302 and 303 ask Graco to produce "Quarterly Income Statements (aka Statement of Operations)" and "Annual Income Statements (aka Statement of Operations)" for "2002 through 2010" for Graco's "Fast Set Subdivision...showing the fixed costs for the Fast Set Division" (*Id*. at 41-42), nos. 304, 305, and 306 ask Graco to produce "Annual Income Statements (aka Statement of Operations) for Glascraft", "Gusmer (including Gusmer Europe)", and "Decker for 2002 through the date of acquisition by Graco" (*Id*. at 43), nos. 307, 308, and 309 ask Graco to produce "Annual Consolidated Financial Statements for Glascraft", "Gusmer (including Gusmer Europe)", and "Decker for 2002 through the date of acquisition by Graco" (*Id*. at 43-44), and no. 310 asks Graco to produce "the Annual Consolidated Financial Satements for 2002 through 2010" (*Id*. at 44); nos. 312 and 313 ask Graco to produce "annual sales reports" and "monthly (or quarterly, depending upon how the date is kept) sales reports for each Fast Set product sold for 2002 through 2010 sorted by...product...and customer...including the date of sale, the number of units sold, the cost of producing the products, the revenue from the sale, and the customer" (*Id*. at 45), and nos. 314 and 315 ask Graco to produce "annual sales reports for each spray foam product sold" by "Gusmer" and "GlasCraft for 2002 until the acquisition by Graco sorted by...product...and customer...including the date of sale, the number of units sold, the cost of producing the products, the revenue from the sale, and the customer" (*Id*. at 45-46); nos. 316 and 317 ask Graco to produce "any documents which reference, discuss, or relate to any presentations made to potential investors in Graco between 2002 and 2010" or "any management presentations about potential investors in Graco between 2002 and 2010", including "Power Point

presentations, reports, email communications, letters, notes, agendas, invitations, and calendars" (*Id*. at 46); as to nos. 213-214, 227, 235-237, 250-259, 261-262, 276, 289, and 304-311, although Graco has produced "discovery responses...[for] the years 2004 through the present", PMC seeks "documents dating back a few years prior to the Gusmer acquisition in February of 2004" (Def.'s Br. at 31); as to "RFP nos. 128-129, 133, 131-144, and 258", PMC seeks a Court Order "requiring Graco to amend its written responses to reflect its representations that it has no further documents in its possession, custody or control" (*Id*. at 37-38).

Although Graco answered nos. 213, 214, 217, 251-254, and 271 by producing what it contends are responsive documents (*see* Def.'s Decl. of Callahan, Ex. J at 4-7, 21-23, 30-31), PMC claims same is deficient because it lacks "Graco's natural acquisition list or wish list for acquisitions" (Def.'s Br. at 35) as identified by Mark Sheahan ("Sheahan") (Pl.'s Opp'n Cert. of Jones, Ex. K at 41-42).  Having reviewed Def.'s 3rd Interrogatories nos. 213, 214, 217, 251-254, and 271 and Graco's responses thereto together with the testimony of Sheahan (*see* Pl.'s Opp'n Decl. of Jones, Ex. K at 41-42), the Court finds the information requested to be relevant given PMC's antitrust counterclaim, within the scope of PMC's requests given Sheahan's testimony (Pl.'s Opp'n Decl. of Jones, Ex. K at 41:3-24), and Graco's production to be insufficient.  The Court directs Graco to produce any/all documents and information within its possession, custody, control as to both natural and potential acquisitions.

Although Graco answered nos. 225 and 226 by stating that "it does not maintain sales reports containing the information [sought,]...Graco produced in native format all transactional sales data that it maintains in its databases for all HPCF products...and compilation charts...which detail total annual sales and margins" and maintains that "this data includes everything requested by Defendants" (Pl.'s Opp'n Br. at 10-12; *see also* Pl.'s Opp'n Cert. of Jones, ¶¶ 29, 30; *see also*

Pl.'s Opp'n Cert. of Coleman, ¶¶ 9-14), PMC claims that it "has been unable to locate more than a few isolated responsive documents" (Def.'s Br. at 29-30).  Having reviewed Def.'s 3ⁿᵈ RFP nos. 225 and 226 and Graco's response, the Court finds the information provided to be sufficient based, in part, on PMC's failure to state with particularly what Graco's deficiency is with respect to production.  However, even if the data provided was "in native format" (Pl.'s Opp'n Br. at 11), the Court finds that responsive materials were produced by Graco other than as they exist in the usual course of business (Pl.'s Opp'n Cert. of Coleman, ¶ 9; *see also In re G-I Holdings, Inc.*, 218 F.R.D. 428, 439-40 (D.N.J. 2003); Fᴇᴅ. R. Cɪᴠ. P. 34(b)(2)) and directs Graco to supplement its written answers by providing PMC with direction as to where the information previously produced may be found by way of Bates stamp reference(s).

With respect to nos. 229-234, Graco maintains that it "produced distributor agreements and addenda for the time period from 2006 to the present with distributors who received Graco's October 2007 letter" (Pl.'s Opp'n Cert. of Jones, ¶ 32) and both parties agree that the Court's September 1, 2010 ruling controls these requests (Def.'s Br. at 31; *see also* Pl.'s Opp'n Br. at 14).  Having reviewed Def.'s 3ⁿᵈ RFP nos. 229-234 and Graco's response, and to the extent not already provided, the Court directs Graco to provide complete responses including "each of the distributor agreements".  *See* Def.'s Br. at 31.

With respect to no. 268, Graco maintains that it "has produced responsive documents" (Pl.'s Opp'n Br. at 14) including "correspondence with various individuals and entities regarding their use of Graco's trademarks and trade names and Graco's policies related to customers' use of Graco's trademarks and trade names" (*see* Pl.'s Opp'n Cert. of Jones, ¶ 33) and that "no dispute remains" (Pl.'s Opp'n Br. at 14).  Having reviewed Def.'s 3ⁿᵈ RFP no. 268 and Graco's response, and to the extent not already provided, the Court directs Graco to provide a complete

response to this request, including "exchanges between Graco and third party distributors and suppliers which show that Graco demanded that any distributor or supplier who decided to carry Gama products or work with Gama remove the Graco name, logo, trademark, artwork, etc. from their website and any other marketing materials", as to documents within Graco's possession, custody, or control.  *See* Def.'s Br. at 36-37.

With respect to nos. 272 and 273, Graco has stated that "no responsive documents related to distributors or customers [of Spray Foam equipment and products] exist" as to any exclusivity requirement and that "Graco does not have exclusivity requirements for distributors or customers of products in its relevant business units and thus no responsive documents...exist".  *See* Def.'s Decl. of Callahan, Ex. J at 31-32.  Separately, with respect to nos. 275 and 277, Graco has refused to respond on the basis of objections to the phrase "Spray Foam equipment and products" as vague and undefined, and, specifically as to no. 277, as "overbroad in that it fails to specify a reasonable timeframe".  *Id.* at 33-34.  Importantly, the Court notes that Graco has produced "documents related to a supplier exclusivity provision".  *See* Pl.'s Opp'n Br. at 20; *see also* Pl.'s Opp'n Cert. of Jones, ¶ 43.  Having reviewed Def.'s 3rd RFP nos. 272, 273, 275, and 277 and Graco's responses thereto, the Court finds the information requested via nos. 272 and 273 – Graco's exclusivity requirements with suppliers – to be relevant given PMC's antitrust counterclaim and the information requested via nos. 275 and 277 to be relevant, unambiguous, and not unduly burdensome given Graco's responses to other interrogatories and requests for production using the same phrase and given the reasonable period of "2004 to the present" as set forth by Graco itself.  *See* Pl.'s Opp'n Br. at 12.  The Court finds Graco's production to be insufficient and directs Graco to produce any/all documents and information within its possession, custody, control responsive to nos. 272, 273, 275, and 277.

With respect to nos. 298 and 299, Graco answered that "quarterly financial information is contained in Graco's Form 10-Qs which can be found on www.graco.com for quarters in 2003 to the present" and that "its annual financial information is contained in its Annual Reports and its Annual Reports on Form 10-K which Graco has produced for 2004 through 2009 and which can be found on www.graco.com for 2001 to 2009", respectively.  *See* Def.'s Decl. of Callahan, Ex. J at 41-42.  With respect to nos. 300 and 301, Graco answered that it would "produce documents...that exist in the normal course of business" and that "no documents...exist to Graco's knowledge", respectively.  *Id.* at 42.  With respect to both nos. 302 and 303, Graco answered that "no documents...exist to Graco's knowledge".  *Id.*  With respect to nos. 304-309, Graco answered that it "has produced or will produce non-privileged documents...that were created during the time period from 2004 to the present if such documents exist".  *Id.* at 43-44. With respect to no. 310, Graco answered that "responsive information is found in Graco's Annual Reports on Form 10-K, which Graco has produced and which can be found on www.graco.com for 2001 to 2009".  *Id.* at 44.  Graco states that it has "produced all responsive documents in its possession" and "has not withheld documents" on the basis of product category, has "produced sales data and financial documents for all HPCF products which is broader than the alleged market", has produced "detailed spreadsheets showing annual sales, revenues, and margins for all Fast Set equipment...created...for purposes of this litigation", has produced "transactional data showing all sales of all HPCF equipment including Fast Set products...[and identifying] the month of sale, customer account, product, price, rebates, and cost", and has made clear "that it does not generate or possess some of the requested documents".  *See* Pl.'s Opp'n Br. at 6-9.  Specifically, as to PMC's request for "quarterly and annual income statements" and "annual consolidated financial statements", Graco states that same are "contained in its Forms

10-K and 10-Q", that there are "no other responsive documents", and that "the Rules do not require Graco to create income or financial statements that do not exist". *Id.* at 8.  Specifically, as to PMC's request for income statements for Graco's HPCF business unit prior to 2010, Graco states that "it never prepared income statements for the HPCF business unit prior to 2010" and thus "only two quarterly statements exist" and have been produced. *Id.* at 9; *see also* Pl.'s Opp'n Cert. of Chambers, ¶ 6; Pl.'s Opp'n Cert. of Jones, ¶ 28.  Specifically, as to PMC's request for income statements for Graco's Fast Set Subdivision, Graco states that it "has never had a Fast Set Subdivision" as "Fast Set products are manufactured and sold by the HPCF business unit...[for which] Graco has produced income statements" and that it "does not prepare income statements specific to Fast Set products". *Id.* at 9-10; *see also* Pl.'s Opp'n Cert. of Chambers, ¶ 7; Pl.'s Opp'n Cert. of Coleman, ¶ 6.  Specifically, as to PMC's request for income and consolidated statements for GlasCraft, Gusmer, and Decker, Graco states that it "has produced documents responsive to these requests" and that there is "nothing more for the Court to compel". *Id.* at 10; *see also* Pl.'s Opp'n Cert. of Jones, ¶ 31.  Having reviewed Def.'s 3rd RFP nos. 298-310 and Graco's responses, including Graco's representation that it has "produced all of the documents in its possession", the Court finds Graco's production to be sufficient. *Id.* at 9-10.

With respect to nos. 312, 314, and 315, Graco answered that "no responsive documents exist in the ordinary course of business to Graco's knowledge". *See* Def.'s Decl. of Callahan, Ex. J at 45-46.  With respect to no. 313, Graco answered that it would "produce non-privileged documents...to the extent they exist". *Id.* at 45.  More specifically, Graco states that although "it does not maintain sales reports containing the information [sought,]...Graco produced in native format all transactional sales data that it maintains in its databases for all HPCF products...and compilation charts...which detail total annual sales and margins" and maintains that "this data

includes everything requested by Defendants". *See* Pl.'s Opp'n Br. at 10-12; *see also* Pl.'s Opp'n Cert. of Jones, ¶¶ 29, 30; Pl.'s Opp'n Cert. of Coleman, ¶¶ 9-14).   Nevertheless, PMC  maintains that "these databases are not responsive and do not fulfill Graco's discovery obligations" especially given Graco's written responses to nos. 312, 314, and 315.  *See* Def.'s Br. at 27-29. Further, PMC contends that the databases provided are "indecipherable and meaningless without an extensive list of further information and corresponding legends".  *Id*. at 28-29.   Having reviewed Def.'s 3rd RFP nos. 312-315 and Graco's responses thereto, the Court finds the information provided to be insufficient and directs Graco, to the extent not already provided, to do so insofar as it retains possession, custody, or control of any further responsive documents or information.   The Court acknowledges Graco's representation that it "does not maintain sales reports containing the information [PMC] seek[s]" and its provision of transactional sales data "in native format" by extracting data from Graco's databases and producing it in an Access database in addition to producing a spreadsheet.  *See* Pl.'s Opp'n Br. at 10-11; *see also* Pl.'s Opp'n Cert. of Coleman, ¶ 9; Pl.'s Opp'n Cert. of Jones ¶¶ 29-30.  As such, the Court finds that Graco produced materials in a form other than as they exist in the usual course of business (Pl.'s Opp'n Cert. of Coleman, ¶ 9; *see also* Pl.'s Opp'n Cert. of Jones ¶¶ 29-30; *In re G-I Holdings, Inc.*, 218 F.R.D. 428, 439-40 (D.N.J. 2003); FED. R. CIV. P. 34(b)(2)) and directs Graco to supplement its written answers by providing PMC with direction as to where the information previously produced, and as directed by the Court herein, may be found by way of Bates stamp reference(s) in addition to providing PMC with an appropriate "list of further information and corresponding legends" that aid in making the material decipherable.  *See* Def.'s Br. at 28. Further, the Court directs Graco to provide written responses to the specific questions about information already produced listed in PMC's brief on page twenty-eight (28).  *Id*.

With respect to nos. 316 and 317, Graco objected to production based on its contention that the documents sought "are not relevant to the claims or defenses at issue in this lawsuit or reasonably calculated to lead to the discovery of admissible evidence". *See* Def.'s Decl. of Callahan, Ex. J at 46. Graco maintains that the information requested "would be some of the most confidential within Graco" and that "a potential investor or buyer would likely also consider this information highly confidential". *See* Pl.'s Opp'n Br. at 22. Having reviewed Def.'s 3rd RFP nos. 316-317 and Graco's responses thereto, the Court finds the information requested irrelevant, unlikely to lead to the discovery of admissible evidence, and denies PMC's request to compel same.

### 4.      Miscellaneous

With respect to PMC's to Def.'s 3rd RFP nos. 213-214, 227, 235-237, 250-259, 261-262, 276, 289, and 304-311, PMC requests a Court Order requiring Graco to provide responses related to documents dated before 2004. *See* Def.'s Br. at 31. PMC maintains that it requires "documents dating back a few years prior to the Gusmer acquisition in February 2004...[in order] to set the landscape in terms of what the status quo was prior to Graco's acquisition...[and for purposes of PMC's] damages assessment". *Id*.; *see also* Def.'s Decl. of Callahan, ¶ 37. The Court notes that "the parties agreed to an ESI questionnaire that defined the relevant time period for document investigation as January 1, 2004 to the present" in October of 2008. *See* Pl.'s Opp'n Br. at 12; *see also* Pl.'s Decl. of Jones, Ex. H. Graco "openly maintained this limitation throughout its responses" during the balance of discovery, or for approximately two (2) years. *Id*. Further, Graco has produced "pre-2004 documents...including HPCF sales data and compilations dating back to 2000" and invited PMC "to identify particular pre-2004 documents" that it desired, but PMC declined to utilize this opportunity to reach a mutually agreeable accommodation. *Id*. at 12-13; *see also* Pl.'s Decl. of Jones at ¶ 29. Having reviewed the parties' arguments, the Court declines PMC's request to compel additional discovery pre-dating January

1, 2004 based, in part, on the agreement reached between the parties in October 2008 regarding discovery limitations (*see* Pl.'s Decl. of Jones, Ex. H) and, in part, on PMC's inability to work out a mutually agreeable resolution with Graco by requesting particular documents given that fact discovery ended on June 30, 2010 (*see* dkt. entry no. 269).

With respect to PMC's to Def.'s 2ⁿᵈ RFP nos. 128-129, 133, and 131-144 and Def.'s 3ʳᵈ RFP nos. 258, PMC requests a Court Order requiring Graco to amend its written responses to reflects its representations that it has no further documents in its possession, custody, or control based on Graco's "August 25, 2010 opposition...affirmatively indicat[ing]" same. *See* Def.'s Br. at 37-38.  The Court notes that it finds no opposition argument to PMC's request set forth anywhere in Graco's papers.  Having reviewed PMC's representations, the Court directs Graco to amend its written responses to reflect the representations set forth in its August 25, 2010 opposition.

## IV.    CONCLUSION AND ORDER

The Court having considered the papers submitted and opposition thereto, and for the reasons set forth above;

**IT IS** on this 24ᵗʰ day of March, 2011,

**ORDERED** that Defendants' Motion to compel further responses to written discovery [dkt. entry no. 486] is **GRANTED** in part and **DENIED** in part as set forth above; and it is further

**ORDERED** that Plaintiffs shall provide Defendants with the materials set forth above by **April 15, 2011**.

s/ *Douglas E. Arpert*
**DOUGLAS E. ARPERT**
**UNITED STATES MAGISTRATE JUDGE**